UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CHAD YOUTH ENHANCEMENT CENTER, INC. | ) ) ) |
| and | ) ) |
| UNIVERSAL HEALTH SERVICES, INC. | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| COLONY NATIONAL INSURANCE CO. | ) ) |
| Defendant. | ) |

Civil Action No.

## COMPLAINT

Plaintiffs Chad Youth Enhancement Center, Inc. ("Chad") and Universal Health Services, Inc.("UHS" and, together with Chad, sometimes collectively referred to as the "Insureds"), by and through their undersigned attorneys, hereby bring this Complaint against defendant Colony National Insurance Company ("Colony") and, in support thereof, aver as follows:

## PARTIES

1. Chad is corporation organized and existing under the laws of the State of Tennessee with its principal place of business at 1751 Oak Plains Road, Ashland, Tennessee.

2. Chad operates a behavioral health center at its Ashland, Tennessee location.

3. UHS is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 367 South Gulph Road, King of Prussia, Pennsylvania.

4. Colony is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 8720 Stony Point Parkway, Richmond, Virginia.

5. Colony is in the business of selling property and casualty insurance to commercial policyholders.

6. Colony is a surplus lines insurer.

7. Colony regularly conducts business in the State of Tennessee.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue is appropriate in this judicial district pursuant to 28 U.S.C.A. § 1391(a) and (c).

## NATURE OF THIS ACTION

10. Chad and UHS bring this action for a declaratory judgment, pursuant to 28 U.S.C.A. § 2201, seeking a determination that a second level excess liability policy which Colony issued to the Insureds provides coverage for any award of punitive damages that might be entered against the Insureds, or either of them, in an action pending in the United States District Court for the Eastern District of Pennsylvania and captioned Paulette M. Dolby as the administratrix of the Estate of Omega Leach, III vs. Universal Health Services, Inc., (the "Dolby action.")

## THE RELEVANT FACTS

11. The complaint in the Dolby action seeks compensatory and punitive damages from the Insureds as a result of alleged negligence in early June 2007 that is alleged to have resulted in the death of Omega Leach, III ("Leach") while Leach was resident at Chad.

12. The Insureds have in effect multiple layers of general liability insurance that provide coverage for the claims asserted in the Dolby action.

13. General Star Indemnity Company ("General Star") issued to the Insureds a commercial general liability policy with policy number IJA064075B for the policy period April 30, 2007 through April 30, 2008, and with limits of $1 million per occurrence (the "General Star Policy"). A true and correct copy of the General Star Policy is attached hereto as Exhibit A and incorporated by reference.

14. Axis Surplus Insurance Company ("Axis") issued to the Insureds a first level excess liability policy with policy number EAU720446/01/2007 for the policy period April 30, 2007 through April 30, 2008, and with limits of $5 million per occurrence excess of the applicable limit of liability in the General Star Policy (the "Axis Policy"). A true and correct copy of the Axis Policy is attached hereto as Exhibit B and incorporated by reference.

15. Colony issued to the Insureds a second level excess liability policy with policy number AR5460018B for the policy period April 30, 2007 through April 30, 2008, and with limits of $10 million per occurrence excess of the applicable limits of liability in the General Star Policy and the Axis Policy (the "Colony Policy"). A true and correct copy of the Colony Policy is attached hereto as Exhibit C and incorporated by reference.

16. The first named insured on the Colony Policy is UHS Children Services, Inc.

17. Chad and UHS are additional named insureds on the Colony Policy.

18. Because Colony is not licensed and admitted to conduct the business of insurance in Tennessee, it issued the Colony Policy as a surplus lines insurer.

19. The Colony Policy expressly provides that it is issued and delivered as surplus lines coverage pursuant to the Tennessee insurance statutes.

20. The required Tennessee surplus lines tax was paid in connection with the issuance of the Colony Policy.

21. The General Star Policy provides coverage to the Insureds for "Damages," which term is defined as "sums that any insured becomes legally obligated to pay resulting from a Claim to which the policy applies." See Exhibit A, Common Policy Provisions, Section VI(9).

22. The General Star Policy defines "Claim" in terms of the types of demands that can result in legal liability, including a suit. See Exhibit A, Common Policy Provisions, Section VI (6)(c).

23. The General Star Policy nowhere excludes punitive damages from the definition of "Damages."

24. Under the terms of the General Star Policy, any punitive damages that the plaintiffs in the Dolby Action might be awarded against the Insureds, or either of them, are "Damages," as that term is defined in the policy -- that is, sums that the Insured(s) would be legally obligated to pay as the result of a Claim.

25. Like the General Star Policy, the Axis Policy provides coverage to the Insureds for damages that an insured is liable to pay to a third party as the result of a claim asserted against the Insureds.

4

26. Unlike the General Star Policy, the Axis Policy provides that "Damages" does not include "punitive damages."

27. The Colony Policy states: "Various provisions in this policy restrict coverage. Read the entire policy and any 'underlying insurance' carefully to determine rights, duties and what is covered and not covered." Exhibit C, p. 1 of 4.

28. The Colony Policy also states: "[W]ords and phrases that appear in quotation marks have special meanings. Refer to **Section IV-Definitions**." Exhibit C, p. 1 of 4 (emphasis in original).

29. The term "underlying insurance" appears in quotation marks throughout the Colony Policy.

30. In Section IV – Definitions of the Colony Policy, the term "Underlying insurance" is defined to "mean the primary and excess policies that are listed in the Schedule of Underlying Insurance." Exhibit C, p. 4 of 4.

31. The Schedule of Underlying Insurance in the Colony Policy is an endorsement entitled "Schedule A – Schedule Of Underlying Insurance." ("Schedule A") See Exhibit C.

32. Schedule A lists as "underlying insurance" both the General Star Policy and the Axis Policy. See Exhibit. C, p. 4 of 4.

33. The Colony Policy provides that it incorporates the terms and conditions of the "underlying insurance."

34. In particular, the Insuring Agreement of the Colony Policy states: "The terms and conditions of insurance of this policy are the same as those of the 'underlying insurance' in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto." Exhibit C, p. 1 of 4.

5

35. Because the Colony Policy incorporates the terms and conditions of the General Star Policy, and because the General Star Policy does not exclude coverage for punitive damages from the definition of "Damages," the Colony Policy provides coverage for any award of punitive damages against the Insureds, or either of them, in the Dolby action.

36. In the alternative, by expressly stating that "The terms and conditions of insurance of this policy are the same as those of the 'underlying insurance,'" the Colony Policy is ambiguous as to whether it provides coverage for punitive damages because the General Star Policy, which is "underlying insurance" provides coverage for such damages, while the Axis Policy, which is also "underlying insurance" does not provide coverage for such damages.

37. Commercial general liability and umbrella or excess liability policies are to be construed broadly so as to promote coverage.

38. Ambiguities in a liability insurance policy are construed against the insurance company which drafted the policy.

39. Where a liability insurance policy is ambiguous, any reasonable construction advanced by the insured will be favored over an interpretation of the policy by the insurer even if the insured's construction is not the most reasonable construction of the ambiguous policy language.

40. Applying well accepted principles that govern the construction of ambiguous terms in liability insurance policies, the Colony Policy must be interpreted as providing coverage for any punitive damages for which the Insureds, or either of them, may be held liable in the Dolby action.

6

## COUNT ONE

### Declaratory Judgment

41. The Insureds hereby incorporate by reference the averments contained in paragraphs 1 through 40 of the Complaint as fully as if the same were set forth at length herein.

42. For the reasons set forth in this Complaint, the Insureds contend that the Colony Policy provides coverage for any liability for punitive damages that either of them may incur in the Dolby action.

43. Colony has taken the position that the Colony Policy does not provide coverage for any punitive damages for which the Insureds, or either of them, may be liable in the Dolby action.

44. An actual controversy of a justiciable nature therefore exists between the Insureds and Colony concerning whether the Colony Policy provides coverage for any liability for punitive damages that the Insureds might incur in the Dolby action.

45. A declaratory judgment will conclusively clarify and define the legal rights of the parties with respect to coverage for punitive damages under the Colony Policy.

WHEREFORE, Plaintiffs Chad and UHS seek a declaratory judgment in their favor and against Colony as follows:

(1) Adjudging and decreeing that, subject to the applicable limits of the General Star Policy and the Axis Policy, Colony is obligated under the Colony Policy for any punitive damages that may be awarded against Chad or UHS in the Dobly action.

(2) Awarding Chad and UHS their counsel fees and costs of suit incurred in this action.

(3) Granting such other and further relief as the Court may deem just and equitable.

## COUNT II

### Breach of Contract

46. The Insureds hereby incorporate by reference the averments of paragraphs 1 through 45 of the Complaint as fully as if the same were set forth at length herein.

47. Colony owes the Insureds a fiduciary duty and a duty of good faith and fair dealing in connection with the Insureds' request for coverage under the Colony Policy in connection with any liability they might incur in the Dolby action.

48. Colony's duties under the Colony Policy, and the applicable law, in connection with the Dolby action include the following: (a) a duty to promptly investigate whether there is coverage under the Colony Policy and to confirm coverage to the Insureds; (b) a duty not to raise frivolous or unfounded defenses to coverage; (c) a duty to take affirmative steps to attempt to settle the Dolby action, if appropriate, within the limits of the Colony Policy.

49. Settlement discussions have commenced in the Dolby action.

50. As part of such discussions, the Insureds have demanded that General Star, Axis and Colony acknowledge, accept and undertake their contractual obligations to the Insureds to attempt to settle that action within the $16 million in limits available under the three policies.

51. Colony has wrongfully denied that it has any obligation to pay any amounts on behalf of its Insureds to settle the Dolby action.

52. In particular, Colony has wrongfully and frivolously asserted that the "punitive damages are excluded from UHS' excess insurance policy issued by Colony Insurance."

53. In fact, the Colony Policy contains no such exclusion.

54. Colony's representatives well knew when they made such an assertion that punitive damages are not excluded under the Colony Policy.

55. In making this assertion to UHS, Colony has attempted improperly to avoid its duties and obligations to the Insureds under the Colony Policy.

56. Furthermore, Colony has also frivolously and wrongfully asserted that plaintiffs' counsel in the Dolby action desires to "target" UHS for punitive damages, and to "extract" a settlement or verdict directly from UHS and that such counsel does not intend to "target" Colony.

57. Colony has also advised UHS that it would not engage in court ordered settlement discussions, other than physically attending a settlement conference as required by the court, and that UHS must "take the lead" in settlement discussions.

58. In this way, Colony has attempted to put its financial interests ahead of the interests of the Insureds, and it has abandoned the Insureds and left them to fend for themselves during settlement negotiations in the Dolby action.

59. Colony's conduct constitutes a material breach of the terms of the Colony Policy, as well a breach of its fiduciary duties to the Insureds and its duty of good faith and fair dealing.

60. The Insureds have suffered damages as a legal, direct and proximate result of Colony's breach of its contractual, statutory and common-law duties.

WHEREFORE, Plaintiffs Chad and UHS seek judgment in their favor and against Colony as follows:

(1) Awarding Chad and UHS all damages that they have suffered, and may suffer in the future, as a result of Colony's failure and refusal to acknowledge its duty to attempt to settle the Dolby action within the limits of the Colony Policy.

(2) Awarding Chad and UHS their costs of suit and such other and further relief, including recovery of their attorneys' fees incurred in this action

9

(3) Granting such other and further relief as the Court may deem just and equitable.

Dated: June 11, 2009

___s/ Marty R. Phillips_____
Marty R. Phillips (TN Bar No. 14990)
Rainey Kizer Reviere & Bell P.L.C.
105 South Highland Avenue
Jackson, TN 38301

Attorneys for Plaintiffs
Chad Youth Enhancement Center, Inc. and
Universal Health Services, Inc.