IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CHAD YOUTH ENHANCEMENT CENTER, INC. | ) | |
| and | ) | |
| UNIVERSAL HEALTH SERVICES, INC. | ) | |
| Plaintiffs. | ) | Civil Action No. 3:09cv0545 |
| | ) | District Judge Echols |
| v. | ) | Magistrate Judge Brown |
| COLONY NATIONAL INSURANCE CO. | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiffs Chad Youth Enhancement Center, Inc. ("Chad" as defined below), and

Universal Health Services, Inc. ("UHS," with UHS and Chad sometimes collectively referred to

as the "Insureds"), have not previously amended their original Complaint filed on June 11, 2009

and have not been served with a responsive pleading. Plaintiffs, by and through their

undersigned attorneys, now hereby bring this Amended Complaint against defendant Colony

National Insurance Company ("Colony") and, in support thereof, aver as follows:

## PARTIES

1.      Chad Youth Enhancement Center, Inc. is a corporation that, at all relevant times,

was organized and existed under the laws of the State of Tennessee with a principal place of

business at 1751 Oak Plains Road, Ashland, Tennessee. On or about January 8, 2008, Chad

Youth Enhancement Center, Inc. changed its name to Oak Plains Academy, Inc. In this

Amended Complaint, "Chad" refers to Chad Youth Enhancement Center, Inc. and, as it is now

known, Oak Plains Academy, Inc.

2.        Chad operates a behavioral health center at its Ashland, Tennessee location.

3.        UHS is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 367 South Gulph Road, King of Prussia, Pennsylvania.

4.        Colony is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 8720 Stony Point Parkway, Richmond, Virginia.

5.        Colony is in the business of selling property and casualty insurance to commercial policyholders.

6.        Colony is a surplus lines insurer.

7.        Colony regularly conducts business in the State of Tennessee.

## JURISDICTION AND VENUE

8.        This Court has jurisdiction pursuant to 28 U.S.C.A. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.        Venue is appropriate in this judicial district pursuant to 28 U.S.C.A. § 1391(a) and (c).

## NATURE OF THIS ACTION

10.      Chad and UHS bring this action for a declaratory judgment, pursuant to 28 U.S.C.A. § 2201, and for breach of contract seeking: (a) a determination that a second level excess liability policy which Colony issued to the Insureds provides coverage for any award of punitive damages that might be entered against the Insureds, or either of them, in an action pending against the Insureds in the United States District Court for the Eastern District of

Pennsylvania and captioned <u>Paulette M. Dolby as the administratrix of the Estate of Omega</u> <u>Leach, III vs. Universal Health Services, Inc.,</u> (the "Dolby action."); and (b) damages and other relief as a result of Colony's breach of contractual and statutory duties owed to the Insureds.

## **THE RELEVANT FACTS**

### The Issuance Of The Colony Policy

11.  The complaint in the Dolby action seeks compensatory and punitive damages from the Insureds as a result of alleged negligence in early June 2007 that is alleged to have resulted in the death of Omega Leach, III while he was a resident at Chad.

12.  The Insureds have in effect multiple layers of general liability insurance that cover the claims asserted against them in the Dolby action.

13.  General Star Indemnity Company ("General Star") issued to the Insureds a commercial general liability policy with policy number IJA064075B for the policy period April 30, 2007 through April 30, 2008, and with limits of $1 million per occurrence (the "General Star Policy"). A true and correct copy of the General Star Policy is attached hereto as Exhibit A and incorporated by reference.

14.  In about mid-April 2007, General Star provided the Insureds with a quote for the General Star Policy.

15.  The General Star quote states, in pertinent part, in the "Conditions" section of the quote that the "Professional liability Policy has no exclusion for Punitive Damages ...." A true and correct copy of the General Star quote is attached hereto as Exhibit B and incorporated by reference.

16.  Axis Surplus Insurance Company ("Axis") issued to the Insureds a first level excess liability policy with policy number EAU720446/01/2007 for the policy period April 30,

2007 through April 30, 2008, and with limits of $5 million per occurrence excess of the applicable limit of liability in the General Star Policy (the "Axis Policy"). A true and correct copy of the Axis Policy is attached hereto as Exhibit C and incorporated by reference.

17.     Colony issued to the Insureds a second level excess liability policy with policy number AR5460018B for the policy period April 30, 2007 through April 30, 2008, and with limits of $10 million per occurrence excess of the applicable limits of liability in the General Star Policy and the Axis Policy (the "Colony Policy"). A true and correct copy of the Colony Policy is attached hereto as Exhibit D and incorporated by reference.

18.     On or about April 17, 2007, before Colony issued the Colony Policy, it received from Partners Specialty Group, LLC ("PSG"), which was one of two brokerage firms involved in the placement of coverage for UHS and its affiliates, a copy of both the General Star quote and a quote from Axis for the Axis Policy.

19.     Also on or about April 17, 2007, PSG provided Colony with a copy of the General Star primary level policy that was then in effect, and that covered the policy period from April 30, 2006 to April 30, 2007.

20.     When PSG sent Colony the General Star quote, it stated as to the General Star Policy that "[a]ll terms and conditions remain the same as expiring."

21.     Colony well knew before it issued the Colony Policy that the General Star Policy did not exclude punitive damages because: (a) Colony had in its possession the 2006-2007 General Star Policy which did not exclude coverage for punitive damages; (b) PSG specifically told Colony that the proposed terms for the General Star Policy for the 2007-2008 policy year would be the same as the expiring policy; and (c) Colony had received from PSG the General

4

Star quote which specifically stated that the Professional Liability Policy being issued by General Star "has no exclusion for Punitive Damages."

22.　On April 17, 2007, Colony issued a quote for the Colony Policy. A true and correct copy of the Colony quote is attached hereto as Exhibit E and incorporated by reference. The Colony quote nowhere states that the Colony Policy will exclude punitive damages.

23.　On April 27, 2007, Colony issued a binder for the Colony Policy. A true and correct copy of the Colony binder is attached hereto as Exhibit F and incorporated by reference. The Colony binder nowhere states that the Colony Policy will exclude punitive damages.

<u>The Colony Policy Does Not Exclude Punitive Damages</u>

24.　The first named insured on the Colony Policy is UHS Children Services, Inc.

25.　Chad and UHS are additional named insureds on the Colony Policy.

26.　Because Colony is not licensed and admitted to conduct the business of insurance in Tennessee, it issued the Colony Policy as a surplus lines insurer.

27.　The Colony Policy expressly provides on the Declarations page of the policy that it is issued and delivered as surplus lines coverage pursuant to the Tennessee insurance statutes.

28.　The required Tennessee surplus lines tax was paid in connection with the issuance of the Colony Policy.

29.　The General Star Policy provides coverage to the Insureds for "Damages," which term is defined as "sums that any insured becomes legally obligated to pay resulting from a Claim to which the policy applies." See Exhibit A, Common Policy Provisions, Section VI (9).

30.　The General Star Policy defines "Claim" in terms of the types of demands that can result in legal liability, including a suit. See Exhibit A, Common Policy Provisions, Section VI (6)(c).

31.     The General Star Policy nowhere excludes punitive damages from the definition of "Damages."

32.     Under the terms of the General Star Policy, any punitive damages that the plaintiffs in the Dolby Action might be awarded against the Insureds, or either of them, are "Damages," as that term is defined in the policy -- that is, sums that any Insured becomes legally obligated to pay resulting from a Claim.

33.     Like the General Star Policy, the Axis Policy provides coverage to the Insureds for damages that an insured is liable to pay to a third party as the result of a claim asserted against the Insureds.

34.     Unlike the General Star Policy, the Axis Policy provides that "Damages" does not include "punitive damages."

35.     The Colony Policy states: "Various provisions in this policy restrict coverage. Read the entire policy and any 'underlying insurance' carefully to determine rights, duties and what is covered and not covered." See Exhibit D, p. 1 of 4.

36.     The Colony Policy also states: "[W]ords and phrases that appear in quotation marks have special meanings. Refer to **Section IV-Definitions**." See Exhibit D, p. 1 of 4 (emphasis in original).

37.     The term "underlying insurance" appears in quotation marks throughout the Colony Policy.

38.     In Section IV – Definitions of the Colony Policy, the term "Underlying insurance" is defined to "mean the primary and excess policies that are listed in the Schedule of Underlying Insurance." See Exhibit D, p. 4 of 4.

39.     The Schedule of Underlying Insurance in the Colony Policy is an endorsement entitled "Schedule A – Schedule Of Underlying Insurance." ("Schedule A") See Exhibit D.

40.     Schedule A lists as "underlying insurance" both the General Star Policy and the Axis Policy. See Exhibit. D, p. 4 of 4.

41.     The Colony Policy provides that it incorporates the terms and conditions of the "underlying insurance."

42.     In particular, the Insuring Agreement of the Colony Policy states: "The terms and conditions of insurance of this policy are the same as those of the 'underlying insurance' in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto." See Exhibit D, p. 1 of 4.

43.     Because the Colony Policy incorporates the terms and conditions of the General Star Policy, and because the General Star Policy does not exclude coverage for punitive damages from the definition of "Damages," the Colony Policy provides coverage for any award of punitive damages against the Insureds, or either of them, in the Dolby action.

44.     In the alternative, by expressly stating that "The terms and conditions of insurance of this policy are the same as those of the 'underlying insurance,'" the Colony Policy is ambiguous as to whether it provides coverage for punitive damages because the General Star Policy, which is "underlying insurance" provides coverage for, and does not exclude, such damages, while the Axis Policy, which is also "underlying insurance" does not provide coverage for such damages.

45.     Commercial general liability and umbrella or excess liability policies are to be construed broadly so as to promote coverage.

46.     Ambiguities in a liability insurance policy are construed against the insurance company which drafted the policy.

47.     Where a liability insurance policy is ambiguous, any reasonable construction advanced by the insured will be favored over an interpretation of the policy by the insurer even if the insured's construction is not the most reasonable construction of the ambiguous policy language.

48.     Applying well accepted principles that govern the construction of ambiguous terms in liability insurance policies, the Colony Policy must be interpreted as providing coverage for any punitive damages for which the Insureds, or either of them, may be held liable in the Dolby action.

Colony Has Failed And Refused To Confirm That The Colony Policy Covers Punitive Damages

49.     Court ordered and court supervised settlement discussions have commenced in the Dolby action.

50.     As part of such discussions, the Insureds have demanded that General Star, Axis and Colony acknowledge, accept and undertake their contractual obligations to the Insureds to attempt to settle that action within the $16 million in limits available under the three policies.

51.     In response to the Insureds' inquiry, Colony initially indicated that the Colony Policy did not exclude punitive damages because it followed the form of the General Star Policy.

52.     Subsequently, however, Colony wrongfully changed its position, and denied that it has any obligation to pay any amounts on behalf of its Insureds to settle the Dolby action.

53.     In particular, the Colony claim representative assigned to the coverage claim of Chad and UHS has wrongfully and frivolously asserted in writing that "punitive damages are excluded from UHS' excess insurance policy issued by Colony Insurance."

54.     In fact, the Colony Policy does not contain any exclusion for punitive damages.

55.     Colony's representative well knew when he made such an assertion that punitive damages are not excluded under the Colony Policy.

56.     In making this assertion to UHS, Colony has attempted improperly to avoid its duties and obligations to the Insureds under the Colony Policy.

57.     Colony has further attempted improperly to avoid its duties and obligations to the Insureds under the Colony Policy by having the Colony claim representative frivolously and wrongfully assert that plaintiffs' counsel in the Dolby action desires to "target" UHS for punitive damages, and to "extract" a settlement or verdict directly from UHS, and that such counsel does not intend to "target" Colony.

58.     The Colony claim that UHS, but not Colony, is the "target" for punitive damages is a blatant effort by Colony to align itself with plaintiffs and plaintiffs' counsel in the Dolby action and against its own Insureds, which effort reflects a desire and an intent to abandon the Insureds, and thereby breach Colony's duties to the Insureds.

59.     Colony has also advised UHS in writing that it would not engage in court ordered settlement discussions, other than physically attending a settlement conference as required by the court, and that UHS must "take the lead" in settlement discussions.

60.     The Colony claim that it will not become involved substantively in settlement negotiations, and its demand that UHS "take the lead," also reflects a desire and an intent to abandon the Insureds, and thereby breach Colony's duties to the Insureds.

61.     By "washing its hands" of the coverage claim in the Dolby action, Colony has attempted to put its financial interests ahead of the interests of the Insureds, and it has abandoned

the Insureds and left them to fend for themselves during settlement negotiations in the Dolby action.

## COUNT ONE

### Declaratory Judgment

62.     The Insureds hereby incorporate by reference the averments contained in paragraphs 1 through 61 of the Amended Complaint as fully as if the same were set forth at length herein.

63.     For the reasons set forth in this Amended Complaint, the Insureds contend that the Colony Policy provides coverage for any liability for punitive damages that either of them may incur in the Dolby action.

64.     Colony has taken the position that the Colony Policy does not provide coverage for any punitive damages for which the Insureds, or either of them, may be liable in the Dolby action.

65.     An actual controversy of a justiciable nature therefore exists between the Insureds and Colony concerning whether the Colony Policy provides coverage for any liability for punitive damages that the Insureds might incur in the Dolby action.

66.     A declaratory judgment will conclusively clarify and define the legal rights of the parties with respect to coverage for punitive damages under the Colony Policy.

67.     A declaratory judgment on the issue of coverage for punitive damages under the Colony Policy is necessary in order for the parties in the Dolby action to determine whether that action may be settled.

WHEREFORE, Plaintiffs Chad and UHS seek a declaratory judgment in their favor and against Colony as follows:

(1) Adjudging and decreeing that, subject to the applicable limits of the General Star Policy and the Axis Policy, Colony is obligated under the Colony Policy for any punitive damages that may be awarded against Chad or UHS in the Dobly action up to the $10 million limits of liability of the Colony Policy.

(2) Awarding Chad and UHS their counsel fees and costs of suit incurred in this action.

(3) Granting such other and further relief as the Court may deem just and equitable.

## COUNT II

### Breach of Contract

68. The Insureds hereby incorporate by reference the averments of paragraphs 1 through 67 of the Amended Complaint as fully as if the same were set forth at length herein.

69. Colony owes the Insureds a fiduciary duty and a duty of good faith and fair dealing in connection with the Insureds' request for coverage under the Colony Policy in connection with any liability they might incur in the Dolby action.

70. Colony's duties under the Colony Policy, and the applicable law, in connection with the Dolby action include the following: (a) a duty to promptly, fully and fairly investigate whether there is coverage under the Colony Policy and to confirm coverage to the Insureds; (b) a duty to avoid raising frivolous and unfounded defenses to coverage; (c) a duty to investigate the Dolby claim to such an extent that it can exercise an honest judgment whether the claim should be settled; (d) a duty to avoid intentionally disregarding the financial interests of the Insureds relating to the Dolby action in the hope of escaping full liability imposed upon it by the Colony Policy; (e) a duty not to be indifferent to the Insureds' interests in connection with the Dolby

action, including the settlement of that action; and (f) a duty to take affirmative steps to attempt to settle the Dolby action, if appropriate, within the limits of the Colony Policy.

71.     Colony has materially breached the contract, as well as its fiduciary duty and its duty of good faith and fair dealing to the Insureds by, among other actions:(a) confirming coverage for punitive damages and then reversing its position and wrongfully claiming that the Colony Policy excludes coverage for punitive damages when it contains no such exclusion; (b) telling the Insureds that it will not become involved in settlement discussions except to attend meetings, as ordered by the judge in the Dolby action; (c) claiming that the plaintiff's lawyer in the Dolby action wants to "target" UHS and that he does not want to "target" Colony; and (d) telling the Insureds that they must "take the lead" in settlement discussions.

72.     The Insureds have suffered damages as a legal, direct and proximate result of Colony's breach of its contractual and statutory duties.

## COUNT III

### Violation of The Tennessee Consumer Protection Act
### (Tenn. Code. § 47-18-101, et seq.)

73.     The Insureds hereby incorporate by reference the averments of paragraphs 1 through 72 of the Amended Complaint as fully as if the same were set forth at length herein.

74.     The purpose of the Tennessee Consumer Protection Act, Tennessee Code § 47-18-101, et seq. ("TCPA") is to protect consumers, and it must be liberally construed to effectuate that purpose. Tenn. Code Ann. § 47-18-102, -112 & -115.

75.     The TCPA prohibits insurance companies from engaging in any act or practice that is deceptive to the consumer or to any other person. Tenn. Code Ann. § 47-18-104(b)(27).

76.     The sale of an insurance policy constitutes "trade" or "commerce" and, along with the handling of claims, is subject to the TCPA's prohibition on unfair or deceptive acts or

practices in trade or commerce pursuant to Tenn. Code Ann. §§ 47-18-103(9), -104(a) & -109(a)(1).

77.    Colony's conduct, as described above, was unfair and deceptive and in violation of the TCPA provisions cited in Paragraphs 74 - 76, in that it was designed and calculated to: (a) deceive the Insureds regarding the terms and conditions of the Colony Policy by convincing them that there was no coverage for punitive damages under the policy when, in fact, that is not the case; (b) lead the Insureds to conclude erroneously that Colony had no duty under the Colony Policy to attempt to settle the Dolby action and, thus, to abandon their coverage claim; and (c) convince the Insureds that plaintiff and plaintiff's counsel were interested in having Colony be insulated from any responsibility for any punitive damages award, and have a punitive damages award paid by Insureds rather than by Colony under the Colony Policy.

78.    The Insureds have suffered damages as result of Colony's unfair and deceptive practices, and its willful and wrongful refusal to honor the terms and conditions of the Colony Policy, in violation of the TCPA.

WHEREFORE, Plaintiffs Chad and UHS seek judgment in their favor and against Colony as follows:

(1)    Awarding Chad and UHS treble damages pursuant to Tenn. Code Ann. § 47-18-109, based upon all damages that they have suffered and may suffer in the future, as a result of Colony's unfair and deceptive actions and its willful and knowing refusal to comply with its duty to attempt to settle the Dolby action within the limits of the Colony Policy.

(2)    Awarding Chad and UHS their costs of suit and such other and further relief, including recovery of their attorneys' fees incurred in this action.

(3)    Granting such other and further relief as the Court may deem just and equitable.

13

Dated: June 23, 2009

Respectfully submitted,

RAINEY, KIZER, REVIERE & BELL, P.L.C.

___/s/_Marty R. Phillips_____

Marty R. Phillips (TN Bar No. 14990)
105 South Highland Avenue
Jackson, TN 38301
(731) 423-2414
mphillips@raineykizer.com

Attorneys for Plaintiffs
Chad Youth Enhancement Center, Inc. and
Universal Health Services, Inc.

## CERTIFICATE OF SERVICE

This is to certify that Defendant Colony National Insurance Co. has been served with a copy of this document by registered mail as follows:

Corporate Office:

Colony National Insurance Co.
8720 Stony Point Parkway
Richmond, VA 23235-1948

Registered Agent:

National Registered Agents, Inc.
526 King St., Ste. 423
Alexandria, VA 22314

This, the 23rd day of June, 2009.

*/s/ Marty R. Phillips*_____

Marty R. Phillips

# GeneralStar™

## GENERAL STAR INDEMNITY COMPANY

695 EAST MAIN STREET, P.O. BOX 10354
STAMFORD, CONNECTICUT 06904-2354
A Stock Company

## CRIMINAL JUSTICE SYSTEM OPERATIONS
## COMMON POLICY DECLARATIONS

**POLICY NUMBER:**   IJA964075B       **RENEWAL OF POLICY NUMBER:**   IJA964075A

**1.  NAMED INSURED(S):**   UHS Children Services, Inc.

**MAILING ADDRESS:**   3401 W End Ave., #400

Nashville, TN 37203

**PRODUCER NAME:**
U.S. Risk Underwriters, Inc.
PO Box 6585
Scottsdale, AZ 85261
800-949-5245

**Named Insured Is:**   Corporation

**BUSINESS DESCRIPTION:**   Secure, Non-Secure Juvenile Detention, Counseling and Alternative Schools

**2.  POLICY PERIOD:**   Effective Date:   4/30/07          Expiration Date:   4/30/08
At 12:01 A.M. Standard Time at the mailing address shown above.

**3.**  In return for your payment of the premium, and in reliance upon the statements and representations in the insured's application(s) for this insurance, we agree with you to provide insurance subject to the terms of the policy.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| ▪ Policy Aggregate Limit | $ 5,000,000 |
| Criminal Justice Liability Limits by Coverage Part : | |
| ▪ Coverage A – Bodily Injury and Property Damage Limit | $ 1,000,000 |
| ○ Products / Completed Operations Aggregate Limit | $ 3,000,000 |
| ○ Damage to Premises Rented to You Sublimit | $ 50,000 |
| ▪ Coverage B – Personal & Advertising Injury Limit | $ 1,000,000 |
| ▪ Coverage C – Medical Expense Limit – any one person | $ 1,000 |
| ▪ Professional Liability Limit | $ 1,000,000 |
| ▪ Coverage C – Medical Expense Limit – Location #9 only | $ 5,000 |
| ▪ 11980 South Mt. Vernon Ave., Grand Terrace, CA 92133 | $ |
| ▪ | $ |
| ▪ | $ |

Other limits of liability may be indicated on attached coverage parts or endorsements.

"This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes."
Daniel Patrick McDonnell, 301 East Germantown Pike, Suite 402, Norristown, PA 19401

**4.  Self Insured Retention:**   $   500,000
Per occurrence if coverage is on an occurrence basis.
Per claim if coverage is on a claims-made basis.
Coverage parts may have separate deductibles.
Please review the endorsement for specific deductible application.

GSI-08-CJ-DEC (05/2005)

$450,000.00 Premium
$       150.00 Co Fee
$    3,500.00 Pol/Ins Fee
$  11,341.25 TN S/L Tax
$464,991.25 Total Premium

Page 1 of 2

**5.** **PREMIUM:** $ 450,000
    TRIA Premium (if applicable) $
    Total Annual Premium $

**POLICY CHARGES:**
- Policy Fee    $ 150
- Inspection Fee    $ 3,500
-    $
-    $
- Minimum Earned Premium    25%

**6.** **FORMS AND ENDORSEMENTS FORMING A PART OF THIS POLICY ON ITS EFFECTIVE DATE:**

| Form | Date | Description |
|---|---|---|
| GSI-06-CJ-DEC | 05/05 | Common Policy Declarations |
| 06-CJ-824 | 03/05 | Schedule of Named Insureds |
| 06-CJ-826 | 03/05 | Schedule of Locations |
| 06-CJ-103 | 05/05 | Common Policy Provisions |
| 06-CJ-001 | 03/05 | Commercial General Liability Coverage Part |
| 07-CJ-101 | 03/06 | Professional Liability Coverage Part – Claims Made |
| 06-CJ-232 | 03/05 | Sexual Misconduct Endorsement – Occurrence |
| 06-CJ-278 | 04/05 | Self Insured Retention Endorsement as revised (7/19/05) |
| 07-CJ-376 | 04/06 | Exclusion of Certified Acts of Terrorism and Other Acts of Terrorism |
| 06-CJ-806 | 03/05 | Additional Insured – Designated Person or Organization |
| CG2011 | 01/96 | Additional Insured – Lessor |
| CG2018 | 11/85 | Additional Insured – Mortgagee, Assignee or Receiver |
| 06-CJ-812 | 05/05 | Employee Benefit Liability Coverage Claims Made |
| 06-CJ-901 | 04/03 | Manuscript Endorsement |
| CG 2404 | 10/93 | Waiver of Transfer of Rights of Recovery against others to US |
| IL 600 | 01/04 | Service of Suit |

THESE DECLARATIONS TOGETHER WITH THE INSURANCE COVERAGE FORM(S), COMMON POLICY CONDITIONS, FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED
AT:    Chicago, Illinois    BY: *Patricia A Mohr*

         Authorized representative or countersignature, whichever applies

DATE:    4/27/07 JS

Producer Code: 00014570
Date:

Class Code:
SL Producer (if applicable):
SLA#: (if applicable)

GSI-06-CJ-DEC (05/2005)

Page 2 of 2



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____ effective ___4/30/07___ forms a part of Policy # _IJA9640758_____

issued to _UHS Children Services, Inc._____ .

# SCHEDULE OF NAMED INSURED

This endorsement modifies insurance provided under the following policy:

## CRIMINAL JUSTICE SYSTEM OPERATIONS

**The following amendment(s) are made to the Named Insured(s):**

| Add | Delete | Amend | # | Named Insured |
|-----|--------|-------|---|---------------|
| ☒ | ☐ | ☐ | 1 | UHS Children Services, Inc. |
| ☒ | ☐ | ☐ | 2 | Alabama Clinical Property, LLC |
| ☒ | ☐ | ☐ | 3 | Alabama Clinical Schools, Inc. |
| ☒ | ☐ | ☐ | 4 | Alicante School Elk Grove, LLC |
| ☒ | ☐ | ☐ | 5 | American Clinical Schools, Inc. |
| ☒ | ☐ | ☐ | 6 | Associated Childcare Educational Services, Inc. |
| ☒ | ☐ | ☐ | 7 | CCS Arkansas Property, LLC |
| ☒ | ☐ | ☐ | 8 | CCS Kentucky Property, LLC |
| ☒ | ☐ | ☐ | 9 | CCS/Bay County, Inc. |
| ☒ | ☐ | ☐ | 10 | CCS/Altacare of Arkansas, Inc. |
| ☒ | ☐ | ☐ | 11 | CCS/Altacare of Kentucky, Inc. |
| ☒ | ☐ | ☐ | 12 | CCS/Altacare of Michigan, Inc. |
| ☒ | ☐ | ☐ | 13 | CCS/ Gulf Pine, Inc. |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

06-CJ-824 (03/2005)                                                                                         Page 1 of 3

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 17 of 177 PageID #: 182

| | | | | |
|---|---|---|---|---|
| ☒ | ☐ | ☐ | 14 | CCS/Lansing, Inc.; DBA/ Turning Point Youth Center |
| ☒ | ☐ | ☐ | 15 | CCS/Little Rock, Inc. |
| ☒ | ☐ | ☐ | 16 | CCS/Meadow Pines, Inc. |
| ☒ | ☐ | ☐ | 17 | CCS/Rivendell of Kentucky, Inc. |
| ☒ | ☐ | ☐ | 18 | Chad Youth Enhancement Center, Inc. |
| ☒ | ☐ | ☐ | 19 | Children's Comprehensive Services of California, Inc. |
| ☒ | ☐ | ☐ | 20 | Children's Comprehensive Services, Inc. |
| ☒ | ☐ | ☐ | 21 | Elmira NPS, LLC |
| ☒ | ☐ | ☐ | 22 | Keystone Charlotte Property, LLC |
| ☒ | ☐ | ☐ | 23 | Keystone Charlotte, LLC. |
| ☒ | ☐ | ☐ | 24 | Keystone Continuum, LLC |
| ☒ | ☐ | ☐ | 25 | Keystone Detention, LLC |
| ☒ | ☐ | ☐ | 26 | Keystone DJJ, LLC |
| ☒ | ☐ | ☐ | 27 | Keystone Education and Youth Services, LLC |
| ☒ | ☐ | ☐ | 28 | Keystone Education Transportation, LLC |
| ☒ | ☐ | ☐ | 29 | Keystone JJAEP, LLC |
| ☒ | ☐ | ☐ | 30 | Keystone Marion, LLC |
| ☒ | ☐ | ☐ | 31 | Keystone Memphis Property, LLC |
| ☒ | ☐ | ☐ | 32 | Keystone Memphis, LLC |
| ☒ | ☐ | ☐ | 33 | Keystone Nevada, LLC |
| ☒ | ☐ | ☐ | 34 | Keystone Newport News, LLC |
| ☒ | ☐ | ☐ | 35 | Keystone NPS, LLC |
| ☒ | ☐ | ☐ | 36 | Keystone Richland Center, LLC |
| ☒ | ☐ | ☐ | 37 | Keystone Savannah Property Holdings, LLC |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

| | | | | |
|---|---|---|---|---|
| ☒ | ☐ | ☐ | 38 | Keystone Savannah, LLC |
| ☒ | ☐ | ☐ | 39 | Keystone/CCS Partners, LLC |
| ☒ | ☐ | ☐ | 40 | Kids First Foundation |
| ☒ | ☐ | ☐ | 41 | PA Clinical Schools, Inc. |
| ☒ | ☐ | ☐ | 42 | Tennessee Clinical Schools, Inc. |
| ☒ | ☐ | ☐ | 43 | Ventures Healthcare of Gainesville, Inc. |
| ☒ | ☐ | ☐ | 44 | Keystone WSNC, LLC |
| ☒ | ☐ | ☐ | 45 | Keystone Oklahoma City LLC |
| ☒ | ☐ | ☐ | 46 | Keys Group Holdings, LLC |
| ☒ | ☐ | ☐ | 47 | Universal Health Services, Inc. |
| ☒ | ☐ | ☐ | 48 | UHS of Delaware, Inc. |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

06-CJ-824 (03/2005)                                                                 Page 3 of 3

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 19 of 177 PageID #: 184


*General*Star™

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____, effective ___4/30/07___ forms a part of Policy # IJA964075B _____

issued to _UHS Children Services, Inc._____ .

# SCHEDULE OF LOCATIONS

This endorsement modifies insurance provided under the following policy:
## CRIMINAL JUSTICE SYSTEM OPERATIONS

| Prem. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|
| 1 | 1221 Alton Drive, Birmingham, AL 35210 | Residential Treatment Center |
| 2 | 6001 12 Ave., East Tuscaloosa, AL 34505 | Closed |
| 3 | 2216 Missouri St., Tuscaloosa, AL 35674 | Closed |
| 4 | 5325 Engle Rd., Carmichael, CA 95608 | Alternative School |
| 5 | 12379 Miracle Hill Rd., Desert Hot Springs, CA 92240 | Alternative School |
| 6 | 2815 Steel Canyon Rd., El Cajon, CA 92019 | Alternative School |
| 7 | 3155 Dwight Rd., Elk Grove, CA 95758 | Alternative School |
| 8 | 5416 Holdener Rd., Elmira, CA 95626 | Alternative School |
| 9 | 11980 S Mt Vernon, Grand Terrace, CA 92313 | Alternative School |
| 10 | 145 N Tahquitz Ave., Hemet, CA 92543 | Residential Treatment Center |
| 11 | 1236 H Street, Ramona, CA | Alternative School |
| 12 | 1130 D Street, Ramona, CA | Alternative School |
| 13 | 8968 Archibald Ave., Rancho Cucamonga, CA 91730 | Alternative School |
| 14 | 9994 County Farm Rd., Riverside, CA 92503 | Residential Treatment Center |
| 15 | 1001 County Farm Rd., Riverside, CA 92503 | Alternative School |
| 16 | 1001 County Farm Rd., Riverside, CA 92503 | Residential Treatment Center |
| 17 | 7533 Van Nuys Blvd., Van Nuys, CA 91405 | Alternative School |
| 18 | 7533 Van Nuys Blvd., Van Nuys, CA 91405 | Alternative School |
| 19 | 12199 Industrial Blvd., Victorville, CA 92392 | Group Home |
| 20 | 1025 Service Place, Suite 103, Vista, CA | Residential Treatment Center |
| 21 | 12422 NW Gordon & Truett Revell Rd., Bristol, FL | Residential Treatment Center |
| 22 | 11712 Van Doren Ln., Fountain, FL 32438 | Behavioral Day Treatment |
| 23 | 202 Century 21 Dr., Suite 1, Jacksonville, FL 32216 | Residential Treatment Center |
| 24 | 101 W Townsend Rd., St Johns, MI 48879 | Residential Treatment Center |
| 25 | 1715 Sharon Rd, West Charlotte, NC 28210 | Residential Treatment Center |
| 26 | 3637 Old Vineyard Rd., Winston-Salem, NC 27104 | |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

06-CJ-826 (03/2005)                                                                                    Page 1 of 2

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 20 of 177 PageID #: 185

# SCHEDULE OF LOCATIONS

This endorsement modifies insurance provided under the following policy:

## CRIMINAL JUSTICE SYSTEM OPERATIONS

| Prem. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|-----------|------------------------------------------------------|-----------|
| 27 | 1451 Lucas Rd., Mansfield, OH 44905 | Residential Treatment Center |
| 28 | 6501 NE 50th St., OklahomaCity, OK 73141 | Residential Treatment Center |
| 29 | 1830 Tower View Rd., Coatesville, PA 19320 | Residential Treatment Center |
| 30 | 1751 Oak Plains Rd., Ashland City, TN 27015 | Residential Treatment Center |
| 31 | 1881 D Fort Campbell Blvd., Clarksville, TN 37042 | Alternative School |
| 32 | 711 Hwy 51 By Pass S, Dyersburg, TN | Residential Treatment Center |
| 33 | 307 Wesley St., Johnson City, TN 37601 | Secure Juvenile Detention |
| 34 | 3065 Murfreesboro, Lebanon, TN 37087 | Alternative School |
| 35 | 7900 Lowrance Rd., Memphis, TN 38125 | Residential Treatment Center |
| 36 | 332 Hospital Rd., Mountain City, TN 37683 | Residential Treatment Center |
| 37 | 1640 Lacassas Pike, Murfreesboro, TN | Residential Treatment Center |
| 38 | 802 S Church St., Murfreesboro, TN 37130 | Closed |
| 39 | 802 S Chursh St., Murfreesboro, TN 37130 | Closed |
| 40 | 802 S Church St., Murfreesboro, TN 37130 | Closed |
| 41 | 1220 S 8th St., Nashville, TN 37203 | Residential Treatment Center |
| 42 | 3401 W End Ave., Suite 400, Nashville, TN 37203 | Admin Office |
| 43 | 415 Seven Hawks Ln., Waverly, TN 37185 | Residential Treatment Center |
| 44 | 1252 Lantana, Corpus Christi, TX 78407 | Alternative School |
| 45 | 17579 Warwick Blvd., Newport News, VA 23603 | Residential Trtmt Ctr & Alternative School |
| 46 | 225 State St., Marion, VA 24354 | Residential Treatment Center |
| 47 | 1718 E Main St., Ventura, CA 93001 | Alternative School |
| 48 | 209W Criser Rd., Suite 400, Front Royal, VA 22630 | Residential Treatment Center |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

06-CJ-826 (03/2005)                                           Page 2 of 2

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

# GENERAL STAR INDEMNITY COMPANY

## COMMON POLICY PROVISIONS
### - CRIMINAL JUSTICE SYSTEM OPERATIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under SECTION I – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI – DEFINITIONS.

---

### SECTION I – WHO IS AN INSURED

---

Limited to those listed on the Declarations page:

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "executive officers" and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees.

2. Each of the following is also an Insured:

   a. Your "volunteer workers" but only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are Insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above; or

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 22 of 177 PageID #: 187

(c) For which there is any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury described in Paragraphs (1)(a) or (b) above.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION II – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. "Claims" made; or
   c. Persons or organizations making "claims".

2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage C;
   b. "Damages" under Coverage A, except "damages" because of "bodily injury" or "property damage" included in the "products-completed operations hazard";
   c. "Damages" under Coverage B, and.
   d. "Damages" under Professional Liability coverage part; and
   e. "Damages" under any other policy coverage parts as indicated on that coverage part form.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for "damages" because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the "Personal and Advertising Injury" Limit is the most we will pay under Coverage B for the sum of all "damages" because of all "personal and advertising injury" sustained during the policy period.

5. Subject to 2. or 3. above, whichever applies, the Each "Occurrence" Limit is the most we will pay for the sum of:
   a. "Damages" under Coverage A;
   b. Medical expenses under Coverage C; and
   c. "Damages" under any other policy coverage parts as indicated on that coverage part form

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for "damages" because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

8. The Professional Liability Limit is the most we will pay for all "damages" because of "acts, errors or omissions" committed in connection with the performance of
   a. "professional services" by any Insured in their respective capacity:
      (1) In the conduct of the Insured's business; and/or
      (2) In the conduct of the ownership, operation, maintenance, management or use of any facility designated in the Declarations;
   b. Services under other coverages that are specifically stated as sublimits of this Professional Liability Limit.

9. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All "claims" alleging causally or factually interrelated "acts, errors or omissions" or occurrences" regardless of the number of "claims", insureds, or claimants are considered to be one "claim". All such "claims" are considered first made at the time the first "claim" was first made. Furthermore, an interrelated "act, error, or omission" is deemed to have occurred at the time the first interrelated "act, error, or omission" occurred.

All "claims" arising from the same or related "act, error or omission" or "occurrence" shall be considered a single "claim" for the purpose of this insurance and shall be subject to the same limit of liability.

10. Insurance Under More Than One Coverage Part or Policy
    If more than one of this policy's coverage parts apply to the same "claim", we will not pay more than the highest Limit of Insurance of one Coverage Part applicable to the "claim". If the same or related "acts, errors, omissions" or accidents give rise to an "occurrence" that is covered under more than one Coverage Part of this policy, they are deemed to be the same "claim" for purposes of this section, and we will not pay more than the highest Limit of Insurance of one Coverage Part applicable to that "claim".

    If more than one policy of insurance issued by us applies to the same or related "claim", we shall not be liable for more than the single highest Limit of Insurance set forth in the Declarations or applicable endorsements of all policies provided by us to the Insured.

11. Deductible
    a. Our obligation to pay "damages" on your behalf applies only to the amount of such "damages" in excess of any per "occurrence" or per "claim" deductible amounts stated on the Declarations or applicable endorsement as applicable to such coverages, and the Limits of Insurance applicable to each "occurrence", offense, or "claim" for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

    b. The deductible amounts apply to "damages" and all "claim expense".

    c. The deductible amounts stated in the Declarations or applicable endorsement apply:
       (1) Under "bodily injury", to all "damages" and "claim expense" because of "bodily injury";
       (2) Under "property damage", to all "damages" and "claim expense" because of "property damage";

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 24 of 177 PageID #: 189

(3) Under "personal and advertising injury", to all "damages" and "claim expense" because of "personal and advertising injury"

(4) Under "professional liability", to all "damages" and "claim expense" because of a covered "act, error or omission"

as a result of any one "occurrence", offense or "claim", whichever is applicable as deductible in a specific coverage, regardless of the number of persons or organizations who sustain "damages" because of that "occurrence", offense, or "claim".

d. The terms of this insurance, including those with respect to our right and duty to defend the Insured against any "claim" seeking those "damages" and your duties in the event of any "occurrence", offense, or "claim", apply irrespective of the application of the deductible amount.

e We may pay any part or all of the deductible amount to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

---

## SECTION III - SUPPLEMENTARY PAYMENTS

1. We will pay, with respect to any "claim" we investigate or settle, or any "claim" against an Insured we defend:
   a. All "claims expenses" we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the "bodily injury" Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the "claim", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the Insured in the "claim".

   f. Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an Insured against a "claim" and an indemnitee of the Insured is also named as a party to the "claim", we will defend that indemnitee if all of the following conditions are met:
   a. The "claim" against the indemnitee seeks "damages" for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the Insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

   d. The allegations in the "claim" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

e.  The indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "claim" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

f.  The indemnitee:
(1) Agrees in writing to:
    (a) Cooperate with us in the investigation, settlement or defense of the "claim";
    (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";
    (c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and
(2) Provides us with written authorization to:
    (a) Obtain records and other information related to the "claim"; and
    (b) Conduct and control the defense of the indemnitee in such "claim".

3. Our obligation to defend an Insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:
   a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or
   b. The conditions set forth above, or the terms of the agreement are no longer met.

## SECTION IV – CONDITIONS

1. **Bankruptcy**
   Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense or Claim**
   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:
      (1) How, when and where the "occurrence" or offense took place;
      (2) The names and addresses of any injured persons and witnesses; and
      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
   b. If a "claim" is made against any Insured, you must:
      (1) Immediately record the specifics of the "claim" and the date received; and
      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the "claim" as soon as practicable.

   c. You and any other involved Insured must:
      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";
      (2) Authorize us to obtain records and other information;
      (3) Cooperate with us in the investigation, defense against or settlement of the "claim"; and
      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.
   d. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
   e. The Company shall have the right to investigate and settle any "claim" covered by this insurance at our sole discretion, as we deem appropriate.

3. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "claim" asking for "damages" from an Insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured; but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion 1. of Section V – Exclusions

(2) Any other primary insurance available to you covering liability for "damages" arising out of the premises or operations, or the products and completed operations or "professional services", for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have the right but no duty to defend the Insured against any "claim" if any other insurer has a duty to defend the Insured against that "claim". If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this policy in accordance with our rules and rates.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 27 of 177 PageID #: 192

b. The policy's premium shown on the Declarations is a deposit premium only which will be credited toward the amount of earned premium and is payable in full at the inception of coverage and is not refundable. At the close of each audit period we will compute the earned premium for that period. Audit premiums are immediately due and payable on notice to the first Named Insured.

c. The first Named Insured shall maintain records of the information we need for premium computation and shall send us copies of such records we may request at such times as we may request.

## 6. Representations and Warranties

a. By accepting this policy, you agree, represent and warrant that:

(1) The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:

(a) Accurate and complete and no facts have been suppressed, omitted or misstated; and

(b) Material to us, and we have issued this policy in reliance upon them;

(2) Any failure to fully disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any "claim(s)" null and void and entitles us to rescind the policy from its inception; and

(3) The application for this policy is incorporated and made part of the policy by reference.

b. If the Insured commits any fraud in connection with any "claim" under this policy or conceals, misrepresents, misstates, or suppresses any fact in connection with any such "claim", this policy shall become void as to any such "claim".

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each Insured against whom "claim" is made.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring suit or transfer those rights to us and help us enforce them.

## 9. Cancellation

This policy can be cancelled by either the first Named Insured or us.

a. Only the first Named Insured may cancel this policy at any time. To do so, you must:

(1) Return the policy to us or any of our authorized representatives, indicating the effective date of cancellation; or

(2) Provide a written notice to us, stating when the cancellation is to be effective.

We must receive the policy or written notice before the cancellation date.

b. We can cancel this policy by giving written notice to the first Named Insured at your last known address at least:

(1) Ten (10) days before the effective date of cancellation, if we cancel for non-payment of premium; or

(2) Sixty (60) days before the effective date of cancellation, if we cancel for any other reason; or

(3) As required by your state.

c. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

d. If we cancel, the refund will be pro-rata. If you cancel, the refund may be less than pro-rata. The premium retained by us shall be no less than the Minimum Earned Premium, if any, as shown in the Declarations. The cancellation will be effective even if we have not made or offered a refund.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

## 10. Your Duties As The First Named Insured

**In the Declarations**
When there is more than one Named Insured, the Named Insured first named on the Declarations, on behalf of all others, will be:

a. The payee of any premiums we refund; and

b. Responsible for:
  (1) The payment of all premiums due;
  (2) Keeping records of the information we need for premium computation, and sending us copies at such times as we may request;
  (3) Notifying us that you want to cancel this policy;
  (4) Maintaining all required underlying or mandated insurance.

**11. Examination of Your Books and Records**
We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

**12. Headings**
The description in the headings and subheadings of this policy is solely for convenience and forms no part of the terms and conditions of coverage.

**13. Inspections And Surveys**
  a. We have the right to:
    (1) Make inspections and surveys at any time;
    (2) Give you reports on the conditions we find; and
    (3) Recommend changes.
  b. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
    (1) Are safe or healthful; or
    (2) Comply with laws, regulations, codes or standards.

c. Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

d. Paragraph b. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**14. Policy Changes**
The terms of this policy can be amended or waived only by endorsement issued by Us and made a part of this policy.

**15. Transfer Of Your Rights And Duties Under This Policy**
Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**16. When We Do Not Renew**
If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal if required by the state law or regulation controlling the application of this policy.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – EXCLUSIONS

We will not defend or pay for any "occurrence", "claim", including any injury, "damages", legal liability, "claims expense", loss, cost or expense, arising out of, resulting from, caused or contributed to by any of the following:

1. **Aircraft, Auto Or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and "loading or unloading".

   This exclusion applies even if the "claims" against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any Insured.

   This exclusion does not apply to:
   a. A watercraft while ashore on premises you own or rent;
   b. A watercraft you do not own that is:
      (1) Less than 26 feet long; and
      (2) Not being used to carry persons or property for a charge;
   c. Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;
   d. Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
   e. "Bodily injury" or "property damage" arising out of:

      (1) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

      (2) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

2. **Antitrust and Deceptive Practices**

   Violation of the antitrust laws, or deceptive acts or practices in trade or commerce which involve violations of any state or federal antitrust or trade regulation laws.

3. **Asbestos**

   Asbestos or exposure to asbestos, including asbestos contained in other materials; or the costs of abatement, mitigation, removal or disposal of asbestos.

   This exclusion also applies to:
   a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and
   b. Any obligation to share with or repay someone else who must pay for any such "claim".

4. **Available Benefits**

   Any "claim" for benefits or to record benefits under the terms of any plan included in your "Employee Benefit Program" to the extent that such benefits are available, with reasonable effort and cooperation of the Insured, from funds accrued by the Insured for such benefits or from other collectible insurance, notwithstanding the Insured's "act, error or omission" in administering the plan precluded the claimant from receiving such benefits.

5. **Contractual Liability**

   "Bodily injury" or "property damage" for which the Insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages":
   a. That the Insured would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be "damages" because of "bodily injury" or "property damage", provided:
   (1) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
   (2) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which "damages" to which this insurance applies are alleged.

6. **Criminal Act**
   Any criminal, malicious, dishonest or fraudulent "act, error or omission" committed by or at the direction of any Insured.

7. **Damage To Property**
   "Property damage" to:
   a. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
   b. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
   c. Property loaned to you;
   d. Personal property in the care, custody or control of the Insured;
   e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
   f. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **a., c.** and **d.** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section II – Limits Of Insurance.

Paragraph **b.** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **c., d., e.** and **f.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **f.** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

8. **Damage To Your Product**
   "Property damage" to "your product" arising out of it or any part of it.

9. **Damage To Your Work**
   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

10. **Damage To Impaired Property Or Property Not Physically Injured**
    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
    a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 31 of 177 PageID #: 196

**11. Electronic Data**

"Damages" arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**12. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

**13. ERISA**

Any of the responsibilities, obligations, or duties imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended or by any similar federal, state or local laws.

**14. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**15. Lead**

Lead or exposure to lead; the toxic or pathological properties of lead, lead compounds or lead contained in any materials, or the costs of abatement, mitigation, removal or disposal of lead. This exclusion also applies to:

a.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b.  Any obligation to share with or repay someone else who must pay for any such "claim".

**16. Liquor Liability**

"Bodily injury" or "property damage" for which any Insured may be held liable by reason of:

a.  Causing or contributing to the intoxication of any person;

b.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**17. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

a.  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any Insured; or

b.  The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**18. Mold**

a.  The inspection, evaluation or testing of, or the failure to inspect, evaluate or test for, any items listed in d. (1) through (4) below;

b.  The failure to discover or disclose any items listed in items d.(1) through d.(4) below;

c.  The actual, alleged or threatened inhalation of, ingestion or, contact with, exposure to, existence of, or presence of, any of the listed items in d.(1) through (4) below on or within a building or structure, including its contents; or

d.  The clean up, remediation, containment, removal or abatement of any items listed in (1) through (4) below:

(1) Any "fungus(i)", "mold(s)", mildew or yeast;

(2) Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew, or yeast;

(3) Any substance, vapor, gas or other emission of any organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew, or yeast; and

**(4)** Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxin emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to such "claim".

**19. Pollution**

    **a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        **(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured. However, this subparagraph does not apply to:

            **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

            **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that additional insured; or

            **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

        **(2)** At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

        **(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

            **(i)** Any Insured; or

            **(ii)** Any person or organization for whom you may be legally responsible; or

        **(4)** At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor. However, this subparagraph does not apply to:

            **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such Insured, contractor or subcontractor;

            **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(5) At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

b. Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) "Claim" by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for "damages" because of "property damage" that the Insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such "claim" by or on behalf of a governmental authority.

**20. Recall Of Products, Work Or Impaired Property**

"Damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**21. Regulatory, Governmental Proceeding**

Any proceeding against, or fines or penalties levied against, any Insured by a local, state or federal regulatory agency or self-regulatory body.

**22. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**23. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

However, this exclusion shall not apply to rebellion, revolt, riot, uprising, crowd control or insurrection caused by or involving "Inmates" of the Insured's business.

**24. Workers' Compensation And Similar Laws**

Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Exclusions 1., 7. through 10., 16., 17., 19., 20., 23., and 24. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section II – Limits Of Insurance.

## SECTION VI – DEFINITIONS

1. **"Act, error or omission"** means the failure to execute a required action, or a mistaken action committed in connection with the performance of "professional services" as described in the declarations page by any Insured. This includes but is not limited to the violation of a constitutional or civil right.

2. **"Administration"** means:
   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";
   b. Handling records in connection with the "employee benefit program"; or
   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

3. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

4. **"Auto"** means:
   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

5. **"Bodily injury"** means:
   a. "Bodily injury", sickness or disease sustained by a person, including death resulting from any of these at any time;
   b. Assault and battery;
   c. Disability, mental anguish; or
   d. "Damages" claimed by any person or organization for care, loss of services or death resulting at any time from "bodily injury."

6. **"Claim"** means:
   a. A written order or demand for money "damages" to which this insurance applies;
   b. An arbitration proceeding or other alternative dispute resolution proceeding seeking money "damages", to which an Insured is required to submit by statute or court rule or which any Insured submits with our consent to which this insurance applies;
   c. A suit;
   d. An arbitration proceeding in which such "damages" are claimed and to which the Insured must submit or does submit with our consent; or
   e. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the Insured submits with our consent.

   "Claim" does not include:
   a. Sanctions, fines, or penalties;
   b. Payment for "professional services", including refund of fees, withdrawal or reduction of fees paid to the Insured and/or recessiory "damages";
   c. Proceedings seeking declarative, injunctive or other non-pecuniary or equitable relief; or
   d. That portion of a proceeding seeking monetary relief that seeks declarative, injunctive or other non-pecuniary or equitable relief.

7. "Claim Expense" means:
   a. Fees charged by an attorney we designate; and
   b. All other fees, costs and expenses, which result from the investigation, adjustment, defense and appeal of a "claim".

   These expenses must be incurred by us, or by you with our prior written consent.

   "Claim Expense" does not include:
   a. Civil fines or penalties;
   b. Criminal fines or penalties;
   c. Administrative or other fines or penalties;
   d. Sanctions;
   e. Any portion of any judgment, award of verdict that represents a multiple of the compensatory amounts;
   f. Punitive or exemplary damages;
   g. Salaries and expenses of our employees, you, your "employees", or of any Insured; or
   h. Those items included in SUPPLEMENTARY PAYMENTS.

8. "Coverage territory" means:
   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or
   c. All other parts of the world if the injury or damage arises out of:
      (1) Goods or products made or sold by you in the territory described in **a.** above;
      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or
      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the Insured's responsibility to pay "damages" is determined in a "claim" on the merits, in the territory described in **a.** above or in a settlement we agree to.

9. "Damages" means sums that any Insured becomes legally obligated to pay, resulting from a "claim" to which this policy applies.

10. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or an "inmate".

11. "Employee Benefit Program" means a program providing some or all of the following benefits to "employees", whether provided through a cafeteria plan or otherwise:
    a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;
    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;
    c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;
    d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and
    e. Any other similar benefits designated in or added thereto by endorsement.

12. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

13. "Fungus(i)" means any type or form of fungus, including "mold" or mildew and any mycotoxins, "spores", scents, byproducts produced or released by fungi, smuts, rust, or mushrooms.

14. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

15. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
  b. You have failed to fulfill the terms of a contract or agreement;
  if such property can be restored to use by:
  a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
  b. Your fulfilling the terms of the contract or agreement.

16. **"Inmate"** includes a prisoner, detainee or any person in the full-time or part-time care, custody or control of any Insured.

17. **"Insured contract"** means:
  a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
  b. A sidetrack agreement;
  c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
  d. An obligation, as required by ordinance, to indemnify a governmental entity, except in connection with work for a governmental entity;
  e. An elevator maintenance agreement;
  f. That part of any other contract or agreement pertaining to your business (including an indemnification of a governmental entity in connection with work performed for a governmental entity) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
  Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
  (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
  (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
(3) Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render "professional services", including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

18. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

19. **"Loading or unloading"** means the handling of property:
  a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
  b. While it is in or on an aircraft, watercraft or "auto"; or
  c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;
  but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 37 of 177 PageID #: 202

20. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:
   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
   b. Vehicles maintained for use solely on or next to premises you own or rent;
   c. Vehicles that travel on crawler treads;
   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
      (1) Power cranes, shovels, loaders, diggers or drills; or
      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
   e. Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
      (2) Cherry pickers and similar devices used to raise or lower workers;
   f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.
      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
      (1) Equipment designed primarily for:
         (a) Snow removal;
         (b) Road maintenance, but not construction or resurfacing; or
         (c) Street cleaning;
      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

21. **"Mold(s)"** means any superficial growth produced on damp or decaying organic matter or on living organisms, and **Fungi** that produce "mold".

22. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

23. **"Personal and advertising injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f. The use of another's advertising idea in your "advertisement"; or
   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

24. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

25. "Products-completed operations hazard":
    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
       (1) Products that are still in your physical possession; or
       (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
          (a) When all of the work called for in your contract has been completed.
          (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
          (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
          Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
    b. Does not include "bodily injury" or "property damage" arising out of:
       (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
       (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
       (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

26. "Professional services" means the furnishing of "professional services":
    a. In the conduct of your business, including furnishing security of your facility and "inmates"; providing meals, educational service and supervised activities for "inmates", protection to visitors; and supervision of your "inmates"; and
    b. Performance of your "professional services" required by the Facility(ies) set forth in the Declarations, including the ownership and maintenance of such facility.

27. "Profit Sharing Plans" mean only such plans that are equally available to all full time "employees".

28. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

29. Sexual Misconduct means:
    a. Alleged or threatened sexual abuse, sexual molestation or sexual exploitation and includes, but is not limited to, any verbal or nonverbal communication, behavior or conduct of a sexual nature; or

b. The negligent:
   (1) Employment;
   (2) Investigation;
   (3) Supervision;
   (4) Reporting to the proper authorities, or failure to so report; or
   (5) Retention

   of any person for whom any Insured is or was legally responsible and whose conduct would be covered by a. above.

30. "Spores" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants or organisms or microorganisms.

31. "Stock Subscription Plans" mean only such plans that are equally available to all full time "employees".

32. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

33. "Volunteer worker" means a person who is not your "employee" nor your "inmate", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

34. "Your product":
   a. Means:
      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;
         (b) Others trading under your name; or
         (c) A person or organization whose business or assets you have acquired; and
      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
   b. Includes:
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
      (2) The providing of or failure to provide warnings or instructions.
   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

35. "Your work":
   a. Means:
      (1) Work or operations performed by you or on your behalf; and
      (2) Materials, parts or equipment furnished in connection with such work or operations.
   b. Includes
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
      (2) The providing of or failure to provide warnings or instructions.

IN WITNESS WHEREOF the GENERAL STAR INDEMNITY COMPANY

has caused this Policy to be signed by its President and Secretary at Stamford, Connecticut, but the same shall not be binding upon the Company unless countersigned on the Declarations Page by an authorized representative of the Company.

GENERAL STAR INDEMNITY COMPANY

_____
Secretary

_____
President

GSI-06-CJ-103 (05/2005)   © Copyright 2005, General Star Management Company, Stamford, CT
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 40 of 177 PageID #: 205

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## - CRIMINAL JUSTICE SYSTEM OPERATIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under Section I – Who Is An Insured of the Common Policy Provisions.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions of the Common Policy Provisions.

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the Insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "claim" seeking those "damages". However, we will have no duty to defend the Insured against any "claim" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any "claim" that may result. But:

(1) The amount we will pay for "damages" is limited as described in Section II – Limits Of Insurance of the Common Policy Provisions; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments section of the Common Policy Provisions.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no Insured listed under Paragraph 1. of Section I – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or "claim", knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed Insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after, the policy period will be deemed to have been known or occurred prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Insured listed under Paragraph 1. of Section I – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any Insured listed under Paragraph 1. of Section I – Who Is An Insured of the Common Policy Provisions or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim":

© 2005, General Star Management Company, Stamford CT
May include copyrighted material of ISO Properties, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 41 of 177 PageID #: 206

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or "claim" for "damages" because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

## 2. Exclusions

This insurance does not apply to:

a. **Common Policy Provision Exclusions**
Any exclusions listed in the Common Policy Provisions.

b. **Discrimination**: Discrimination based on, but not limited to, race, color, creed, sex, religion, age, national origin, marital status, pregnancy status, physical or other disability, HIV or AIDS status or sexual orientation. This exclusion applies, whether or not the discrimination is an alleged violation of any federal, state or local governmental law or regulation prohibiting such discrimination, even if such discrimination is related to "professional services".

c. **Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

d. **Employee Benefit Liability**
Alleging, arising out of, based upon or attributable to any failure to execute a required action, or a mistaken action committed in the "administration" of the Insured's "Employee Benefit Program", including, but not limited to the insolvency of any Named Insured or any organization that administers or insures any plan included in the "Employee Benefit Program" or an insufficiency of funds to meet any obligations under any plan included in the "Employee Benefit Program".

e. **Employer's Liability**
"Bodily injury" to:
(1) An "employee" of the Insured arising out of and in the course of:
   (a) Employment by the Insured; or
   (b) Performing duties related to the conduct of the Insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:
(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.
This exclusion does not apply to liability assumed by the Insured under an "insured contract".

This exclusion does not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section II – Limits Of Insurance.

f. **Employment-Related Practices**
Any "occurrence", "claim", including any injury, "damages", legal liability, "claims expense", loss, cost or expense arising out of any:
(1) Refusal to employ;
(2) Termination of employment;
(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions;
(4) Consequential "bodily injury" to any person as a result of employment-related practices described in paragraphs a., b., or c. above.

This exclusion applies:
(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

g. **Health Care Services**
Any "occurrence", "claim", including any injury, "damages", legal liability, "claims expense", loss, cost or expense arising out of:
(1) The rendering or failure to render:
   (a) Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction; or
   (b) Any health or therapeutic service, treatment, advice or instruction;

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 42 of 177 PageID #: 207

(2) The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

(3) The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

**h. Human Immunodeficiency Virus (HIV) and/or Acquired Immune Deficiency Syndrome (AIDS)**
"Bodily injury" or "property damage" arising out of any form of the Human Immunodeficiency Virus (HIV) and/or Acquired Immune Deficiency Syndrome (AIDS).

This exclusion applies whether such "bodily injury" or "property damage" arises out of or is alleged to have arisen out of any act or failure to act or any allegation of negligence by any Insured:

(1) In the hiring, training or supervision of any "employee";

(2) In the controlling, monitoring or supervising the care of any person in the care, custody or control of any Insured;

(3) In testing, screening, or quarantining any person; or

(4) In obtaining or providing medical treatment or medical monitoring for any person.

**i. Personal And Advertising Injury**
"Bodily injury" arising out of "personal and advertising injury".

**j. Sexual Misconduct**
"Bodily injury" arising out of "sexual misconduct".

---

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**
a. We will pay those sums that the Insured becomes legally obligated to pay as "damages" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "claim" seeking those "damages". However, we will have no duty to defend the Insured against any "claim" seeking "damages" for "personal and advertising injury" to which this insurance does not apply. We may, at our sole discretion, investigate any offense and settle any "claim" that may result. But:
(1) The amount we will pay for "damages" is limited as described in Section II – Limits Of Insurance; and
(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments section of the Common Policy Provisions.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**
This insurance does not apply to:
a. **Common Policy Provision Exclusions**
Any exclusions listed in the Common Policy Provisions.

b. **Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

c. **Discrimination**
Discrimination based on, but not limited to, race, color, creed, sex, religion, age, national origin, marital status, pregnancy status, physical or other disability, HIV or AIDS status or sexual orientation. This exclusion applies, whether or not the discrimination is an alleged violation of any federal, state or local governmental law or regulation prohibiting such discrimination, even if such discrimination is related to "professional services".

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 43 of 177 PageID #: 208

d. **Employee Benefit Liability**
Alleging, arising out of, based upon or attributable to any failure to execute a required action, or a mistaken action committed in the "administration" of the Insured's "Employee Benefit Program", including, but not limited to the insolvency of any Named Insured or any organization that administers or insures any plan included in the "Employee Benefit Program" or an insufficiency of funds to meet any obligations under any plan included in the "Employee Benefit Program".

e. **Employment-Related Practices**
Any "occurrence", "claim", including any injury, "damages", legal liability, "claims expense", loss, cost or expense arising out of any:
(1) Refusal to employ;
(2) Termination of employment;
(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions;
(4) Consequential "bodily injury" to any person as a result of employment-related practices described in paragraphs (1), (2), or (3) above.

This exclusion applies:
(1) Whether the Insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

f. **Human Immunodeficiency Virus (HIV) and/or Acquired Immune Deficiency Syndrome (AIDS)**
"Personal and advertising injury" arising out of any form of the Human Immunodeficiency Virus (HIV) and/or Acquired Immune Deficiency Syndrome (AIDS).
This exclusion applies whether such "personal and advertising injury" arises out of or is alleged to have arisen out of any act or failure to act or any allegation of negligence by any Insured:
(1) In the hiring, training or supervision of any "employee";

(2) In the controlling, monitoring or supervising the care of any person in the care, custody or control of any Insured;
(3) In testing, screening, or quarantining any person; or
(4) In obtaining or providing medical treatment or medical monitoring for any person.

g. **Health Care Services**
Any "occurrence", "claim", including any injury, "damages", legal liability, "claims expense", loss, cost or expense arising out of:
(1) The rendering or failure to render:
    (a) Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction; or
    (b) Any health or therapeutic service, treatment, advice or instruction;
(2) The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or
(3) The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

h. **Media And Internet Type Services**
"Personal and advertising injury" committed by an Insured whose business is:
(1) Advertising, broadcasting, publishing or telecasting;
(2) Designing or determining content of web-sites for others; or
(3) An Internet search, access, content or service provider.
However, this exclusion does not apply to Paragraphs **23.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section of the Common Policy Provisions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

i. **Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

 © 2005, General Star Management Company, Stamford CT
May include copyrighted material of ISO Properties, Inc., with its permission.

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 44 of 177 PageID #: 209

**j. Material Published With Knowledge Of Falsity**
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**k. Material Published Prior To Policy Period**
"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**l. Quality Or Performance Of Goods -- Failure To Conform To Statements**
"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**m. Sexual Misconduct**
"Personal and Advertising Injury" arising out of "sexual misconduct".

**n. Wrong Description Of Prices**
"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

---

## COVERAGE C - MEDICAL PAYMENTS

1. **Insuring Agreement**
   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
      (1) On premises you own or rent;
      (2) On ways next to premises you own or rent; or
      (3) Because of your operations;
      provided that:
      (1) The accident takes place in the "coverage territory" and during the policy period;
      (2) The expenses are incurred and reported to us within one year of the date of the accident; and
      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
      (1) First aid administered at the time of an accident;
      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured or "Inmate"**
      To any Insured or "inmate", except "volunteer workers".

   b. **Hired Person**
      To a person hired to do work for or on behalf of any Insured or a tenant of any Insured.

   c. **Injury On Normally Occupied Premises**
      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Athletics Activities**
      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   e. **Products-Completed Operations Hazard**
      Included within the "products-completed operations hazard".

   f. **Coverage A Exclusions**
      Excluded under Coverage A.

   g. **Common Policy Provision Exclusions**
      Any exclusions listed in the Common Policy Provisions.

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement # _____, effective ___4/30/07___ forms a part of Policy # _IJA964075B_____

issued to _UHS Children Services, Inc._____ by GENERAL STAR INDEMNITY COMPANY.

## CRIMINAL JUSTICE SYSTEM - **PROFESSIONAL LIABILITY**
### CLAIMS MADE AND REPORTED

This endorsement modifies insurance provided under the following forms:

### COMMERCIAL GENERAL LIABILITY Claims Made COVERAGE FORM— CRIMINAL JUSTICE SYSTEM OPERATIONS

and

### COMMON POLICY PROVISIONS – CRIMINAL JUSTICE SYSTEM OPERATIONS

THE INSURANCE PROVIDED IN THIS ENDORSEMENT IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULT OF ACTS, ERRORS OR OMISSIONS TAKING PLACE ON OR AFTER THE RETROACTIVE DATE STATED BELOW AND WHICH ARE FIRST MADE AND REPORTED TO US WHILE THIS ENDORSEMENT IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST ANY INSURED OR FIRST REPORTED TO US AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, AN EXTENDED REPORTING PERIOD APPLIES.

| SCHEDULE |
|---|
| **Description of Profession:** _____ |
| (if no profession is designated, then this coverage applies to the Named Insured on the Declarations) |
| **Professional Liability – Each Claim Limit**     1,000,000 |
| **Professional Liability – General Aggregate Limit:**     5,000,000 |
| **Professional Liability – Retroactive Date:**     4/30/03 |

### IMPORTANT NOTICE - - AGGREGATE LIMIT
The COMMERCIAL GENERAL LIABILITY Claims Made COVERAGE FORM – CRIMINAL JUSTICE SYSTEM OPERATIONS and the coverage provided by this endorsement share an Aggregate Limit of Insurance. In the event the LIMITS OF INSURANCE under this coverage part become exhausted, no further limits are provided by this policy. In the event the LIMITS OF INSURANCE of the COMMERCIAL GENERAL LIABILITY Claims Made COVERAGE PART (and any other endorsements that share such limit, if any) become exhausted, no further coverage is provided by this PROFESSIONAL LIABILITY COVERAGE PART.

Various provisions in this coverage part restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this coverage part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under Section I – Who Is An Insured of the Common Policy Provisions. Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI –Definitions of the Common Policy Provisions.

GSI-07-CJ-101 (03/2006)     Page 1 of 8

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 46 of 177 PageID #: 211

| SECTION I – PROFESSIONAL LIABILITY COVERAGES |
|---|

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the COMMERCIAL GENERAL LIABILITY COVERAGE PART – CRIMINAL JUSTICE SYSTEM OPERATIONS, Item 1. INSURING AGREEMENT is deleted and replaced by the following:

1. **Insuring Agreement**

   A. We will pay under this endorsement those sums that "you" become legally obligated to pay as "damages" because of any "claims" first made against "you" during the Policy Period and first reported to "us" in writing during the policy period or within sixty (60) days thereafter, arising out of the same or related "act, error or omission" of "yours" in the conduct of "your" operation of the criminal justice facility or facilities designated in the Declarations.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section III of this coverage part or the Supplementary Payments section of the Common Policy Provisions.

   B. This insurance applies to "damages" provided always that an "act, error, or omission" took place in the "coverage territory" and:.
      a. during the policy period; or
      b. prior to the policy period provided that such same or related "act, error or omission" took place on or after the Retroactive Date, if any, shown in the Schedule above and before the end of the policy period and prior to the policy period, no Insured listed under Paragraph 1. of Section I – Who Is An Insured of the Common Policy Provisions and no "employee" authorized by you to give or receive notice of an "act, error, or omission" or "claim" knew that an "act, error or omission", including any event, situation or transaction that may reasonably be expected to give rise to a "claim" being made against any Insured had occurred.

      If such a listed Insured or authorized "employee" knew, prior to the policy period, that the "act, error, or omission" or event, situation or transaction that may reasonably be anticipated to give rise to a "claim" had occurred, then any continuation, change or resumption of such circumstances during or after the policy period will be deemed to have been known prior to the policy period.

   C. A "claim" will be deemed to have been made at the earliest time when any Insured listed under Paragraph 1. of Section I – Who Is An Insured of the Common Policy Provisions or any "employee" authorized by "you" to give or receive notice of an "act, error, or omission" or "claim":
      a. reports all, or any part, of the same or a related "act, error, or omission" to "us" or any other insurer;
      b. receives a written or verbal demand or "claim" for "damages" because of the same or related "act, error, or omission"; or
      c. becomes aware by any other means that the same or related "act, error, or omission" has occurred or has begun to occur.

2. **Defense and Settlement**

   A. "We" will have the right and duty to defend "you" against any "claim" seeking "damages" to which this insurance applies. "We" have the right to investigate and settle any "claim" arising from an "act, error, or omission" to which this insurance applies at "our" sole discretion. However, "we" will have no duty to defend "you" against any "claim" to which this insurance does not apply.

   B. "Our" payment of the applicable Limit of Insurance ends our duty to defend or settle any "claim" or pay any "damages" in connection with any "claim", subject to that limit.

GSI-07-CJ-101 (03/2006)

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 47 of 177 PageID #: 212

| SECTION II – DUTIES, ASSISTANCE AND COOPERATION OF INSURED |
|---|

**SECTION IV – CONDITIONS of the COMMON POLICY PROVISIONS – CRIMINAL JUSTICE SYSTEM OPERATIONS, Item 2. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE OR CLAIM is deleted and replaced by the following:**

1. **Duty to notify "us"**

    If, during the policy period, "you" become aware of any "act, error, or omission", including any event, circumstance, situation or transaction that may reasonably be expected to give rise to a "claim" being made against any Insured, "you" must notify "us" in writing as soon as practicable, but in no event more than 60 days after the end of the Policy Period. Notice shall include all demand letters and the fullest information obtainable surrounding such event, circumstance, situation or transaction including a description of the "act, error or omission" in question, identities of the potential claimants, the consequences that have resulted or may result from the "act error or omission", the "damages" that may result from the "act, error or omission" and the circumstances by which "you" first became aware of the "act, error or omission".

2. **Duties In the Event of a Claim**
    A. If, during the policy period or any applicable Extended Reporting Period, a "claim" is brought against any Insured arising out of any "act, error, or omission" to which this insurance applies, "you" must:
        a. Immediately record the specifics of the "claim" and the date received;
        b. Provide "us" with written notice of the "claim" as soon as practicable, but in no event after the end of the policy period or any applicable Extended Reporting Period;
        c. Immediately send "us" copies of any demand letters, pleadings, notices, summonses, or other legal papers received in connection with the "claim".

    B. All Insureds must cooperate with "us" in the investigation, defense or settlement of the "claim" including:
        a. Upon request, submit to examination and interrogation under oath by our representative;
        b. Attend hearings, depositions and trails as requested by "us";
        c. Assist in securing and giving evidence and obtaining the attendance of witnesses; and
        d. Provide written statements to "our" representative and attend meetings with such representative for the purpose of investigation and/or defense, all without charge to "us".

    C. No Insured shall, except at "your" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without "our" consent.

    D. "You" will consent to the submission of special verdict forms or other written inquiries to the trier of fact for the purpose of determining the basis for "your" liability and any "damages" awarded if suit or any other proceeding is brought on the "claim".

| SECTION III – LIMITS OF INSURANCE |
|---|

**SECTION II – LIMITS OF INSURANCE of the COMMON POLICY PROVISIONS – CRIMINAL JUSTICE SYSTEM OPERATIONS, Items 8 and 9 are deleted and replaced by the following:**

8. **Professional Liability Limit:**
    A. The Professional Liability Limit on the Schedule provided in this coverage part will be stated as an Each "Claim" Limit and will be the limit of "our" liability for "damages" resulting from each "claim" covered. This Each "Claim" Limit is the most "we" will pay for all "damages" because of an "act, error or omission" committed in connection with the performance of:
        a. "professional services" by any Insured in their respective capacity:
            1. In the conduct of the "your" business; and/or
            2. In the conduct of the ownership, operation, maintenance, management or use of any facility designated in the Declarations;
        b. services under other coverages that are specifically stated as sublimits of this Professional Liability Limit;

    B. Subject to SECTION IV – SUPPLEMENTARY PAYMENTS of this coverage part there shall be a separate limit of insurance applicable to "claims expenses" for any such "claim" equal to the Each Claim Limit for "damages" in the above schedule.

GSI-07-CJ-101 (03/2006)                                                                 Page 3 of 8

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 48 of 177 PageID #: 213

C. The Professional Liability Limit is subject to General Aggregate Limit on the COMMON POLICY DECLARATIONS page and SECTION II – LIMITS OF INSURANCE, Item 2, of the COMMON POLICY PROVISIONS

D. The purchase or application of any Extended Reporting Period Option shall not increase any limit of insurance stated on the Declarations Page.

9. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All "claims" alleging causally or factually related "acts, errors or omissions" regardless of the number of "claims", insureds, or claimants are considered to be one "claim". All such "claims" are considered first made at the time the first such "claim" was first made. Furthermore, a related "act, error, or omission" is deemed to have occurred at the time the first related "act, error, or omission" occurred and shall be subject to the same Limit of Insurance.

---

## SECTION IV – SUPPLEMENTARY PAYMENTS

**SECTION III – SUPPLEMENTARY PAYMENTS of the COMMON POLICY PROVISIONS – CRIMINAL JUSTICE SYSTEM OPERATIONS, Item 1.is deleted and replaced by the following:**

"We" will pay, with respect to any "claim" we investigate or settle, or any "claim" against an Insured we defend:

a. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the "bodily injury" Liability Coverage applies. "We" do not have to furnish these bonds.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. "We" do not have to furnish these bonds.

c. All reasonable expenses incurred by "you" at "our" request to assist "us" in the investigation or defense of the "claim", including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against "you" in the "claim".

e. Prejudgment interest awarded against "you" on that part of the judgment "we" pay. If "we" make an offer to pay the applicable limit of insurance, "we" will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before "we" have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

GSI-07-CJ-101 (03/2006)                                                       Page 4 of 8

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

---

**SECTION IV - EXCLUSIONS**

---

SECTION V – EXCLUSIONS of the COMMON POLICY PROVISIONS – CRIMINAL JUSTICE SYSTEM OPERATIONS and COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the COMMERCIAL GENERAL LIABILITY COVERAGE PART – CRIMINAL JUSTICE SYSTEM OPERATIONS, Item 4. EXCLUSIONS are amended by the following additional or revised exclusions:

"We" will not defend or pay for any "claim" for an "act, error or omission", including any "damages" or "claim expense", pursuant to this endorsement, in connection with any "claim" made against any Insured:

a. **Common Exclusions**
Alleging, arising out of, based upon or attributable to any matter that is excluded under the COMMON POLICY PROVISIONS or the COMMERCIAL GENERAL LIABILITY COVERAGE PART of this policy.

b. **Coverage A or B**
Alleging, arising out of, based upon or attributable to any matter that is covered under the Commercial General Liability Coverage Part, Coverages A or B.

c. **Human Immunodeficiency Virus (HIV) and/or Acquired Immune Deficiency Syndrome (AIDS):**
Alleging, arising out of, based upon or attributable to any form of the Human Immunodeficiency Virus (HIV) and/or Acquired Immune Deficiency Syndrome (AIDS).
This exclusion applies whether such "bodily injury" or "property damage" arises out of or is alleged to have arisen out of any act or failure to act or any allegation of negligence by any Insured:
(1) In the hiring, training or supervision of any "employee";
(2) In the controlling, monitoring or supervising the care of any person in the care, custody or control of any Insured;
(3) In testing, screening, or quarantining any person; or
(4) In obtaining or providing medical treatment or medical monitoring for any person.

d. **Health Care Services**
Alleging, arising out of, based upon or attributable to:
(1) The rendering or failure to render:
(a) Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction; or
(b) Any health or therapeutic service, treatment, advice or instruction;
(2) The furnishing or dispensing of:
(a) over-the-counter medicine or prescription medicine;
(b) medical, dental or surgical supplies or appliances; or
(c) first aid
by any doctor, dentist, surgeon, psychiatrist, optometrist, podiatrist, or anesthetist; or
(3) The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

This exclusion, however, does not preclude coverage for "professional services" of:
(1) Any licensed or registered nurse, counselor, or psychologist, but then only for services within the scope of their employment; or
(2) Any individual moderating a support group who is not a licensed or certified psychologist or psychiatrist who is also an "employee", "executive officer", "temporary worker", or "volunteer" of yours.

e. **License**
Alleging, arising out of, based upon or attributable to or resulting from any "act, error, or omission" that first takes place after that Insured's license or right to practice has been revoked, suspended or surrendered at the request of any regulatory authority.

f. **Sexual Misconduct**
Alleging, arising out of, based upon or attributable to any "sexual misconduct".

g. **Breach**
Alleging, arising out of, based upon or attributable to or resulting breach of any express contract, warranty or guarantee

GSI-07-CJ-101 (03/2006)                                                                 Page 5 of 8

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

h. **Regulatory Activity**
Alleging, arising out of, based upon or attributable to violation of or liability arising under the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), or any amendments, rules or regulations applicable to these or any similar provisions of any federal, state or local statutory or common law;.

i. **Theft**
Alleging, arising out of, based upon or attributable to theft by "you" or "your" "employees" or "temporary workers";

j. **Bankruptcy**
Alleging, arising out of, based upon or attributable to "your" insolvency or bankruptcy;

k. **Third Party Administrators**
Alleging, arising out of, based upon or attributable to "your" activities as a third party administrator of any plan whether insured or self-insured and whether "you" perform such activities for a fee or for no fee.

---

## SECTION V - DEFINITIONS

**SECTION VI – DEFINITIONS of the COMMON POLICY PROVISIONS – CRIMINAL JUSTICE SYSTEM OPERATIONS, Item 6. is deleted and replaced by the following:**

6. "Claim" means:
   a. A written order or demand for money "damages" to which this insurance applies;
   b. An arbitration proceeding or other alternative dispute resolution proceeding seeking money "damages", to which an Insured is required to submit by statute or court rule or which any Insured submits with our consent to which this insurance applies;
   c. A suit;
   d. An arbitration proceeding in which such "damages" are claimed and to which the Insured must submit or does submit with our consent; or
   e. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the Insured submits with our consent.
   f. Knowledge by an Insured of any event or circumstance which could reasonably be expected to result in or lead to any of the above items 6.a. through 6.e. being required of, engaged in, or asserted against an Insured, provided that the Insured gives the Company written notice of such event or circumstance prior to the termination date of the policy period, or within sixty (60) days thereafter, or during the Extended Reporting Period, if applicable

"Claim" does not include:
   a. Sanctions, fines, or penalties;
   b. Payment for "professional services", including refund of fees, withdrawal or reduction of fees paid to the Insured and/or recessiory "damages";
   c. Proceedings seeking declarative, injunctive or other non-pecuniary or equitable relief; or
   d. That portion of a proceeding seeking monetary relief that seeks declarative, injunctive or other non-pecuniary or equitable relief.

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 51 of 177 PageID #: 216

## SECTION VI - EXTENDED REPORTING PERIODS

For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

### A. Automatic Extended Reporting Period:

In case of cancellation or non-renewal of this policy by "you" or "us", for any reason, an automatic sixty (60) day Extended Reporting Period, effective at the termination of the Policy Period, will be provided by "us" at no additional cost. This Automatic Extended Reporting Period shall extend the time in which "you" can give written notice to "us" of "claims" first made against "you" during this Automatic Extended Reporting Period for any "act, error, or omission" in the rendering of or failure to render "Professional services" which happen prior to the termination of the Policy Period, subject to its terms, limitations, exclusions and conditions.

### B. Extended Reporting Period Option:

In the case of:
1. Cancellation or non-renewal of this policy by "you" or "us" for any reason other than:
   a. flat cancellation by "us" effective at policy inception for nonpayment of premium;
   b. cancellation by "us" effective mid-term for non-payment of any premium;
   c. failure to comply with policy provisions;
   d. non-payment of a deductible;
   e. failure to cooperate with "us"; or
   f. fraud, concealment or material misrepresentation of facts in any application for this policy or any renewal policy for this insurance; or
2. "our" advancing a prior acts date from that previously provided by "us" in a predecessor insurance policy,

"you" shall have the right to extend the time during which "claims" can be reported for an additional premium determined by "us" in accordance with our rules and rates. In doing so, "we" may take into account the following:
   (a) Exposures insured;
   (b) Previous types and limits of insurance;
   (c) Limits of Insurance available under this Coverage Part for future payment of "damages"; and
   (d) Other related factors.

following the effective date of such cancellation or non-renewal in which to give written notice to "us" of "claims" first made against "you" during this Extended Reporting Period Option for any "act, error, or omission" in the rendering of or failure to render "Professional services" occurring prior to the termination of the final Policy Period, subject to its terms, limitations, exclusions and conditions. This right shall terminate, however, unless written notice of such election together with an additional premium is received by "us" or an authorized agent from "you" within sixty (60) days after the effective date of cancellation or non-renewal.

### C. Termination of Any Extended Reporting Period Option

At the commencement of any Extended Reporting Period, the entire premium shall be deemed earned and "we" shall not be liable to return to "you" any portion of the premium for any Extended Reporting Period.

### D. Miscellaneous

The fact that the period during which "claims" first made against "you" and arising out of the same or related "act, error or omission" taking place prior to the termination of the final policy period is extended, by virtue of any Extended Reporting Period, shall not in any way increase this policy's Limits of Liability. The Limit of Insurance available under any Extended Reporting Period shall be part of, and not in addition to, the Limit of Insurance available under the last policy issued to "you". Any Extended Reporting Period shall not extend the Policy Period. Furthermore, the Automatic Extended Reporting Period does not extend the time in which to exercise the right to purchase the Optional Extended Reporting Period. The first sixty (60) days of the Extended Reporting Period, if it is purchased, shall run concurrently with the Automatic Extended Reporting Period. The Deductible Amount shown in Item 4. of the Declarations shall apply to any Extended Reporting Period provided by this policy.

GSI-07-CJ-101 (03/2006)

Page 7 of 8

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

52

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 53 of 177 PageID #: 218

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____, effective 4/30/07 forms a part of Policy #IJA964075B
issued to UHS Children Services, Inc.

# SEXUAL MISCONDUCT
# ENDORSEMENT
## - OCCURRENCE COVERAGE -

This endorsement modifies insurance provided under the following policy:

### CRIMINAL JUSTICE SYSTEM OPERATIONS

| SCHEDULE |  |
|---|---|
| Designated Operation: | |
| (if no operation is designated, then this coverage applies to the Named Insured on the Declarations) | |
| | |
| Each Sexual Misconduct Occurrence Sub-Limit: | $1,000,000 |
| Sexual Misconduct Aggregate Sub-Limit: | $5,000,000 |
| SIR – per occurrence or "claim" | $500,000 |

---

### IMPORTANT NOTICE

**The PROFESSIONAL LIABILITY COVERAGE PART – CRIMINAL JUSTICE SYSTEM OPERATIONS and the coverage provided by this endorsement share an Aggregate Limit of Insurance. In the event the PROFESSIONAL LIABILITY COVERAGE PART - CRIMINAL JUSTICE SYSTEM OPERATIONS Limit of Liability becomes exhausted, no further coverage is provided by this endorsement. In the event the amount of "damages" paid out under the PROFESSIONAL LIABILITY COVERAGE PART- CRIMINAL JUSTICE OPERATIONS (and any other endorsements that share such limit, if any) and this endorsement total the Aggregate Limit of Insurance, no further limits are provided by this endorsement and this policy. In the event the Sexual Misconduct Aggregate Limit is exhausted, no further coverage is provided for "sexual misconduct."**

---

Except for designated operations or activities scheduled above, this endorsement does not apply to any "damages", including "claim expense", in connection with any "sexual misconduct" "claim" made against any Insured for which the Insured is legally liable, by, on behalf of, or for any other operations or activities, regardless of whether such operations or activities are conducted by you or on your behalf or whether the operations or activities are conducted for yourself or for others.

I. For the purpose of this endorsement only, Exclusion f. **"Sexual Misconduct"** of PROFESSIONAL LIABILITY COVERAGE PART is hereby deleted in its entirety.

06-CJ-232 (03/2005)                                             Page 1 of 3

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

II. **INSURING AGREEMENT – SEXUAL MISCONDUCT**
    a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "sexual misconduct" to which this insurance applies. We will have the right and duty to defend the insured against any "claim" seeking those "damages". However, we will have no duty to defend the insured against any "claim" seeking "damages" for "sexual misconduct" to which this insurance does not apply. We may, at our sole discretion, investigate any "sexual misconduct" and settle any "claim" that may result. But:
        (1) The amount we will pay for "damages" is limited as described in SECTION II – LIMITS OF INSURANCE of the COMMON POLICY PROVISIONS; and
        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "damages" under this coverage part.

    b. This insurance applies to "damages" because of "sexual misconduct" only if:
        (1) The "sexual misconduct" takes place in the "coverage territory";
        (2) The "sexual misconduct" occurs during the policy period; and
        (3) Prior to the policy period, no insured listed under Paragraph 1. of SECTION I – WHO IS AN INSURED of the COMMON POLICY PROVISIONS and no "employee" authorized by you to give or receive notice of "sexual misconduct" or "claim", knew that the "sexual misconduct" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "sexual misconduct" occurred, then any continuation, change or resumption of such "sexual misconduct" during or after the policy period will be deemed to have been known and occurred prior to the policy period.

    c. "Sexual misconduct" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION I – WHO IS AN INSURED of the COMMON POLICY PROVISIONS or any "employee" authorized by you to give or receive notice of "sexual misconduct" or "claim", includes any continuation, change or resumption of that "sexual misconduct" after the end of the policy period.

    d. "Sexual misconduct" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section I – Who Is An Insured of the Common Policy Provisions or any "employee" authorized by you to give or receive notice of "sexual misconduct" or "claim":
        (1) Reports all, or any part, of the "sexual misconduct" to us or any other insurer;
        (2) Receives a written or verbal demand or "claim" for "damages" because of the "sexual misconduct"; or
        (3) Becomes aware by any other means that "sexual misconduct" has occurred or has begun to occur.

III. **EXCLUSIONS**
We will not defend or pay for any "claim" for any "sexual misconduct", including any "damages" or "claim expense", pursuant to this endorsement, in connection with any "act, error, or omission" or "claim" made against any insured alleging, arising out of, based upon or attributable to:

    a. **Excluded under the COMMON POLICY PROVISIONS or PROFESSIONAL LIABILITY COVERAGE PART**
    Any matter that is excluded under the Common Policy Provisions or the Professional Liability Coverage Part of this policy, except as otherwise provided in this endorsement.

    b. **Failure To Report**
    A finding, in fact of:
        (1) Any failure to report any known "sexual misconduct"; or
        (2) The intentional withholding of pertinent information concerning any "sexual misconduct".

06-CJ-232 (03/2005)                                        Page 2 of 3

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

c. **Insured Direction**
Any "sexual misconduct" committed, in fact, at the direction of any Insured.

d. **Intentional Sexual Misconduct**
Any "sexual misconduct" committed, in fact, intentionally by any Insured.

e. **Prior Knowledge**
Any "sexual misconduct" which, prior to the inception date of this endorsement, the Insured had knowledge of or otherwise had reason to anticipate a "Claim" might result.

f. **Unscheduled Operations**
Any "sexual misconduct" committed at, in, or in the course of operations or locations not scheduled on this endorsement.

For the purpose of determining the applicability of the foregoing Exclusions **b, c,** and **d:** (1) the facts pertaining to the acts committed by and the knowledge possessed by any Insured shall not be imputed to any other individual Insured; and (2) only facts pertaining to and knowledge possessed by any "executive officer" shall be imputed to any Criminal Justice Systems Operation that is an Insured.

For the purposes of Exclusions **b, c,** and **d** of this Endorsement, any in fact finding of any Insured's: (1) failure to report any known "sexual misconduct" or intentional withholding of pertinent information concerning "sexual misconduct"; (2) direction of commission of "sexual misconduct"; or (3) participation in "sexual misconduct", will include any findings or conclusions drawn by any commission (ethics or otherwise), investigative authority or agency charged with investigation of the alleged "sexual misconduct", as well as any findings or admissions made by or to any court of law, including any criminal plea agreement.

Until a finding in fact is made as discussed in the above-paragraph, we will provide a defense subject to the applicable Sub-Limit and the terms, conditions, and exclusions of this endorsement and the policy.

## IV. WHO IS AN INSURED
SECTION I – WHO IS AN INSURED, of the COMMON POLICY PROVISIONS is amended by the addition of the following:

4. No person is an "Insured" for "bodily injury", "property damage", "personal and advertising injury" or "damages" arising out of or resulting from any "sexual misconduct":
a. Committed by that person or which that person was involved in committing; or
b. About which that person had knowledge, but remained passive or failed to take action to prevent any recurrence of "sexual misconduct".

## V. SUB-LIMITS OF INSURANCE
The sub-limits expressed above are the only limits applicable to "damages" due to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from "sexual misconduct". The sub-limits are not in addition to the Each Occurrence Limit and the General Aggregate Limit shown in the Declarations. The payment of "damages" under the sub-limit will reduce the Professional Liability Limit and the General Aggregate Limit.

## VI. APPLICATION OF COMMON POLICY PROVISIONS AND THE PROFESSIONAL LIABILITY COVERAGE PART
Except to the extent expressed in this endorsement, the Common Policy Provisions and all sections of the Professional Liability Coverage Part apply to this endorsement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

06-CJ-232 (03/2005)                                                                 Page 3 of 3

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 56 of 177 PageID #: 221

# GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____, effective 4/30/07 forms a part of Policy #IJA964075B

issued to UHS Children Services, Inc. by GENERAL STAR INDEMNITY COMPANY

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

_____ CRIMINAL JUSTICE SYSTEM OPERATIONS INSURANCE POLICY

The following exclusion is added to SECTION V - EXCLUSIONS in the COMMON POLICY PROVISIONS:

TERRORISM

A.  This policy does not apply to **Any Injury Or Damage** or Claims or **Claims Expenses** arising directly or indirectly, out of a **Certified Act Of Terrorism** or an **Other Act of Terrorism**. However, with respect to an **Other Act Of Terrorism**, this exclusion applies only when one or more of the following are attributed to such act:

1.  The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2.  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a.  Physical injury that involves a substantial risk of death; or
    b.  Protracted and obvious physical disfigurement; or
    c.  Protracted loss of or impairment of the function of a bodily member or organ; or

3.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an **Other Act Of Terrorism** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

GSI-07-CJ-376 (04/2006)

Page 1 of 2

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 57 of 177 PageID #: 222

B. This policy does not apply to **Damages**, **Claims** or **Claims Expenses** arising, directly or indirectly, out of a **Certified Act Of Terrorism** or **Other Acts Of Terrorism** that are awarded as punitive damages.

C. The following definitions are added for the purposes of this endorsement:

1. **Any Injury Or Damage** means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to bodily injury, property damage, personal and advertising injury, injury or environmental damage as may be defined in any applicable Coverage Part.

2. **Certified Act Of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **Certified Act Of Terrorism**:

   a. The act resulted in aggregate losses in excess of $5 million; and
   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. **Other Act Of Terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an **Other Act Of Terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

D. In the event of any incident of a **Certified Act Of Terrorism** or an **Other Act Of Terrorism** that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

GSI-07-CJ-376 (04/2006)                                    Page 2 of 2

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 58 of 177 PageID #: 223



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____ , effective _____4/30/07_____ forms a part of Policy # IJA964075B _____

issued to __UHS Children Services, Inc._____ .

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

### CRIMINAL JUSTICE SYSTEM OPERATIONS

#### SCHEDULE

**Name of Person or Organization:**

- Sonoma County Superintendent of Schools, Sonoma County Board of Education, Sonoma County SELPA, and the SELPA Member Districts identified in the Sonoma County Special Education Local Planning Area Master Contract for Nonpublic, Nonsectarian School/Agency Services, 5340 Skylane Blvd., Santa Rosa, CA 95403.
- Lehigh County, 17 South Seventh, Allentown, PA 18101
- Nassau County Department of Social Services, 60 Charles Lindbergh Boulevard, Suite 160, Uniondale, NY 11553
- Napa County SELPA, 2121 Imola Avenue, Napa, CA 94559
- Napa Valley USD, 2425 Jefferson Street, Napa CA 94558
- Calistoga JUSD, 1520 Lake Street, Calistoga, CA 94515
- Saint Helena USD, 465 Main Street, Saint Helena, CA 94575
- Howell Mountain Elementary, 525 White Cottage Road North, Angwin, CA 94508
- Pope Valley, 6200 Pope Valley Road, Pope Valley, CA 94567
- The County of Los Angeles, its special districts, its official, officers and employees: Department of Children and Family Services, Contract Development/Fiscal Management (CD/FM). 425 Shatto Place, Room 400, Los Angeles, CA 90020
- Onondaga County Department of Social Services, 421 Montgomery Street, Syracuse, NY 13202
- Poway Unified School District, 13626 Twin Peaks Road, Poway, CA 92064
- Solano County Health and Social Services Department, Contracts Bureau, Mail Stop 5-220, Fairfield, CA 94533
- Los Angeles Unified School District & the Board of Education of the City of Los Angeles c/o Risk Management & Insurance Services, 333 South Beaudry Ave., 28th Floor, Los Angeles, CA 90017
- Henrico Public Schools/Area Mental Health & Retardation Service Board, P.O.Box 27032, Richmond, VA 23273
- Lodi Unified School District, 1305 East Vine St., Lodi, CA 95240

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

06-CJ-806 (03/2005)                                                                                   Page 1 of 2

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

- Hacienda La Puente Unified School District, 455 North Glendora Ave., La Puente, CA 91744
- West Contra Costa Unified School District, 2465 Dolan Way, San Pablo, CA 94806
- Vallejo City Unified School District, 211 Valle Vista, Vallejo, CA 94590
- Los Angeles Unified School District, 4201 Wilshire Blvd., Suite 335, Los Angeles, CA 90010
- Board of Education of the City of Los Angeles, 4201 Wilshire Blvd., Suite 335, Los Angeles, CA 90010
- San Bernardino Unified School District, 1535 West Highland Avenue, San Bernardino, CA 92411
- **Desert Community Bank, P.O. Box 8061, Walnut Creek, CA 92064**
- **Victorville School, 12199 Industrial Blvd., Victorville, CA 92392**
- **Modular Building – Unit #087/088 s/n S13312/3, 24 X 20 located at Keystone Education and Youth Services, 2815 Steele Canyon Rd., El Cajon, CA 92019**
- **Modular Building Concepts, Inc., 12580 Stotler Court, Poway, CA 92054**
- **Escondido Union Free School District (Elementary & Middle School), 1330 E. Grand Ave., Escondido, CA 92027**
- **Orange County Probation Dept., Attn: Federico Perez, P.O. Box 10260, Santa Ana, CA 92711-0250**
- **Omni Visions, Inc., 301 South Perimeter Park, Suite 210, Nashville, TN 37211**
- **Orange County Probation Department, Attn: Federico Perez, P.O. Box 10260, Santa Ana, CA 92711-0250**
- **Suffolk County Department of Social Services, Family & Children's Services, P.O. Box 18100, Hauppague, NY 11788-8900**
- **The Durham Center, 501 Willard Street, Durham, NC 27701**
- **Dutchess County Social Services Department, 80 Market St., Poughkeepsie, NY 12601**
- **Westchester County Department of Social Services, 112 E. Post St., 4th Floor, White Plains, NY 10601**
- **Wilson-Green MH/DD/SAS, 1709 S. Tarboro Street, Wilson, NC 27693**
- **Continentals of Omega, Boys and Girls Club, 1 Positive Place, P.O. Box 8097, Vallejo, CA 94590**
- **County of Los Angeles, Dept. of Children & Family Services, 425 Shatto Pl., Los Angeles, CA 90020**
- **Capistrano Unified School District, 32970 Calle Perfecto, San Juan Capistrano, CA 92675**
- **County of Los Angeles, Department of Mental Health, 550 South Vermont Ave., Los Angeles, CA 90020**
- **City of Richmond, 900 E Marshall St., 3rd Fl., Room 329, Richmond, VA 23219**
- **Ulster County Dept. of Social Services, P.O. Box 1800, Kingston, NY 37203**
- **Fairfax-Falls Church CPMT, 12011 Government Center Parkway, Suite 738, Fairfax, VA 22035**
- **San Dieguito Union High School District, Attn: Risk Management, 710 Encinitas Blvd., Encinitas, CA 92124**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 60 of 177 PageID #: 225

POLICY NUMBER: IJA964075B

COMMERCIAL GENERAL LIABILITY
CG 20 11 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

1. Designation of Premises (Part Leased to You): Modular Building – Unit#087/088 s/n S13312/3, 24 X 20 located at Keystone Education and Youth Services, 2815 Steele Canyon Rd., El Cajon, CA 92019

2. Name of Person or Organization (Additional Insured): Modular Building Concepts, Inc., 12580 Stotler Court, Poway, CA 92054

3. Additional Premium: Included

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 1 of 1 ☐

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 61 of 177 PageID #: 226

POLICY NUMBER: IJA964075B            COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization: Desert Community Bank, P O Box 8061, Walnut Creek, CA 92064**

**Designation of Premises: Victorville School, 12199 Industrial Blvd., Victorville, CA 92392**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.
2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG 20 18 11 85          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1    □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____ , effective _4/30/07_____ forms a part of Policy # _IJA964075B_____

issued to _UHS Children Services, Inc._____by GENERAL STAR INDEMNITY COMPANY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE PART
## – CLAIMS MADE AND REPORTED
### — CRIMINAL JUSTICE SYSTEM OPERATIONS

THE INSURANCE PROVIDE IN THIS PART IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULT OF EMPLOYEE BENEFITS ACTS, ERRORS OR OMISSIONS TAKING PLACE ON OR AFTER THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AND REPORTED TO US WHILE THIS COVERAGE PART IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST ANY INSURED OR FIRST REPORTED TO US AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, AN EXTENDED REPORTING PERIOD APPLIES.

---

### IMPORTANT NOTICE

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM – CRIMINAL JUSTICE SYSTEM OPERATIONS and the coverage provided by this endorsement share an Aggregate Limit of Insurance. In the event the LIMITS OF INSURANCE under this coverage part become exhausted, no further limits are provided by this policy. In the event the LIMITS OF INSURANCE of the COMMERCIAL GENERAL LIABILITY COVERAGE PART become exhausted, no further coverage is provided by this EMPLOYEE BENEFITS LIABILITY COVERAGE PART.

In the event the amount of Damages paid out under the COMMERCIAL GENERAL LIABILITY COVERAGE PART (and any other endorsements that share such limit, if any) and this EMPLOYEE BENEFITS LIABILITY COVERAGE PART total the Aggregate Limit of Insurance, no further limits are provided by this coverage part nor this policy.

---

Various provisions in this coverage part restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this coverage part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section I – Who Is An Insured of the Common Policy Provisions.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions of the Common Policy Provisions.

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each claimant | $ 500,000 | each claimant | $ Included |
| | $ 1,000,000 | Aggregate | | | |
| Retroactive Date: | 4/30/03 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

06-CJ-812 (05/2005) 
© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.
Page 1 of 5

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 63 of 177 PageID #: 228

## EMPLOYEE BENEFITS LIABILITY COVERAGE

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any "act, error or omission" of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "claim" seeking those "damages". However, we will have no duty to defend the insured against any "claim" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any report of an "act, error or omission" and settle any "claim" that may result. But:
      (1) The amount we will pay for "damages" is limited as described in Section II – Limits Of Insurance of the Common Policy Provisions; and
      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage part.
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the Supplementary Payments section of this Coverage Part.

   b. This insurance applies to "damages" only if:
      (1) The "act, error or omission" is committed in the "administration" of your "employee benefit program";
      (2) The "act, error or omission" did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and
      (3) A "claim" for "damages", because of an "act, error or omission" is first made against any insured during the policy period, in accordance with Paragraph c. below, and reported to us in writing during the policy period or within 10 days thereafter or during an Extended Reporting Period we provide under this coverage part.
      (4) Prior to the Policy Period, no insured listed under Paragraph 1. of Section I – Who Is An Insured of the Common Policy Provisions and no "employee" authorized by you to give or receive notice of an "act, error or omission or "claim", knew that the "act, error or omission" had occurred, in whole or in part. If such a listed insured

   or authorized "employee" knew, prior to the policy period, that the "act, error or omission" occurred, then any continuation, change or resumption of such "act, error or omission" during or after the policy period will be deemed to have been known prior to the policy period.

   c. A "claim" seeking "damages" will be deemed to have been made at the earlier of the following times:
      (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or
      (2) When we make settlement in accordance with Paragraph 1.a. above.
      A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

   d. All "claims" for "damages" made by an "employee" because of any "act, error or omission", or a series of related acts, errors or omissions, including "damages" claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Defense and Settlement**
   a. We have the right and duty to defend any "claim" to which this insurance applies even if it is groundless, false or fraudulent. However, we will have no duty to defend the insured against any "claim" to which this insurance does not apply.

   b. The insured shall not admit liability for or settle any "claim" or incur any "claim expense" without the written consent of the Company, and the Company shall have the right to investigate and settle any "claim" covered by this insurance at our sole discretion.

   c. Our payment of the applicable Limit of Insurance ends our duty to defend or settle any "claim" or pay any "damages" in connection with any "claim", subject to that limit.

   d. We have no duty to defend any "claim" not covered by this insurance.

© Copyright 2005, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

All "damages" resulting from an "act, error or omission" caused by the same or related acts, errors or omissions will be deemed to be one "claim" for purposes of the application of this coverage part.

## 3. Exclusions

We will not defend or pay for any "claim" for an "act, error or omission", including any "damages" or "claim expense", pursuant to this coverage part, in connection with any "occurrence" or "claim" made against any Insured:

a. **Common Policy Provision Exclusions**
   Alleging, arising out of, based upon or attributable to any matter that is excluded under the **COMMON POLICY PROVISIONS** of this policy.

b. **Coverage A or B**
   Alleging, arising out of, based upon or attributable to any matter that is covered under the Commercial General Liability Coverage Part, Coverages A or B.

c. **Failure To Perform A Contract**
   "Damages" arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**
   "Damages" arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. Inadequacy Of Performance Of Investment / Advice Given With Respect To Participation
   Any "claim" based upon:
   (1) Failure of any investment to perform;
   (2) Errors in providing information on past performance of investment vehicles; or
   (3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Employment-Related Practices**
   Alleging, arising out of, based upon or attributable to any:
   (1) Refusal to employ;
   (2) Termination of employment;
   (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions;
   (4) Consequential "bodily injury" to any person as a result of employment-related practices described in paragraphs a., b., or c. above.
   This exclusion applies:
   (1) Whether the Insured may be liable as an employer or in any other capacity; and
   (2) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

---

## LIMITS OF INSURANCE

For the purposes of the coverage provided by this coverage part, SECTION II – LIMITS OF INSURANCE in the COMMON POLICY PROVISIONS, is amended by the addition of the following:

1. Limits of Insurance
   a. The Aggregate limit shown on this Coverage Part is the most we will pay for all acts, errors or omissions committed in the "administration of your "employee benefit program".

   b. Subject to the Aggregate Limit, the Each Employee Limit shown on this Coverage Part is the most we will pay for all damages sustained by any one "Employee", including "damages" sustained by such "employee's" dependents and beneficiaries, as a result of:

   (1) An act, error, or omission; or

   (2) A series of related acts, errors or omissions

   Negligently committed in the "administration of your "employee benefit program".

   However, the amount paid under this coverage part shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

2. Employee Benefit Liability Deductible
   The deductible amount stated in this coverage Part applies to all "damages" sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

## WHO IS AN INSURED – AMENDED

For the purposes of the coverage provided by this coverage part, Paragraphs **2.** of **Section I – Who Is An Insured** of the Common Policy Provisions is amended by the addition of the following:

    **2.** Each of the following is also an insured:
        **e.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

        **f.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

## DEFINITIONS – AMENDED

For the purposes of the coverage provided by this coverage part, the following definitions are added:
1. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

For the purposes of the coverage provided by this coverage part, Definition **10.** in the **Definitions** Section of the COMMON POLICY PROVISIONS is amended with the addition of the following:
10. "Employee" also means a person actively employed, formerly employed, on leave of absence or disabled, or retired.

## EXTENDED REPORTING PERIOD

For the purposes of the coverage provided by this coverage part, the following Extended Reporting Period provisions are added, or, if this coverage part is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**
1. We will provide an Extended Reporting Periods, as described below, if:
    **a.** This coverage part is canceled or not renewed; or
    **b.** We renew or replace this coverage part with insurance that:
        **(1)** Has a Retroactive Date later than the date shown in this coverage part; or
        **(2)** Does not apply to "act, error or omission" covered by this coverage part on a claims-made basis.

2. An Extended Reporting Period does not extend the policy period or change the scope of coverage provided.
It applies only to "claims" or "damages":
    **a.** Arising out of or resulting from an "act, error or omission" to which this coverage part applies, that occur before the end of the policy period but not before the Retroactive Date, if any, shown above; or
    **b.** Caused by an "act, error or omission" to which this coverage part applies, committed before the end of the policy period but not before the Retroactive Date shown above.
Once in effect, an Extended Reporting Period

may not be canceled.

3. **Basic Extended Reporting Period**
In case of cancellation or non-renewal of this policy by the Named Insured or the Company, for any reason, an automatic sixty (60) day extended reporting period, effective at the termination of the Policy Period, will be provided by the Company at no additional cost. This Basic Extended Reporting Period shall extend the time in which an Insured can give written notice to the Company of "Claims" first made against the Insured during the Policy Period for "claims" arising out of or resulting from an "act, error or omission" to which this coverage part applies, which happens prior to the termination of the Policy Period, subject to its terms, limitations, exclusions and conditions.

The Basic Extended Reporting Period does not apply to "Claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**4. Supplemental Extended Reporting Period**

A Supplemental Extended Reporting Period of a minimum of twelve (12) months duration is available, but only by an endorsement and for an extra charge. This Supplemental Extended Reporting Period starts at policy termination date.

You must give us a written request for a Supplemental Extended Reporting Period within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:
a. The exposures Insured;
b. Previous types and amounts of insurance;
c. Limits of Insurance available under this Coverage Part for future payment of "damages"; and
d. Other related factors.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period. The Supplemental Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

The Supplemental Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**ALL OTHER TERMS, CONDIITONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement # _____, effective _4/30/07_ forms a part of Policy #_IJA964075B
issued to UHS Children Services, Inc.

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following policy:

### CRIMINAL JUSTICE SYSTEM OPERATIONS

I.  In any policy form or endorsement related to this policy, any reference to Deductible is deleted and
replaced by Self-Insured Retention Amount.

II. Paragraph a. of Item 1. **Insuring Agreement** of the **Coverage** section of any Liability Coverage Part is
deleted in its entirety and replaced by the following:

    a.  (1)  We will indemnify the Insured for legal obligations to pay as "damages" because of occurrences
or "claims" to which this insurance applies.

         (2)  However, we have no obligation to indemnify the insured for any amount under this Policy:
             (a)  Where the amount of "damages" for which the insured is liable to pay together with any
"claim expenses" is less than or equal to $500,000 (the "Self-Insured Retention Amount") or
             (b)  Where the amount of "claim expenses" is less than or equal to the Self-Insured Retention
Amount and it has been determined that the insured is not liable to pay "damages".

         (3)  We have the right, but not the duty, to assume control in the defense of any "claim" which, in our
sole opinion, may create indemnification obligations for us under this Policy. This assumption of
control will include, but not be limited to:
             (a)  The investigation of any "occurrence," offense, loss, or "claim"
             (b)  The selection or retention of defense counsel,
             (c)  The appeal of any judgment, or
             (d)  The settlement of any "claim".

         (4)  We have no duty to defend any claim or "suit," even in the event of the insured's bankruptcy,
insolvency or receivership, but we have the right and the insured, or the Named Insured on the
insured's behalf, will give us the opportunity to associate in the defense of any "claim" against
the insured which, in our sole opinion, may create indemnification obligations for us under this
Policy.

         (5)  The insured, or the Named Insured on the insured's behalf, has the duty to defend any "claim"
seeking "damages" to which this insurance applies and will be responsible for paying any "claim
expenses". The "claim expenses" incurred by the insured serve to erode the Self-Insured
Retention Amount.

         (6)  Our indemnification obligation will not arise until the insured has paid in full the entire amount of
assessed "damages" and/or "claim expenses". No other obligation or liability to pay sums or
perform acts or services is covered. The insured's obligation to pay will have been determined by
a judgment against the insured after a contested "suit" or by written settlement agreement
between the insured(s) and the claimant(s) or the claimant's legal representative which has
received our prior approval. The insured must obtain our prior written consent before offering or
agreeing to pay an amount which exceeds the Self-Insured Retention Amount in order to settle
any "claim" seeking "damages" to which this insurance applies either in whole or in part.

III. Item **11. Deductible** of SECTION II – LIMITS OF INSURANCE of the COMMON POLICY PROVISIONS is deleted in its entirety and replaced by the following:

**11. Self-Insured Retention**
  a. When the insured's legal obligation to pay "damages" and/or related "claim expenses" to which this insurance applies has been determined, and this amount is greater than the Self-Insured Retention Amount, subject to the conditions as set forth in this Endorsement, then and only then will the insured be entitled to make claim for indemnification under this Policy. The insured will make such claim for indemnification under this Policy as soon as practicable after the insured has paid the entire amount of the assessed "damages" and/or "claim expenses". We will then indemnify the insured for:
     (1) The amount of such "damages" to which this insurance applies in excess of the Self-Insured Retention Amount subject to this Policy's relevant Limit of Insurance set forth in the Commercial General Liability Coverage Part – Declarations or in any Endorsement, and all related "claim expenses"; or

     (2) The amount of all related "claim expenses" to which this insurance applies in excess of the Self-Insured Retention Amount, regardless of whether "damages" are ever assessed against the insured.

     We have the right and you will avail us of the opportunity to audit any "claim expenses".

  b. The Self-Insured Retention Amount applies as follows:
     (3) PER OCCURRENCE BASIS - When coverage is provided to the insured on a per "occurrence" basis, then, for each "occurrence" to which this insurance applies, the insured is responsible for paying the entire amount of assessed "damages", including "claim expenses", regardless of the number of persons or organizations who sustain "damages" because of that "occurrence."

     (4) PER CLAIM BASIS – When coverage is provided to the insured on a per "Claim" basis, then, for each "claim" to which this insurance applies, the insured is repsonsble for paying the entire amount of assessed "damages", including "claim expenses", arising out of each "Claim or loss to which this insurance applies.

  c. The Each Claim Limit, Each Occurrence Limit, Personal and Advertising Injury Limit, or any other limit of this Policy (including the General Aggregate Limit and Products-Completed Operations Aggregate Limit) will not be reduced by the payment by the insured of any Self-Insured Retention Amount.

IV. Items 1.b. through and including 1.g., Items 2.a. through and including f., and Item 3. of **SECTION III - SUPPLEMENTARY PAYMENTS** of the Policy are hereby deleted.

V. SECTION IV – CONDITIONS of the COMMON POLICY PROVISIONS, paragraph **1. Bankruptcy**, is hereby deleted and replaced by the following:

**1. Bankruptcy**
  Under no circumstances will bankruptcy, insolvency, receivership of the insured, insolvency of the insured's estate, or the insured's inability to pay,
  a. Increase our obligations under this Policy or;
  b. Provide coverage for, and/or indemnification of all or any part of, the Self-Insured Retention Amount.
  This Policy's relevant Limit(s) of Insurance, as shown on the Declarations, will apply only in excess of the relevant Self-Insured Retention Amount.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 69 of 177 PageID #: 234

**VI. SECTION IV – CONDITIONS of the COMMON POLICY PROVISIONS, paragraph 2. Duties In The Event Of Occurrence, Offense, Claim is hereby deleted and replaced by the following:**

2. **Duties in the Event of Occurrence, Offense or Claim**
    a. You must immediately notify us in writing of any "occurrence", offense, loss, claim, or "suit" which:
        (1) appear reasonably likely to involve indemnification under this policy;
        (2) Results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for "damages" and "claim expenses" which equals or exceeds 33% OR $165,000 of the relevant Self-Insured Retention Amount; or
        (3) Involves any of the following:
            (a) Death;
            (b) An amputation or loss of use of a major extremity;
            (c) Brain damage affecting mentality or central nervous system - such as permanent disorientation, behavior disorder, personality change, seizures, motor deficit, inability to speak (aphasia), hemiplegia or unconsciousness (comatose);
            (d) Blindness;
            (e) Any injury to the spinal cord;
            (f) Multiple fractures;
            (g) Nerve damage causing paralysis and loss of sensation in arm and hand including but not limited to RSD or similar conditions or brachial plexus nerve damage;
            (h) Massive internal injuries affecting body organs;
            (i) Burns - involving over 20% of the body with third degree, or over 40% of the body with second degree;
            (j) Any disability where it appears reasonably likely that there will be disability which lasts for more than one year;
            (k) False Arrest;
            (l) Death of detainee while in custody or during arrest process
            (m) Firearm discharge resulting in "bodily injury";
            (n) Allegations of civil rights violations;
            (o) Rape and /or sexual molestation of any individual;
            (p) "Sexual Misconduct"; or
            (q) Class actions or putative class actions.

    b. Written notice should be as complete as possible, and must at least include:
        (1) How, when, and where the "occurrence" or offense, loss, "claim" took place;
        (2) The insured's name and address;
        (3) The names and addresses of any persons seeking "damages" and/or any injured persons or witnesses; and
        (4) A description outlining the nature of any "occurrence" or offense, loss, "claim" and of any resulting injury or damage.

    Notice of an "occurrence", offense or loss is not notice of a "claim". Once an individual(s) identified in paragraph b. of this Condition becomes aware of an "occurrence", offense or loss which potentially implicates this Policy, those individuals and all other insureds must protect our interests.

    Failure of any other of your agents or "employees" to notify us of any "occurrence", offense or loss of which the agent(s) or "employee(s)" has knowledge will not by operation of this Condition invalidate the insurance afforded by this Policy.

    c. When we exercise our right to associate in or assume control of the defense of a "claim" as provided by the Policy, you and any other insured involved in such "claim" must:
        (1) Authorize us to obtain records and other information;
        (2) Cooperate with us in the investigation, settlement or defense of the "claim"; and
        (3) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this Policy may also apply.

In the event we exercise our rights in this paragraph, the Limits of Insurance and the insured's responsibility to pay the Self-Insured Retention would remain unchanged as stated in this Policy or Endorsement.

VII. SECTION IV – CONDITIONS of the COMMON POLICY PROVISIONS, paragraph **4. Other Insurance,** is hereby deleted and replaced by the following:

4. **Other Insurance**
   a. All coverage under this Policy is excess over any other insurance, deductible(s), retention(s) or self-insurance(s) (including the Self-Insured Retention Amount of this Policy), whether written on a primary, excess, contingent or on any other basis, except for other insurance that is specifically purchased by the insured to apply in excess of this Policy's relevant Limit(s) of Insurance set forth in the Declarations.

   b. If any other insurance purchased by the insured or on the insured's behalf is deemed to apply on the same excess basis as this Policy, our indemnification obligation, subject to the relevant Self-Insured Retention Amount and Limit(s) of Insurance of this Policy, will be shared with such other insurance by the method described in paragraphs c. and d. below.

   c. If such other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid or indemnified (as the case may be) the insured its relevant limit(s) of insurance or none of the loss remains, whichever comes first.

   d. If such other insurance does not permit contribution by equal shares, we will indemnify by limits. Under this method, each insurer's share is based on the ratio of its relevant limit(s) of insurance to the total limits of insurance of all such insurers.

   e. We have no obligation to indemnify or pay any expenses incurred by such other insurers.

VIII. SECTION IV - COMMON POLICY PROVISIONS, CONDITIONS, paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of the Policy is hereby deleted and replaced by the following:

8. **Transfer Of Rights Of Recovery Against Others To Us**
   a. We have the right to recover all or part of any payments, including "claim expense", which we have made to or on behalf of the insured from anyone liable for a loss. If the insured recovers from anyone liable for a loss, we will be reimbursed first from such recovery to the extent of our payments to the insured. The insured expressly waives any rights it may have to recoup any uninsured portions of any loss prior to our recovery of the full amounts we paid hereunder.

   b. If the insured does not commence an action or proceeding to recover payments from anyone liable for a loss paid by us, the insured agrees to timely assign all of its rights of recovery to us and also agrees that we have the rights of the insured to recover from anyone liable for a loss. The insured will do everything necessary to protect those rights and help us to enforce them.

   c. Any such recovery will be allocated in the following order:
      (1) First, to reimburse any insurer for insurance coverage in excess of this Policy's relevant Limit(s) of Insurance set forth on the Commercial General Liability Coverage Part - Declarations or in any Endorsement, or to reimburse the insured to the extent there is no such insurance;
      (2) Then, we will be reimbursed for all of our payments under this Policy;
      (3) Finally, any balance of the recovery which remains after we have been reimbursed will be paid to the insured.

   d. Expenses of all proceedings to recover from anyone liable for loss covered by this Policy will be deducted from any amount which has been recovered prior to the allocation in accordance with paragraph c. above.

 © Copyright 2005, General Star Management Company, Stamford, CT
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 71 of 177 PageID #: 236

    e.  If such action is commenced by the insured, with our prior approval, and the expenses incurred in obtaining recoveries exceeds the amount recovered, if any, the excess expense will be apportioned between the parties in proportion to the liability of each party for the loss before the recovery was obtained. If such an action or proceeding undertaken solely by us results in no recovery, we will pay all related expenses.

    f.   Notwithstanding anything to the contrary in paragraphs a. through e. above, in the event we make any payment under this Policy, we will waive our right of recovery against any person or organization with whom the insured has:

        (1) A written contract that is effective and executed prior to the date of an "occurrence", offense or loss if such contract requires the insured to waive its subrogation, contribution, or indemnity rights; or

        (2) Performed or received work under a letter of intent, work order, or other letter of understanding provided that the insured can demonstrate that such letter of intent, work order, or other letter of understanding would customarily be reduced to a written contract that requires the insured to waive its subrogation, contribution, or indemnity rights.

**IX.** **SECTION IV- CONDITIONS** of the **COMMON POLICY PROVISIONS**, paragraph **11. Examination of Your Books and Records** is amended by the addition of the following:

Claim Files shall be stored in their existing state as of the date of file closure, at no cost to us, for a period of three (3) years, after which time we reserve the right to assume storage of such files.

**X.** Section IV- CONDITIONS of the **COMMON POLICY PROVISIONS** is amended by the addition of the following new item:

    **17. Third Party Administrator (TPA)**
    In the event a Third Party is appointed to service claims within this Self-Insured Retention, General Star reserves the right to approve such Third Party Administrator (TPA) or any proposed replacement thereof.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 72 of 177 PageID #: 237

# GENERAL STAR INDEMNITY COMPANY

This endorsement # _____ effective ____4/30/06____ forms a part of Policy # _IJA964075B_____

issued to _UHS Children Services, Inc._____by GENERAL STAR INDEMNITY COMPANY.

# MANUSCRIPT ENDORSEMENT

**This endorsement changes the policy. Please read it carefully.**

This endorsement modifies insurance provided under the following:
**CRIMINAL JUSTICE PROGRAM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

In consideration of the premium charged it is agreed and understood the Form GSI-06-CJ-103 (05/05) Common Policy Provisions – Criminal Justice System Operations- Section VI – Definitions #6 "Claim" is amended to include the following:

Claim also means knowledge by an insured of any event or circumstance which could reasonably be expected to result in or lead to a claim being asserted against an Insured, provided that the Insured gives the Company written notice of such event or circumstance prior to the termination date of the Policy Period, or within thirty (30) days thereafter, or during the Extended Reporting Period, if applicable.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

GSI-06-CJ-901 (04/2003)                                          Page 1 of 1

© Copyright 2003, General Star Management Company, Stamford, CT
May include copyrighted material of Insurance Services Office, Inc., with its permission.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 73 of 177 PageID #: 238

POLICY NUMBER: IJA964075B

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:
  COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

 Orange County Probation Department

P O Box 10260

Santa Ana, CA 92711-0260

Attn: Federico Perez

(As Respects Location #15 & 16 1001 County Farm Rd., Riverside, CA 92503-Highlander Program)

(As Respects Location #17 & 18  7533 Van Nuys Blvd., Van Nuys, CA 91405 –Van Nuys-Mid Valley )

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** -- COMMER-CIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**CG 24 04 10 93**          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 1**     ☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the "Insurer" to pay any amount claimed to be due hereunder, the Insurer, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such Court. However, nothing in this provision constitutes a waiver of the Insurer's rights to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States of America or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of it's **Corporate Secretary**, at the address below. In any suit instituted under this contract, Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-referenced Corporate Secretary, or his designee, is authorized and directed to accept service of process on behalf of the Insurer in any such suit or upon the request of the Insured to give a written undertaking to the insured that it will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or such other insurance department representative, or such other governmental officer, such as the Secretary of State, specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Insurer's Corporate Secretary as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof.

The Insurer:

**Corporate Secretary**
Attention: Legal Department
**General Star Indemnity**
695 East Main Street
Stamford, Connecticut 06904

IL 600 (01/2004)          © Copyright 2004, General Star Management Company, Stamford, CT
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 75 of 177 PageID #: 240

# ACKNOWLEDGMENT

**RE:** UHS Children Services, Inc.

**POLICY NO.:** IJA964075B

**Return To:** U.S. RISK UNDERWRITERS - Scottsdale  (fax) 480-922-4442

**ATTN:** Lenore Fitzpatrick

Coverage by the above policy is written with a non-admitted carrier.  The producer warrants that all insurance department requirements regarding non-admitted insurance of the applicant's state of domicile have been or will be complied with.

| Surplus Lines Filing Information: | | |
|---|---|---|
| Name of Filing Agency: | | |
| Address: | | |
| | | |
| Telephone #: | | |
| Name of Broker: | | |
| Surplus Lines Broker #: | | |
| Federal Tax ID #: | | |
| Surplus Lines Transmittal # | | |
| | | |
| | | |
| Date | | Signature of Broker |

Please sign and return this acknowledgment within 15 days of receipt.
Failure to do so may result in cancellation.
Thank you.

ACK  04/02



## PARTNERS SPECIALTY
### GROUP, LLC.

### *Q U O T E  #  18250 A*

TO:    Lockton Insurance Agency of Houston, Inc.
ATTN:  Tony Garcia

FAX #:  (713) 458-5299

FROM: Mary Beth Foster
       Assistant Vice President
       for Mark Patterson

Renewal of: IJA964075A

Expires: 4/30/07

We are pleased to offer the following quotation for your review:

**INSURED:**    **UHS Children Services, Inc.**
             3401 West End Avenue, Suite 400
             Nashville, TN 37203

**POLICY PERIOD:**  4/30/07 to 4/30/08

**INSURER:**    **General Star Indemnity Company  Non-Adm**

**COVERAGE:**  Combined General Liability & Professional Liability
             Criminal Justice Systems Operations
             Retro Date: 4/30/2003

             Renewal of IJA964075A

**LIMITS:**     $5,000,000  Policy Aggregate

             Criminal Justice Liability Coverage Part:
             $1,000,000  Coverage A--BI/PD Limit
             $3,000,000  Products/Completed Operations Aggregate
             $     50,000  Damage to Premises Rented to You
             $1,000,000  Coverage B--Personal & Advertising Injury
             $      1,000  Coverage C--Medical Expense Limit (Any One Person)
             $1,000,000  Professional Liability Limits (CLAIMS MADE)--Retro Date: 4/30/2003

             Sexual Misconduct Endorsement--Occurrence
             $1,000,000  Each Occurrence Sub-Limit
             $5,000,000  Aggregate Sub-Limit
             $500,000  Self-Insured Retention

             Employee Benefits Liability Coverage Part:
             $1,000,000  Occurrence Sub-Limit
             $1,000,000  Aggregate Sub-limit
             $  500,000  Self-Insured Retention Per Claim
             Claims Made, Retro Date: 4/30/03

             Per Occurrence if coverage is on an occurrence basis.
             Per Claim if Coverage is on a Claims Made Basis.

# PARTNERS SPECIALTY
### GROUP, LLC.

## Q U O T E  #  18250 A

**S.I.R.:** $500,000.00  Including Loss Adjustment Expense (LAE)
Defense Costs are in Addition to Policy Limits

**CONDITIONS:** **Subject To: Coverage cannot be bound until Surplus lines affidavits, as required by the State surplus lines regulations, have been received by PSG.**

Includes:
Civil Rights Violations, Professional Liability Policy has no exclusion for Punitive Damages, Assault & Battery; Incidental Medical Malpractice for Employed Nurses, Counselors or Psychologists on an Occurrence Form.

SUBJECT TO:

-Signed Terrorism Rejection form must accompany request to bind, or the terrorism premium will be charged.
-Completed Due Diligent Search form due with order to bind - see attached
-SIGNED ACORD application due with order to bind
-A SIGNED carrier application within ten (10) days of binding coverage.
-A 25% Minimum Earned Premium Endorsement.
-A Service of Suit Endorsement
-G.L. Coverage is on an Occurrence form
-Sexual Misconduct is on an Occurrence from
-Professional & Employee Benefit are on a CLAIMS MADE and REPORTED Form

Acceptance by the Insured's Representative (Broker) on behalf of the Insured confirms that the broker has fully
explained the terms, conditions and form to the Insured. The terms and conditions of this quote may not be as broad as first requested by the Broker and the explanations herein are incomplete and are intended to be only an outline of the terms and conditions of the policy. There are NO FLAT CANCELLATIONS after binding. All risks are subject to inspection. Broker must notify us of any premium financing. Quotes are valid for 30 days.

**EXCLUSIONS:** HIV/AIDS
Any type or form of Fungus, including clean-up and associated costs or expenses
Asbestos
Lead
Nuclear Energy
Terrorism

**RATE:** Optional Terrorism Premium:  $4,500.00 + taxes if elected
Inspection Fee: Fully Earned
Policy Fee: Fully Earned

---

444 West 47th St.  Suite 300
Kansas City, MO 64112
Phone: (816) 410-3840  Fax: (816) 410-3841

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 78 of 177 PageID #: 243



### Q U O T E  #  18250 A

PREMIUM:          $ 450,000.00  Minimum & Deposit; $4,500 A/P for TRIA if elected
    Company Fee        150.00
    Insp/Audit Fee    3,500.00
    TN State Tax     11,341.25
    Total         $ 464,991.25

COMMISSION:   5.00%

This quotation is valid for 17 days.   25 % Minimum Earned Premium in the event of cancellation.

REMARKS:       PSG responsible for surplus lines taxes and fees

The responsibility for the accuracy of the information set forth in any certificate of insurance is the sole responsibility of the person or entity which issues the certificate.

Although Partners Specialty Group (hereafter "PSG") may retain copies of certificates of insurance forwarded to us, PSG does so strictly without prejudice as to their accuracy.  Neither the insurers, their representatives, nor PSG will be responsible for any liability resulting from your issuance of any certificate of insurance.

We also draw your attention to the fact that unless the policy is physically endorsed, the issuance of a certificate does not amend, extend, or alter the coverage afforded by the policy or change the person(s) or entities to whom such coverage is afforded under the policy.

Moreover, neither the underwriters, their representatives, nor PSG will be responsible for any liability resulting from the issuance of any unauthorized endorsement or the issuance of an endorsement which has been authorized by the insurer but where the authorized wording has been amended or revised in any way, without the prior written approval of the insurers.

PLEASE REFER TO THE POLICY FORM FOR FULL DETAILS ON TERMS AND CONDITIONS.  SAMPLE FORMS ARE AVAILABLE ON REQUEST.

**IMPORTANT: COVERAGE IS NOT BOUND. This coverage is subject to the terms and conditions of the specified insurance company forms currently in use including any listed amendatory endorsements. Should a change in insurance company be involved, terms and conditions may vary from those currently in force. A copy of the form to be used is available upon request. THE COVERAGE DESCRIBED IN THIS QUOTATION MAY NOT CONFORM TO THE TERMS AND CONDITIONS REQUESTED. In order to bind the coverage a request must be received in writing.**

444 West 47th St.  Suite 300
Kansas City, MO 64112
Phone: (816) 410-3840  Fax: (816) 410-3841

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 79 of 177 PageID #: 244

# SCHEDULE OF LOCATIONS

| Loc # | Address | Occupancy |
|---|---|---|
| 1 | 1221 Alton Drive Birmingham, AL 35210 | Residential Treatment Center |
| 2 | 6001 12 Ave East Tuscaloosa, AL 35405 | Closed |
| 3 | Tennessee Valley Juvenile Detention 2216 Missouri St Tuscumbia, AL 35674 | Closed |
| 4 | 5325 Engle Road Carmichael, CA 95608 | Alternative School |
| 5 | 12379 Miracle Hill Rd Desert Hot Springs, CA 92240 | Alternative School |
| 6 | 2815 Steel Canyon Rd El Cajon, CA 92019 | Altrernative School |
| 7 | 3155 Dwight Road Elk Grove, CA 95758 | Alternative School |
| 8 | 5416 Holdener Rd Elmira, CA 95626 | Alternative School |
| 9 | 11980 S Mt Vernon Grand Terrace, CA 92313 | Alternative School |
| 10 | 145 N Tahquitz Ave Hemet, CA 92543 | Alternative School |
| 11 | 1236 H Street Ramona, CA | Residential Treatment Center |
| 12 | 1130 D Street Ramona, CA 92065 | Alternative School |
| 13 | 8988 Archibald Ave Rancho Cacumongo, CA 91730 | Alternative School |
| 14 | 9994 County Farm Rd Riverside, CA 92503 | Alternative School |
| 15 | 10001 County Farm Rd Riverside, CA 92503 | Residential Treatment Center |
| 16 | 10001 County Farm Rd Riverside, CA 92503 | Alternative School |
| 17 | 7533 Van Nuys Blvd Van Nuys, CA 91405 | Residential Treatment Center |
| 18 | 7533 Van Nuys Blvd Van Nuys, CA 91405 | Alternative School |
| 19 | 12199 Industrial Blvd Victorville, CA 92392 | Alternative School |
| 20 | 1025 Service Place, Suite 103 Vista, CA | Group Home |
| 21 | 12422 NW Gordon & Truett Revell Rd Bristol, FL | Residental Treatment Facility |
| 22 | 11712 Van Doren Ln Fountain, FL 32438 | Residental Treatment Center |

| | |
|---|---|
| 23 202 Century 21 Dr., Suite 1 Jacksonville, FL 32216 | Behavioral Day Treatment |
| 24 101 W Townsend Rd St Johns, MI 48879 | Residential Treatment Center |
| 25 1715 Sharon Rd West Charlotte, NC 28210 | Residential Treatment Center |
| 26 3637 Old Vinyard Rd Winston-Salem, NC 27104 | Residential Treatment Center |
| 27 1451 Lucas Rd Mansfield, OH 44905 | Residential Treatment Center |
| 28 6501 NE 50th St Oklahoma City, OK 73141 | Residential Treatment Center |
| 29 1830 Tower View Rd Coatesville, PA 19320 | Residential Treatment Center |
| 30 1751 Oak Plains Rd Ashland City, TN 27015 | Residential Treatment Center |
| 31 1881 D Fort Campbell Blvd Clarksville, TN 37042 | Alternative School |
| 32 711 Hwy 51 By Pass S Dyersburg, TN | Residential Treatment Center |
| 33 307 Wesley Street Johnson City, TN 37601 | Secure Juvenile Detention Center |
| 34 3065 Murfreesboro Lebanon, TN 37087 | Alternative School |
| 35 7900 Lowrance Rd Memphis, TN 38125 | Residential Treatment Center |
| 36 332 Hospital Rd Mountain City, TN 37683 | Residential Treatment Center |
| 37 1640 Lacassas Pike Murfreesboro, TN | Residential Treatment Center |
| 38 802 S Church Street Murfreesboro, TN 37130 | Closed |
| 39 802 S Church Street Murfreesboro, TN 37130 | Closed |
| 40 802 S Church Street Murfreesboro, TN 37130 | Closed |
| 41 1220 S 8th Street Nashville, TN 37203 | Residential Treatment Center |
| 42 3401 W End Ave, Suite 400 Nashville, TN 37203 | Admin Office |
| 43 415 seven Hawks Ln Waverly, TN 37185 | Residential Treatment Centr |
| 44 1252 Lantana Corpus Christi, TX 78407 | Alternative School |
| 45 17579 Warwick Blvd Newport News, VA 23603 | Residential Treatment Center & Alternative School |
| 46 225 State Street Marion, VA 24354 | Residential Treatment Center |
| 47 1718 E Main Street Ventura, CA 93001 | Altrenative School |
| 48 209 W Criser Rd, Suite 400 Front Royal, VA 22630 | Residential Treatment Facility |



**GeneralStar**™

*Beyond Security®*

Date:                    Insured Name:   Unuversal Health Services, Inc., Keys Group Holdings, LLC
App ID:

**TRIA PREMIUM AMOUNT:**        $      4,500      + Tax

We are providing this Notice in compliance with the requirements of the U.S. Federal Terrorism Risk Insurance Act of 2002 enacted on November 26, 2002 ("TRIA").

TRIA requires that we offer coverage for certain losses (the "TRIA Terrorism Losses") that result from an "act of terrorism" (as defined in TRIA).  Based on our written quotation to you (the "Quote"), your coverage of terrorism losses would not be broader than coverage of TRIA Terrorism Losses.

The specific charge for including coverage of TRIA Terrorism Losses is shown above.  This charge is included within the total premium amount contained in the Quote.

TRIA provides that the U.S. Government will share in the payment of the compensation of insured TRIA Terrorism Losses. Subject to the terms and conditions of TRIA, the U.S. Government's share in the payment of compensation of any TRIA Terrorism Losses which we insure will be equal to 90% of that portion of such TRIA Terrorism Losses that exceeds a statutorily-determined amount which we will pay without U.S. Government compensation.  The applicable policy limits will apply to our coverage of TRIA Terrorism Losses, but TRIA also limits the liability of both the U.S. Government and insurance companies like us for the payment of compensation for TRIA Terrorism Losses if the aggregate amount of the insured TRIA Terrorism Losses of all policyholders exceeds $100 billion in either the period from November 26, 2002 through December 31, 2003, or any subsequent annual period covered by TRIA.

<u>Selection or Rejection of TRIA Terrorism Losses</u>

You have the right to reject coverage for TRIA Terrorism Losses if you do not wish to obtain coverage of such Losses and do not wish to pay the TRIA Premium Amount.  In order to exercise this right, you will need to sign where indicated below and return to General Star through your agent.  If you choose to reject the coverage of TRIA Terrorism Losses in accordance with this paragraph, effective upon receipt by us of this Notice signed by you, the Quote at that time will be deemed to automatically

(1) Eliminate the coverage of TRIA Terrorism Losses from coverage; and

(2) Eliminate the TRIA Premium Amount from the total premium amount contained in the

> By signing below and returning this form as
> directed, I am declining the offer of coverage
> for TRIA Terrorism Losses

_____

Authorized Representative or Applicant

82

Tony Garcia
Lockton Insurance Agency of Houston, Inc.
5847 San Felipe, Suite 320
Houston, TX 77057
fax: (713) 458-5299

**In reference to:**
**Insured:** UHS Children Services, Inc.
**Policy No:**

**Carrier:** General Star Indemnity Company

Dear Tony:

The captioned insurance company for the account listed above is a non-admitted carrier in the State of TN. As a condition of binding, we will need information in order to file the surplus lines tax. Please advise that your agency has made applications to three **Admitted Insurers** who have declined this risk. The Insurers must be listed with the full Licensed Company name-- do not list by "Group Name". Please forward the completed form to us prior to binding.

| Company Name | NAIC # | Underwriter Name | City/State Located In | Date Declined |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Licensed Surplus Lines Retail Agent Name: _____

Licensed Surplus Lines Retail Agent Signature: _____

Retail Agent Surplus Lines License Number State of TN (taxed state):

_____

Date Completed: _____

Sincerely,

Tamara Phillips
816-410-3855

 **PARTNERS SPECIALTY**

GROUP, INC.

## DEFINITION OF MINIMUM AND DEPOSIT PREMIUM
## AND
## MINIMUM EARNED PREMIUM

### MINIMUM AND DEPOSIT

This is the amount of the premium due at inception. Although the policy is "ratable", that is, subject to adjustment at audit based on a rate per exposure unit, under no circumstances will the annual earned premium be less than the minimum premium.

In other words, the policy may generate an additional premium at audit, but not a return.

If such a policy is cancelled mid-term, the earned premium will be the greater of the annual minimum times the short rate or pro-rata factor, or the actual earned as determined by audit, subject to a short rate penalty if applicable.

### MINIMUM EARNED PREMIUM

A minimum earned premium endorsement can be attached to either a flat charge policy or an adjustable policy. In either case, this amount is the least that will be retained by the carrier once the policy goes into effect. The amount retained will be the greater of the actual earned premium whether calculated on a pro-rata or short rate basis, or the minimum earned premium.

If you have any questions or concerns, do not hesitate to contact us.

444 West 47th Street, Suite 300
Kansas City, Missouri 64112
Phone: 816-410-3840   Fax: 816-410-3841

84

**Exhibit C**



"This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes."

Daniel Patrick McDonnell, 301 East Germantown Pike, Suite 402, Norristown, PA 19401

**POLICY NUMBER:** EAU720446/01/2007

RENEWAL OF: EAU720446/01/2006

# EXCESS LIABILITY POLICY DECLARATIONS

**COMPANY:**
AXIS SURPLUS INSURANCE COMPANY
303 WEST MADISON
SUITE 500
CHICAGO, IL 60606

**BROKER:**
PARTNERS SPECIALTY GROUP
444 WEST 47TH STREET
SUITE 300
KANSAS CITY, MO 64112

---

Item **1.** NAMED INSURED: UHS CHILDREN SERVICES, INC.

MAILING ADDRESS:   3401 WEST END AVENUE, SUITE 400
NASHVILLE, TN 37203

Item **2.** POLICY PERIOD: FROM  04/30/2007   TO  04/30/2008   AT 12:01 A.M. TIME AT
YOUR MAILING ADDRESS SHOWN ABOVE

---

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

Item **3.** LIMITS OF INSURANCE

| | |
|---|---|
| EACH OCCURRENCE LIMIT | $ 5,000,000 |
| GENERAL AGGREGATE LIMIT | $ 5,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 5,000,000 |

---

Item **4.** DESCRIPTION OF BUSINESS                  $10,000.00 TN S/L Tax

FORM OF BUSINESS:

☐ INDIVIDUAL        ☐ PARTNERSHIP        ☐ JOINT VENTURE        ☐ TRUST

☐ LIMITED LIABILITY COMPANY   ☒ CORPORATION   OTHER ☐ : _____

BUSINESS DESCRIPTION: YOUTH SERVICE ORGANIZATION

---

XDEC-0001-01-03                                      Page 1 of 4

**Exhibit C**

POLICY NUMBER: EAU720446/01/2007

| Item 5. POLICY PREMIUM |
|---|

INSURED PURCHASED TRIA TERRORISM COVERAGE ☐ YES ☒ NO

MINIMUM & DEPOSIT PREMIUM:        $ 400,000

FLAT PREMIUM: ☐    or    ADJUSTABLE PREMIUM: ☒

(check flat or adjustable)      MINIMUM EARNED PREMIUM    25 %

If Adjustable:
Rate: $2.300
Per: $1,000      Basis: GROSS SALES ESTIMATED AT $173,703,274

AUDIT PERIOD (IF APPLICABLE)      ☒ ANNUALLY    ☐ SEMI-ANNUALLY ☐ NOT AUDITABLE

Item 6. RETROACTIVE DATE: 04/30/2003

| Item 7. ENDORSEMENTS ATTACHED TO THIS POLICY: |
|---|

|   | XDEC-0001-01-03 | EXCESS LIABILITY POLICY DECLARATIONS |
|---|---|---|
|   | XLP-0001-01-03 | EXCESS LIABILITY POLICY |
|   |  | NOTICE TO POLICYHOLDER |
|   | SLN-TN (08-05) | POLICYHOLDER NOTICE TENNESSEE |
| A. | XLX-4006-01-03 | AUTO NO-FAULT AND SIMILAR LAWS EXCLUSION |
| B. | XLX-4008-01-03 | CROSS SUITS EXCLUSION |
| C. | XLX-4020-01-03 | PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION |
| D. | XLX-4023-01-03 | TOTAL POLLUTION EXCLUSION |
| E. | XLX-4031-01-05 | PRIOR KNOWN OR REPORTED LOSS OR CONDITION EXCLUSION |
| F. | XLX-4044-01-04 | LEAD EXCLUSION |
| G. | XLX-4054-06-04 | SILICA EXCLUSION |
| H. | XLX-4059-01-05 | EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, OR PHONE CALLS |
| I. | XLE-5002-10-06 | BASIS OF PREMIUM ENDORSEMENT |
| J. | XLE-5006-01-03 | MINIMUM EARNED PREMIUM ENDORSEMENT |
| K. | XLE-5011-01-03 | MAINTENANCE SELF INSURED RETENTION ENDORSEMENT "DEFENSE EXPENSE" INCLUDED |
| L. | XLE-5020-10-06 | RETROACTIVE DATE ENDORSEMENT |
| M. | SOS-TN (06-05) | SERVICE OF SUIT CLAUSE - TENNESSEE |
|   | CLM-0001-09-02 | CLAIM NOTICE |
|   | LI-FS 001-07-06 | STATE FRAUD STATEMENTS |

XDEC-0001-01-03                                Page 2 of 4

**Exhibit C**

POLICY NUMBER: EAU720446/01/2007

| Item 8. SCHEDULE A. - UNDERLYING INSURANCE | | | |
|---|---|---|---|
| Carrier, Policy Number, Period | Type of Policy | Applicable Limits or Amounts of Insurance | |
| First Underlying Insurance | | | |
| General Star<br>Policy # IJA964075A<br>04/30/2007 to 04/30/2008 | Commercial<br>General<br>Liability<br><br>(Occurrence) | $1,000,000<br>$5,000,000<br>$3,000,000<br><br>$ 500,000 | Each Occurrence<br>General Aggregate<br>Products/Completed<br>Operations Aggregate<br>SIR |
| | The General Aggregate is a Policy Aggregate which includes Professional | | |
| | Employee<br>Benefits<br>Liability<br><br>(Claims Made)<br><br>Retroactive Date:<br>04/30/2003<br><br>Part of the GL Policy Aggregate | $1,000,000<br>$1,000,000<br>$ 500,000 | Each Claim<br>Aggregate<br>SIR |
| | | Defense Expense: In Addition to Limits | |
| General Star<br>Policy # IJA964075B<br>04/30/2007 to 04/30/2008 | Commercial<br>General<br>Liability<br><br>(Occurrence) | $1,000,000<br>$5,000,000<br>$ 500,000 | Each Occurrence<br>General Aggregate<br>SIR |
| | This is the Sexual Misconduct Coverage, Sub Limit of the GL | | |
| | | Defense Expense: In Addition to Limits | |
| General Star<br>Policy # IJA964075A<br>04/30/2007 to 04/30/2008 | Professional<br>Liability<br><br>(Claims Made)<br><br>Retroactive Date:<br>04/30/2003<br><br>Part of the GL Policy Aggregate | $1,000,000<br>$5,000,000<br>$ 500,000 | Each Claim<br>Aggregate<br>SIR |
| | | Defense Expense: In Addition to Limits | |

ACE American Insurance

XDEC-0001-01-03

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 87 of 177 PageID #: 252

**Exhibit C**

POLICY NUMBER: EAU720446/01/2007

| | | | |
|---|---|---|---|
| ACE American Insurance Company | | | |
| ᵔlicy # ISA H07936217 | Commercial Automobile Liability | $2,000,000 | Combined Single Limit |
| ./01/2007 to 01/01/2008 | | | Defense Expense: In Addition to Limits |

| | | | |
|---|---|---|---|
| ACE American Insurance Company | | | |
| Policy # WLRC44456758 | Employers Liability | | |
| 01/01/2007 to 01/01/2008 | | | |
| | Bodily Injury by Accident | $2,000,000 | Each Accident |
| | Bodily Injury by Disease | $2,000,000 | Policy Limit |
| | Bodily injury by Disease | $2,000,000 | Each Employee |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY. PLEASE SEE ATTACHED FORMS AND ENDORSEMENTS SCHEDULE.

Countersigned:

By:

------------------------------------------------     --------------------------------------------

(Date)                        (Authorized Representative)

Exhibit C

POLICY NUMBER: EAU720446/01/2007

| Item 8. SCHEDULE A. - UNDERLYING INSURANCE | | | |
|---|---|---|---|
| Carrier, Policy Number, Period | Type of Policy | Applicable Limits or Amounts of Insurance | |
| First Underlying Insurance | | | |
| General Star<br>Policy # IJA964075A<br>04/30/2007 to 04/30/2008 | Commercial<br>General<br>Liability<br><br>(Occurrence) | $1,000,000<br>$5,000,000<br>$3,000,000<br><br>$ 500,000 | Each Occurrence<br>General Aggregate<br>Products/Completed<br>Operations Aggregate<br>SIR |
| | The General Aggregate is a Policy Aggregate which includes Professional | | |
| | Employee<br>Benefits<br>Liability<br><br>(Claims Made)<br><br>Retroactive Date:<br>04/30/2003<br><br>Part of the GL Policy Aggregate | $1,000,000<br>$1,000,000<br>$ 500,000 | Each Claim<br>Aggregate<br>SIR |
| | | Defense Expense: In Addition to Limits | |
| General Star<br>Policy # IJA964075B<br>04/30/2007 to 04/30/2008 | Commercial<br>General<br>Liability<br><br>(Occurrence) | $1,000,000<br>$5,000,000<br>$ 500,000 | Each Occurrence<br>General Aggregate<br>SIR |
| | This is the Sexual Misconduct Coverage, Sub Limit of the GL | | |
| | | Defense Expense: In Addition to Limits | |
| General Star<br>Policy # IJA964075A<br>04/30/2007 to 04/30/2008 | Professional<br>Liability<br><br>(Claims Made)<br><br>Retroactive Date:<br>04/30/2003<br><br>Part of the GL Policy Aggregate | $1,000,000<br>$5,000,000<br>$ 500,000 | Each Claim<br>Aggregate<br>SIR |
| | | Defense Expense: In Addition to Limits | |

ACE American Insurance

XDEC-0001-01-03

Page 3 of 4

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 89 of 177 PageID #: 254

Exhibit C

POLICY NUMBER: EAU720446/01/2007

| ACE American Insurance Company<br>Policy # ISA H07936217<br>01/01/2007 to 01/01/2008 | Commercial Automobile Liability | $2,000,000 | Combined Single Limit |
|---|---|---|---|
| | | | Defense Expense: In Addition to Limits |
| ACE American Insurance Company<br>Policy # WLRC44456758<br>01/01/2007 to 01/01/2008 | Employers Liability | | |
| | Bodily Injury by Accident<br>Bodily Injury by Disease<br>Bodily Injury by Disease | $2,000,000<br>$2,000,000<br>$2,000,000 | Each Accident<br>Policy Limit<br>Each Employee |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY. PLEASE SEE ATTACHED FORMS AND ENDORSEMENTS SCHEDULE.**

Countersigned:

By:

------------------------------------------------

(Date)

------------------------------------------------

(Authorized Representative)

XDEC-0001-01-03

Page 4 of 4

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 90 of 177 PageID #: 255

Exhibit C

## NOTICE TO POLICYHOLDER

This policy is composed of various forms explaining the insurance coverage provided. It may also include one or more endorsements. Endorsements are documents that change the policy. Endorsements may provide additional coverage to the policy. Endorsements can also restrict or remove coverage provided in the policy. THE POLICY SHOULD BE READ CAREFULLY TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 91 of 177 PageID #: 256

Exhibit C

| Named Insured | | | |
|---|---|---|---|
| UHS CHILDREN SERVICES, INC. | | | |
| Policy Number | Policy Period | | Issued By |
| EAU720446/01/2007 | 04/30/2007 | to 04/30/2008 | AXIS SURPLUS INSURANCE COMPANY |

# POLICYHOLDER NOTICE

## TENNESSEE

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

This insurance contract is required to bear the name and address of the procuring Tennessee surplus lines broker.

SLN-TN (08-05)

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 92 of 177 PageID #: 257

Exhibit C

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Auto No-Fault and Similar Laws Exclusion

This insurance does not apply to any liability imposed by law under any auto no-fault, uninsured or underinsured motorists or similar laws or statutes.

XLX – 4006-01-03

Exhibit C

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Cross Suits Exclusion

This insurance does not apply to any claim or suit brought by any Named Insured against any other Named Insured.

XLX — 4008-01-03

**Exhibit C**

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Punitive or Exemplary Damages Exclusion

This insurance does not apply to fines, penalties, punitive damages, exemplary damages, treble damages or the multiplication of compensatory damages.

XLX-4020-01-03

**Exhibit C**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Total Pollution Exclusion

Exclusion 1. of the policy is deleted in its entirety, and replaced by the following:

This insurance does not apply to:

1. Pollution

a. Any liability or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

b. Any loss cost or expense arising out of:

(1) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants; or

(2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

For the purposes of this exclusion, liability or damage includes any liability or damage arising out of or resulting from the "products-completed operations hazard".

For the purposes of this exclusion, "products-completed operations hazard" means:

a. All liability or damage occurring away from premises you own or rent and arising out your products or your work except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However your work will be deemed completed at the earliest of the following times:
(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site is put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

XLX-4023-01-03

Exhibit C

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include any liability or damage arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by an insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

XLX-4023-01-03

Page 2 of 2

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 97 of 177 PageID #: 262

Exhibit C

POLICY NUMBER:
EAU720446/01/2007  UHS CHILDREN SERVICES, INC.  ENDORSEMENT
E

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIOR KNOWN OR REPORTED LOSS OR CONDITION EXCLUSION

This insurance does not apply to any liability or damages resulting from, directly or indirectly, based upon, arising out of, in consequence of, or in any way related to or involving any fact, circumstance, situation, transaction, or event of which, as of the inception date of this policy, any insured had knowledge of or had reason to suppose might give rise to any loss, demand, claim, suit, injury, or damage which would fall within the scope of insurance afforded by this policy.

Loss, demand, claim, suit, injury, or damage will be deemed to be known to any insured when any insured, any insured's Risk Manager, or any other employee authorized by any insured to receive notice of any loss, demand, claim, suit, injury, or damage, has performed or experienced any of the following:

(1) Reported all, or any part, of any loss, injury, or damage to us, any other insurer or any third party administrator of any kind; or

(2) Received a written or verbal notice, demand, claim, or suit for damages because of any loss, injury, or damage; or

(3) Becomes aware by any other means that loss, injury, or damage has occurred or has begun to occur.

Further, this insurance does not apply to any liability or damages resulting from, directly or indirectly, based upon, arising out of, in consequence of, or in any way related to any dangerous condition, defect, or deficiency in any of your premises, your products or your work which is known to any insured, or any employee of any insured, prior to the inception date of this policy.

Dangerous condition, defect, or deficiency in any of your premises, your products or your work will be deemed known to any insured when any insured, or any employee of any insured, has performed or experienced any of the following:

(1) Received a written or verbal notice or complaint that any such dangerous condition, defect, or deficiency in any of your premises, your products or your work exists; or

(2) Becomes aware by any other means that such dangerous condition, defect, or deficiency in any of your premises, your products or your work exists or has begun to exist.

XLX – 4031-01-05

98

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 98 of 177 PageID #: 263

**Exhibit C**

For the purposes of this exclusion, your premises includes any premises that you own, rent, lease, occupy, or are otherwise legally responsible for.

If this policy is a renewal of another policy issued to any insured by the same insurer, the references in this exclusion to the inception date of this policy will be deemed to refer instead to the inception date under the first policy under which the insurer provided the insured with coverage renewed by this policy.

XLX – 4031-01-05

Exhibit C

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
F

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LEAD EXCLUSION

This insurance does not apply to any liability or damage arising directly or indirectly out of:

1.  The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of lead or products or materials containing lead regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any injury or damage;

2.  Any loss, cost, or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of lead by any insured or by any other person or entity;

3.  Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connections with 1. and 2. above; or

4.  Any obligation to share damages with or repay someone else who must pay lead damages because of lead or products or materials containing lead.

XLX-4044-01-04

100

**Exhibit C**

POLICY NUMBER:                    UHS CHILDREN SERVICES, INC.                    ENDORSEMENT
EAU720446/01/2007                                                                G

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA EXCLUSION

This insurance does not apply to any actual, alleged or threatened past, present or future claims for any liability or damage related to or arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, inhalation of, ingestion of, contact with, existence of, testing for or failure to disclose the presence of, failure to warn or advise of silica, products containing silica, or products designed or used to protect from the inhalation, ingestion, contact with or any other exposure to silica, whether or not the silica is or was at any time air-borne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

(1) Clean up or removal of silica or products and materials containing silica;

(2) Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of silica or products and material containing silica;

(3) Disposal of silica substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4) Compliance with any law or regulation regarding silica;

(5) Existence, storage, handling or transportation of silica;

(6) Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given; or

(7) Any obligation to share damages with or repay someone else who must pay damages because of silica.

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, attorney fees or adjustment arising out of such claims.

XLX-4054-06-04

**Exhibit C**

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
H

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, OR PHONE CALLS

This insurance does not apply to any liability or damage arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

3. Any statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

XLX – 4059-01-05

**Exhibit C**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BASIS OF PREMIUM ENDORSEMENT

It is agreed that the words and phrases that appear in the Declarations related to the calculation of premium have special meaning and are defined below:

(1) "Admissions" means the total number of persons, other than employees of the named insured, admitted to the event (s) insured or to the event(s) conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes;

(2) "Area" means the total number of square feet of floor space at the insured premises;

(3) "Each". This basis of premium involves units of exposure, and the quantity comprising each unit of exposure, such as "each person";

(4) "Gross Sales" means the gross amount of sales charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for : a) all goods or products, sold or distributed; b) operations performed during the policy period, including operations performed for the insured by independent contractors; c) rentals; and d) dues or fees. "Gross Sales" does not include sales or excise taxes which are collected and submitted to a governmental division;

(5) "Payroll" means the total payroll earned during the policy period by proprietors and by all employees, leased employees and temporary workers of the named insured and includes commissions, bonuses, extra pay for overtime work and pay for holidays, vacations or periods of sickness.

(6) "Field Payroll" means the total payroll earned during the policy period by proprietors and by all employees, leased employees and temporary workers of the named insured and includes commissions, bonuses, extra pay for overtime work and pay for holidays, vacations or period of sickness. "Field Payroll" does not include payroll earned by sales and clerical employees;

(7) "Sub Cost" means the total cost of all work let or sublet to independent contractors including: a) the independent contractors' costs of all labor, materials and equipment used in the execution of the work and b) all fees, bonuses, or commissions made, paid or due;

(8) "Total Cost" means the total cost of all work let or sublet including: a) the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and b) all fees, bonuses or commissions made, paid or due; and

(9) "Units" means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together , or by a person living alone; and

(10) "Miles" means the total miles operated during the policy period by all owned, rented or leased automobile units, loaded or unloaded, with or without drivers.

XLE-5002-10-06

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 103 of 177 PageID #: 268

**Exhibit C**

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
J

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Minimum Earned Premium Endorsement

Condition 12. Premium Computation is amended to include the following paragraph:

However, in no event shall we retain less than 25% of the premium set forth in item 5. of the Declarations.

XLE -- 5006-01-03

Exhibit C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Maintenance Self Insured Retention Endorsement "Defense Expense" Included

1. Definition of Maintenance Self Insured Retention

In the event of exhaustion of the underlying aggregate limit (s) of the below designated policy by reason of payments for loss, damage or "defense expense" paid there under, to which this insurance applies, the named insured shall pay the first $500,000 of all subsequent loss, damage or "defense expense" to which this insurance applies before we shall have any obligation to pay loss, damage, "defense expense" or participate in defense. However, this maintenance self insured retention is not applicable to any "occurrence" that is:

a. Covered by the below designated policy; and

b. The below designated policy has an applicable underlying aggregate limit available for payment of loss, damage or "defense expense".

Designated Policy Information:

Type of policy: General Liability
Insurer: General Star
Policy number: IJA964075A
Policy period: 04/30/2007     to 04/30/2008
Description of aggregate limit: General Aggregate Limit
Amount of aggregate limit: $ 5,000,000

2. The maintenance self insured retention shall be subject to the following additional terms and conditions:

a. Our obligation, under the coverage provided by this endorsement, to pay those sums the insured becomes legally obligated to pay as damages applies to those sums in excess of the maintenance self insured retention and subject to the limits of liability as stated in item 3. of the declarations;

b. This maintenance self-insured retention of $500,000 applies to each occurrence separately and is not subject to any aggregate limitation;

c. The maintenance self-insured retention shall be primary and underlying to such insurance as is afforded by this policy. The maintenance self-insured retention shall only be satisfied by those amounts paid by the named insured in the settlement and/or

XLE – 5011-01-03                    Page 1 of 6

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 105 of 177 PageID #: 270

Exhibit C

satisfaction of a claim, suit, or loss. The named insured shall pay 100% of the maintenance self insured retention before the coverage provided by this policy applies; and

d. "Defense expense" as defined in this endorsement shall be paid by the insured within the maintenance self insured retention.

2. Defense Settlement

a. The insured shall have the obligation to provide, at its own expense, an adequate defense and a prompt and diligent investigation of any claim or suit and an evaluation of claims and suits without regard to the maintenance self insured retention or the limits of liability of this policy. If the insured fails to comply with this clause, no loss, cost or expense shall be payable by the company if the claim, suit, or loss should exceed the maintenance self-insured retention.

b. The salaries of any employee or in-house counsel of the insured will not apply as payment of "defense expense" toward the insured's obligation for the payment of a judgment or settlement.

The insured shall use due diligence and prudence to settle all claims or suits which in the exercise of sound judgment should be settled. However, the insured shall not make or agree to any settlement for a sum in excess of   the maintenance self insured retention without our approval. In the event the insured fails to comply with this condition and settles a claim or suit for an amount in excess of the maintenance self insured retention without our consent, then no loss, cost or expense shall be payable by us.

c. We shall have the right and be given the opportunity to associate and participate in the control, defense, settlement and/or trial of any claim or suit when the insured's liability is reasonably expected to exceed the maintenance self insured retention. In this event, we may request the insured to tender the remaining limits of the maintenance self-insured retention in order to complete the settlement of such claim or suit. The insured will not unreasonably withhold its consent to our request. It is expressly agreed that, by electing to participate in accordance with this paragraph, we do not enlarge our obligation to pay for "defense expense", except we must pay for our own costs incurred directly by us as a result of our election to associate or participate.

d. We also shall have a separate, limited right to discharge and terminate our obligations to the insured with respect to any claim or suit. Our obligation to indemnify the insured shall be forever discharged and terminated when:

i. A claimant or plaintiff tenders or agrees to a good faith settlement amount;

ii. The payment of such settlement amount in subsection 2.d.i. would result in a full and

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 106 of 177 PageID #: 271

**Exhibit C**

final disposition and release of the claim or suit;

iii. Such settlement amount in subsection 2.d.i. is in excess of the maintenance self insured retention of this endorsement;

iv. Such settlement amount in subsection 2.d.i. is acceptable to us; and

v. Such settlement amount in subsection 2.d.i. is not acceptable to you;

Provided that we tender to you within thirty (30) days an amount equal to the difference between the maintenance self insured retention for this endorsement and such settlement amount in subsection 2.d.i.

e. "Defense expense" incurred by the insured shall be apportioned as follows:

i. In the event a claim or suit arises which appears likely to exceed the maintenance self-insured retention, no costs shall be incurred by the insured without our written consent;

ii. Should such claim or suit be settled for not more than the maintenance self insured retention, then no "defense expense" shall be payable by us;

iii. Should, however, the sum for which the claim or suit is settled or satisfied exceed the maintenance self insured retention, then, we, if we approved such settlement or consented to the proceedings continuing, shall contribute to the costs incurred by the insured in the excess of the maintenance self insured retention in accordance with our limits of
liability;

iv. In the event you elect not to appeal a judgment in excess of the maintenance self insured retention, we may elect to conduct such appeal at our own cost and expense and shall be then liable for the taxable court costs and interests incidental thereto, but in no event shall our total liability exceed the limits of liability as stated in item 3. of the declarations plus the costs of such appeal; and

v. In the event a judgment is rendered in excess of the maintenance self insured retention and the insured elects to appeal such judgment without our express consent or agreement, the insured shall be responsible for costs of appeal, including costs for an appeal bond for the liability in excess of the maintenance self insured retention.

f. The insured shall cooperate with us and, upon our request, assist in making settlements, defending suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of liability with respect to the insurance afforded under this endorsement. The insured shall attend

**Exhibit C**

hearings, trials or any other proceedings and assist in securing and giving evidence and obtaining
witnesses.

g. This coverage is provided on the express condition that you undertake to perform the following duties:

i. The general administration of all details so as to discharge effectively the claims and suits against the insured; and

ii. The maintenance of accurate records of all details incident to claims, suits and loss payments.

h. Under no circumstances will the bankruptcy, insolvency or inability to pay of any insured or any other insurer, require us to drop down and replace the self insured retention or assume any obligation within the maintenance self-insured retention.

i. Notwithstanding the foregoing, our right and duty to participate in the defense under this endorsement ends when the applicable limits of insurance as stated in item 3 of the declarations has been exhausted by payments made under this policy in the settlement and/or satisfaction of claims, suits or loss.

j. The insured shall hold harmless and indemnify us for any and all losses, damages, attorney's fees, or other expenses which may be imposed on us because of the acts or omissions of the insured, its employees, agents, or independent contractors during the course of investigation, defense, or settlement of claims or suits against anyone qualifying as an insured under this policy.

3. Definitions

For the purposes of this endorsement, the term "defense expense" shall mean:

a. Payments to attorneys, law firms, doctors, experts, appraisers, photographers, adjusters, investigators, printers, stenographers and all other services in connection with the investigation, adjustment or defense of a claim or suit covered by this endorsement;

b. The premium for any bond required by law to release attachments;

c. The premium for all appeal bonds required by law to appeal any claim or suit;

d. All costs taxed against the insured in any claim or suit;

e. All pre-judgment interest against the insured; and

f. All post-judgment interest against the insured.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 108 of 177 PageID #: 273

Exhibit C

4. Conditions

For the purposes of this endorsement only, condition 4. of the policy is deleted in it's entirety and replaced by the following:

a. You and any other involved insured must notify us in writing, as soon as practicable, of any occurrence, offense, claim, or suit which may involve this endorsement and subsequent developments likely to affect our liability hereunder.

Also, immediate written notice shall be given to us when any of the following occurs:

i. Where a claim or suit or multiple claims or suits arising out of one occurrence are likely to exceed fifty percent (50%) or more of the maintenance self insured retention;

ii. Demand or demands exceed the maintenance self-insured retention;

iii. A fatality;

iv. Amputation of major extremities;

v. Any serious head injury involving brain damage, including skull fracture or loss of sight of either or both eyes;

vi. Any serious injury to the spinal cord or vertebrae, including paraplegia, quadriplegia, and partial paralysis;

vii. Any burn 25% or more of the body;

viii. Occurrences where severe injury or multiple injuries are involved; or

ix. Any claim or suit for punitive damages or claim or suit for damages for bad faith.

We have the right to complete access to your claim file, the defense attorney's complete file, all investigation material and reports, including all evaluations and information on negotiations. At our election, defense attorneys must provide us with simultaneous copies of all correspondence provided to you by your agents, the costs thereon shall be treated as "defense expense".

b. The written notice required above shall include a minimum of the following information:

i. A description of how, when, and where the occurrence or offense took place;

ii. The names and addresses of any injured persons and witnesses; and

**Exhibit C**

iii. The nature and location of any injury or damage arising out of the occurrence or offense.

c. If a claim is received by any insured, you must:

i. Immediately record the specifics of the claim and date received; and

ii. Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

d. You and any other involved insured must:

i. Immediately send us copies of any demands, notices, summons or legal papers received in connection with any claim or suit;

ii. Authorize us to obtain records and other information;

iii. Cooperate with us in the investigation, settlement or defense of any claim or suit; and

iv. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may apply.

e. Other than to comply with the requirements outlined in paragraph 2.e. of this endorsement, no insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

f. Compliance with the duties outlined in this section is a condition precedent to coverage under this policy.

You must notify us in writing, when you have knowledge that the self-insured retention may be exhausted.

Exhibit C

POLICY NUMBER:
EAU720446/01/2007

UHS CHILDREN SERVICES, INC.

ENDORSEMENT
L

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RETROACTIVE DATE ENDORSEMENT

04/30/2003 - Professional Liability

XLE-5020-10-03

**Exhibit C**

UHS CHILDREN SERVICES, INC.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE - TENNESSEE

The Company hereby designates the Commissioner of Insurance and his or her successors, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that all lawful process received by said Commissioner of Insurance or his or her successors, is sent by certified or registered mail to the Company at:

> AXIS U.S. Insurance
> Attn:  Claims Administrator
> 11680 Great Oaks Way, Suite 500
> Alpharetta, GA  30022

Service of process in any such action will also be valid if served upon any person in the State of Tennessee who, on behalf of the Company, solicits insurance within the State of Tennessee; makes, issues or delivers insurance policies within the State of Tennessee; or collects or receives any miums or other consideration for the Company, provided that all lawful process received by said person is sent by certified or registered mail to the Company at the above address.

SOS-TN (06-05)

Exhibit C

# AXIS

# EXCESS LIABILITY POLICY

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 113 of 177 PageID #: 278

Exhibit C

PLEASE READ YOUR POLICY CAREFULLY

## TABLE OF CONTENTS

### DECLARATIONS

Item 1. - Named Insured and Address
Item 2. - Policy Period
Item 3. - Limits of Insurance
Item 4. - Description of Business
Item 5. - Premium
Item 6. - Retroactive Date
Item 7. - Endorsements Attached
Item 8. - Schedule A. - Schedule of Underlying Insurance

### INTRODUCTION

I.      INSURING AGREEMENT

II.     DEFENSE AND DEFENSE EXPENSE

III.    EXCLUSIONS

IV.     LIMITS OF INSURANCE

V.      CONDITIONS

VI.     DEFINITIONS

VII.    EXTENDED REPORTING PERIOD OPTION

XLP-0001-01-03

Exhibit C

## INTRODUCTION

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you", "your" and "Named Insured" refer to the "Named Insured" shown in Item 1. of the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI. DEFINITIONS.

## I. INSURING AGREEMENT

1. The coverage provided by this policy is excess insurance and, except as otherwise stated in this policy, follows the terms, conditions, exclusions, and endorsements of the "first underlying insurance" as shown in Item 8. of the Declarations. Further, this policy will follow any additional exclusions included in any other "underlying insurance". Under no circumstances will this coverage be broader than any "underlying insurance".

2. We will pay those sums in excess of the "underlying insurance" that you become legally obligated to pay as damages because of injury or damage to which this insurance applies, provided that the "underlying insurance" also applies, or would have applied but for the exhaustion of the applicable Limits of Insurance.

3. The amount we will pay as damages shall not exceed the Limits of Insurance stated in Item 3. of the Declarations. In certain instances, as further specified in Section IV. LIMITS OF INSURANCE, the amount we will pay as damages and defense expenses shall not exceed the Limits of Insurance as stated in Item 3. of the Declarations.

4. If the "first underlying insurance" applies on a claims-made basis, this insurance will also apply on a claims-made basis. Any extended reporting periods that may be endorsed to any "underlying insurance" shall not apply to this insurance. For any supplemental extended reporting period to apply to this insurance, such extended reporting period must be requested by you, negotiated with us and endorsed to this policy.

5. We have no other obligations or liabilities to pay sums or perform services, except as described in Section II. DEFENSE AND DEFENSE EXPENSE.

6. Where any terms of this policy conflict with any terms of any "underlying insurance", the terms of this policy will apply.

7. Settlement of any claim or suit for an amount in excess of any "underlying insurance" shall not be binding on us unless we consent in writing.

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 115 of 177 PageID #: 280

**Exhibit C**

## II. DEFENSE AND DEFENSE EXPENSES

1. Defense

We shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought, or proceeding instituted against you. However, we will have the right and opportunity to associate with you in the defense and control of any claim, suit, or proceeding we reasonably think likely will involve us.

2. Defense Expense

If all "underlying insurance" has been exhausted by payment of damages, then we will pay the necessary defense expenses for other such claims, suits or proceedings to which this insurance applies.

a. Our obligation to pay defense expenses is subject to the following limitations and conditions:
(1) At our election, we will have the right and opportunity, but not the obligation, to assume charge of the defense and control of any claim, suit or proceeding.
(2) You must obtain our written consent before any defense expense is incurred.
(3) We have no obligation to pay for defense expenses incurred by you where any "underlying insurance" is not available or collectible because of the bankruptcy or insolvency of any underlying insurer or you, for any reason. Further, we have no obligation to pay for defense expenses if you are unable or have failed to comply with the terms, conditions or obligations of any "underlying insurance" or this policy.

b. Defense expense payments will be made as follows:
(1) When defense expense payments of the "first underlying insurance" do not reduce the limits of insurance provided by that policy, then any such expense payments made under this policy will not reduce the limits of insurance as stated in Item 3. of the Declarations.
(2) When defense expense payments of the "first underlying insurance "reduce the limits of insurance provided by that policy, then any such expense payments made under this policy will reduce the limits of insurance as stated in Item 3. of the Declarations.

c. We will not pay any defense expense or participate in any claim, suit, or proceeding after we have exhausted the limits of liability shown in Item 3. of the Declarations.

For the purposes of this policy, defense expenses include, but are not limited to, legal and other expenses incurred in the investigation or defense of claims or suits to which this insurance applies, including court costs and interest on judgments. Defense expense does not include salaries and expenses of our employees or your employees.

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 116 of 177 PageID #: 281

**Exhibit C**

## III. EXCLUSIONS

Any exclusions applicable to the "first underlying insurance" and to any other "underlying insurance" also apply to this insurance. In addition, this insurance does not apply to:

1. Pollution

a. Any liability or damages arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
(1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
(2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
(a) Any insured; or
(b) Any person or organization for whom any insured may be legally responsible.
(4) At or from any premises, site or location on which any insured or any contractors or subcontractors are working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.
(5) At or from any premises, site or location on which any insured or any contractors or subcontractors are working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

b. Any loss cost or expense arising out of any:
(1) Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
(2) Claim or suit by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Subparagraph 1. a. (1) does not apply to the extent that "underlying insurance" exists for, or would have existed but for the exhaustion of the limits of insurance of the "underlying insurance" for:
(1) Injury if sustained within a building owned, rented or occupied by the insured and caused by smoke, fumes, vapors or soot caused by equipment used to heat the building; or
(2) Injury or damage arising out of heat, smoke or fumes from a "hostile fire".

XLP-0001-01-03

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 117 of 177 PageID #: 282

Exhibit C

Subparagraph 1. a. (4) does not apply to the extent that "underlying insurance" exists for, or would have existed but for the exhaustion of the limits of insurance of the "underlying insurance" for:

1) Injury or damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(2) Injury or damage arising out of heat, smoke or fumes from a "hostile fire".

2. Asbestos

a. Any liability or damages arising, directly or indirectly, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of asbestos, asbestos fibers, or any other form of asbestos regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any

injury or damage;

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of asbestos, asbestos fibers or any other form of asbestos by any insured or by any other person or entity;

c. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with 2. a. or b. above; or

d. Any obligation to share damages with or repay someone else who must pay damages because of asbestos.

3. War or Terrorism

Any liability or damages arising, directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

d. "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism", regardless of any other cause or event that contributes concurrently or in any sequence to any injury or damage.

4. Fungi or Bacteria

a. Any liability or damages arising, directly or indirectly, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed

concurrently or in any sequence to any injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 118 of 177 PageID #: 283

**Exhibit C**

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

5. Cyber Liability

a. Any liability or damages arising, directly or indirectly, out of the loss of or alteration of any electronic data, electronic information, computer applications software, computer operations software or any other similar data, information or software in any computer hardware, computer system, computer network, or the Internet; or

b. Any liability or damages arising, directly or indirectly, out of damage to any computer hardware, computer system, computer network, or the Internet as a result of 5.a. above.

## IV. LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

a. Insureds;
b. Claims made or suits brought; or
c. Persons or organizations making claims or bringing suits.

2. If there is a limit stated in Item 3. of the Declarations for the General Aggregate Limit (Other than Products-Completed Operations), that amount is the most that we will pay for all damages under this insurance, except for: (1) injury and damage included within the products-completed operations hazard and (2) coverage included in the "underlying insurance" for automobile liability.

3. If there is a limit stated in Item 3. of the Declarations for the Products-Completed Operations Aggregate Limit, that amount is the most that we will pay under this insurance for any injury and damage included within the products-completed operations hazard.

4. If there is a limit stated in Item 3. of the Declarations for the Combined Aggregate Limit, that amount is the most we will pay under this insurance for all coverage except coverage included in the "underlying insurance" for automobile liability.

5. Subject to Paragraphs 2., 3., and 4. above, the Each Occurrence Limit stated in Item 3. of the Declarations is the most we will pay for:
(1) any injury and damage arising out of one occurrence or offense, or
(2) any wrongful act, error or omission.

6. If the applicable limits of insurance of the "underlying insurance" are reduced or exhausted by payments of damages from one or more occurrences covered by this policy, the limits of insurance of this policy will apply in excess of such reduced or exhausted limits.

7. If any Supplementary Payments made under this policy do not reduce the limits of insurance of the "underlying insurance", those payments will not reduce the limits of insurance of this policy. If any Supplementary Payments made under this policy do reduce the limits of insurance of the "underlying insurance", those payments will also reduce the limits of insurance of this policy.

**Exhibit C**

8. The limits of insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after the issuance of this policy for an additional period of less than 12 months. In that case, the additional period will be
deemed to be part of the last preceding policy period for the purposes of determining the limits of insurance.

## V. CONDITIONS

1. Bankruptcy:

a. Bankruptcy of Insured:
Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.
b. Bankruptcy of Underlying Insurer:
Bankruptcy or insolvency of any underlying insurer will not relieve us of our obligations under this policy. However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of any underlying insurer. This insurance will apply as if the otherwise applicable limits of insurance of such "underlying insurance" were available and in full effect. It shall be your sole responsibility to provide other insurance or self-insurance (including the corresponding defense obligations) to replace such "underlying insurance".

2. Cancellation:

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance notice of cancellation.

Such advance notice of cancellation should be mailed or delivered to the following address:
**AXIS U.S. Insurance**
**11680 Great Oaks Way, Suite 500**
**Alpharetta, GA 30022**

b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
(1) 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or
(2) 30 days before the effective date of cancellation, if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
d. Notice of cancellation will state the effective date of cancellation and will be effective for all insureds. All coverage will end on the effective date of cancellation.
e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the premium refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a premium refund.
f. If notice of cancellation is mailed, proof of mailing shall be considered sufficient proof of notice.

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 120 of 177 PageID #: 285

**Exhibit C**

3. Changes:

This policy (including the Declarations, Schedules and any endorsements attached hereto) contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations may request changes in the terms of this policy. This policy's terms and conditions can be amended or waived only by endorsement issued by us and made a part of this policy.

4. Duties in the Event of Occurrence, Offense, Wrongful Act, Error, Omission, Claim or Suit:

a. You must see to it that we are notified as soon as practicable of an occurrence, offense, wrongful act, error or omission, regardless of the amount, which may result in a claim or suit. To the extent possible, notice should include:
(1) How, when and where the occurrence, offense, wrongful act, error or omission took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the occurrence, offense, wrongful act, error or omission.

b. If a claim is made or suit is brought against any insured, you must:
(1) Immediately record the specifics of the claim or suit and the date received; and
(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

5. Examination of Your Books and Records:

We may examine and audit your books and records as they relate to this policy at any time during the policy period and for up to three years afterward.

6. Inspection and Surveys:

We have the right, but are not obligated, to:
a. Make inspections and surveys at any time;
b. Give you reports on the conditions we find; and
c. Recommend changes.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 121 of 177 PageID #: 286

**Exhibit C**

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

We do not warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

7. Legal Action Against Us:

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a suit asking for damages from an insured; or
b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

8. Loss Payable:

a. Liability under this policy shall not apply unless and until the insured and the underlying insurer has become obligated to pay the amount of the "underlying insurance". Such obligation by the underlying insurer and us to pay damages shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, the claimant or the claimant's legal representative, the underlying insurer and us.
b. If we are obligated to indemnify the insured for any payment of judgments or settlements, the insured must make a written claim within 12 months of:
(1) actually paying any amount in excess of the "underlying insurance";
(2) The insured's liability being made certain by:
i. the final written judgment of a trial; or
ii. the written agreement of the insured, the claimant, the underlying insurer and us.

If any later payments are made by the insured for the same occurrence, offense, wrongful act, error, or omission, written claim for these payments must likewise be made. We will reimburse you for these payments within 30 days of confirming that they are payable by this policy.

9. Maintenance Of Underlying Insurance:

The "underlying insurance" listed in the Schedule of Underlying in the Declarations shall remain in effect throughout the policy period except for the reduction of the aggregate limits due to payment of damages.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 122 of 177 PageID #: 287

**Exhibit C**

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

0. Unimpaired Aggregates of Underlying Insurance:

If an aggregate limit of any "underlying insurance" has been reduced below the aggregate amount shown in the Schedule of Underlying Insurance for that "underlying insurance" as a result of losses occurring prior to the inception date of this policy or as a result of losses not covered by this insurance, we will apply all insurance provided by this policy as if the aggregate of the "underlying insurance" had not been reduced below the
limit amount shown in the Schedule of Underlying Insurance.

This condition does not apply to losses subject to claims-made coverage and occurring after the retroactive date of this policy (if any).

11. Other Insurance:

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this policy.

12. Premium Computation:

The rate, rating basis and estimated units of exposure for the Policy Period will be stated in Item 5. of the Declarations. We will compute the premium for this policy by applying the rate to each unit of exposure of the rating basis. The estimated units of exposure will be used to determine the advance premium. The actual units of exposure will be used to determine the earned premium.

When this policy expires or if it is cancelled, we will compute the earned premium. If the earned premium is more than the advance premium, you will pay us the additional premium immediately. If the earned premium is less than the advance premium, we may return the excess premium to you (subject to the minimum premium). Regardless of the earned premium, the minimum premium stated in the Declarations will apply.

13. Representations or Fraud:

By accepting this policy, you agree:

a. The statements in the Application and the Declarations are accurate and complete;
b. Those statements are based upon representations you made to us;
c. We have issued this policy in reliance upon your representations: and
d. This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

14. Transfer of Rights of Recovery Against Others to Us:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us to help us enforce them.

XLP-0001-01-03                                    -11-

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 123 of 177 PageID #: 288

**Exhibit C**

## VI. DEFINITIONS

`.` "First underlying insurance" means the policy or policies of insurance listed in the Declarations under the Schedule of Underlying Insurance and identified as the "First Underlying Insurance", including any self-insured retentions or deductibles that are a part of such policies.

2. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or byproducts produced or released by fungi.

3. "Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:
(1) Use or threat of force or violence;
(2) Commission or threat of a dangerous act; or
(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:
(1) The effect of such activities is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
(2) It appears that the intent of such activities is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

6. "Underlying insurance" means the policy or policies of insurance listed in the Declarations under the Schedule of Underlying Insurance, including any self-insured retentions or deductibles that are a part of such policies.

## VII. EXTENDED REPORTING PERIOD OPTION

1. We will provide an Extended Reporting Period, as described below, if:

a. This policy is cancelled or non-renewed by us; or
b. We renew or replace this policy with insurance that:
(1) Does not apply on a claims-made basis; or
(2) Has a retroactive date later than the date shown in the Declarations applying to this policy.

2. Any Extended Reporting Period included within or endorsed to this policy applies only as respects excess insurance over "underlying insurance" written on a claims-made basis.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 124 of 177 PageID #: 289

Exhibit C

3. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for injury or damage caused by an occurrence which occurs after the retroactive date and before the end of the policy period. For this insurance to apply, claims must be first made within the applicable Extended Reporting Period.

Once in effect, Extended Reporting Periods may not be cancelled, except as a result of non-payment of premium.

4. If also provided in the "underlying insurance", a Basic Extended Reporting Period is automatically provided without an additional premium charge. This period starts with the end of the policy period and lasts for sixty (60) days.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance that you purchase, or that would be covered but for the exhaustion of the amount of insurance applicable to such claims.

5. A Supplemental Extended Reporting Period of up to three (3) years duration is available, but only by endorsement to this policy and for an additional premium charge. This Supplemental Extended Reporting Period starts when the Basic Extended Reporting Period, set forth in Subparagraph VII.3. above, ends.

You must provide us with a written request for the Supplemental Extended Reporting Period within thirty (30) days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. The additional premium for the Supplemental Extended Reporting Period will be due within sixty (60) days after the end of the policy period. If the additional premium for the Supplemental Extended Reporting Period is not paid promptly when due, the Supplemental Extended Reporting Period will be cancelled flat.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

(a) The exposures insured;
(b) Previous types and amounts of insurance;
(c) Limits of insurance available under the policy for future payment of damages; and
(d) Any other factors deemed by us to be related the additional premium charge.

The additional premium for the Supplemental Extended Reporting Period will not exceed 200% of the total annual premium for this policy. The additional premium for the Supplemental Extended Reporting Period will be fully earned when the endorsement takes effect.

This endorsement shall define the terms, not consistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first made during such period is excess over any other valid insurance available under policies in force after the Supplemental Extended Reporting Period takes effect.

6. The Basic Extended Reporting Period and the Supplemental Extended Reporting Period, if any, do not reinstate or increase the limits of insurance of this policy.

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 125 of 177 PageID #: 290

Exhibit C

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply to:

1. Any liability or damage:

a. With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or the Nuclear Insurance Association of Canada, or would be an insured under such policy but for its termination upon exhaustion of it limits of insurance; or
b. Resulting from the "hazardous properties" of "nuclear material" with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had its policy not been issued, would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability or damage resulting from the "hazardous properties" of "nuclear material", if:

a. The "nuclear material": (1) is at any "nuclear facility" owned by, or operated by or on behalf of, any insured, or (2) has been discharged or dispersed there from;
b. The "nuclear material" is contained in "spent fuel" or "waste" at any time processed, handled, used, processed, stored, transported, or disposed of by or on behalf of an insured; or
c. The injury, sickness, disease, death, destruction or loss arising out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Subparagraph c. applies only to injury to or destruction of or loss of property at such "nuclear facility".

As used in this exclusion:

1. "Hazardous properties" includes radioactive, toxic or explosive properties;

2. "Nuclear facility" means:
a. any "nuclear reactor";
b. any equipment or device designed or used for: (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing, or packaging "waste".
c. any equipment or device used for processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

d. any structure, basin, excavation, premises, place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material". "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 126 of 177 PageID #: 291

**Exhibit C**

4. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission self-supporting chain reaction or to contain critical mass of fissionable material;

5. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

6. "Waste" means any waste material: (1) containing by-product material, and (2) resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility".

With respect to injury to or destruction of or loss of property, the word "injury" or "destruction" or "loss" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 127 of 177 PageID #: 292

**Exhibit C**

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto, and has caused this policy to be signed on the Declarations Page by an authorized representative of the Company.

**Axis Surplus Insurance Company**

Carlton W. Maner
President

Richard T. Gieryn, Jr.
Secretary

Exhibit C



## CLAIM NOTICE

Please notify:

## AXIS U.S. INSURANCE

During business hours of 8:30 am est. to 4:30 pm est.

11680 Great Oaks Way
Suite 500
Alpharetta, GA 30022
PH      (678) 746-9400
FAX  (678) 746 9315

CLM-0001-09-02

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 129 of 177 PageID #: 294

Exhibit C

## STATE FRAUD STATEMENTS

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

Applicable in Arkansas

### Arkansas Fraud Statement

"Any person who knowing presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in Colorado

### Colorado Fraud Statement

"It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or awar payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies."

Applicable in District of Columbia

### District of Columbia Fraud Statement

"Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant."

Applicable in Florida

### Florida Fraud Statement

"Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree."

Applicable in Kentucky

### Kentucky Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime."

Applicable in Louisiana and New Mexico

### Louisiana and New Mexico Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties."

LI-FS 001 0706

Page 1 of 2

**Exhibit C**

# STATE FRAUD STATEMENTS

Applicable in Maine

### Maine Fraud Statement
"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits."

Applicable in New Jersey

### New Jersey Fraud Statement
"Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties."

Applicable in New York

### New York Fraud Statement
"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

Applicable in Ohio

### Ohio Fraud Statement
"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."

Applicable in Oklahoma

### Oklahoma Fraud Statement
"Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony."

Applicable in Pennsylvania

### Pennsylvania Fraud Statement
"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

Applicable in Tennessee, Virginia and Washington

### Tennessee, Virginia and Washington Fraud Statement
"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

LI-FS 001 0706

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 131 of 177 PageID #: 296

# DECLARATIONS
# EXCESS LIABILITY POLICY

**COLONY NATIONAL INSURANCE COMPANY**
8720 STONY POINT PARKWAY
SUITE 300
RICHMOND, VA 23235

*Underwritten By Argonaut Specialty*

POLICY NUMBER
AR5460018B
RENEWAL OF:
AR5460018A

| ITEM 1. NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| UHS CHILDREN SERVICES, INC.<br>3401 WEST END AVE. SUITE 400<br>NASHVILLE, TN 37203 | PARTNERS SPECIALTY GROUP, LLC (MO) A2401<br>444 W. 47TH ST., STE. 300<br>KANSAS CITY, MO 64112 |

**ITEM 2. POLICY PERIOD**    From: 04/30/2007    To: 04/30/2008
12:01 A.M. Standard Time at your mailing address

**ITEM 3.**    LIMIT OF INSURANCE:

A.    Each Occurrence Limit.................................................................... $10,000,000.00

B.    Aggregate Limit............................................................................. $10,000,000.00

**ITEM 4.**    SCHEDULE OF UNDERLYING INSURANCE:

See Schedule A – Schedule of Underlying Insurance

**ITEM 5.**    PREMIUM COMPUTATION:

$ Premium............................................................................................. $315,000.00

$ Subject to Adjustment:

Estimated Deposit Premium ................................................................... $_____

Estimated Exposure Base: _____

Rate: _____    Per: _____

Policy Minimum Premium ....................................................................... $78,750.00

Audit Period:

Premium charge for coverage of certified acts of terrorism:........................ $_____
(Per Policyholder Disclosure TRIA2002Notice-1202 attached.)
**OR**
Coverage for certified acts of terrorism has been rejected; exclusion attached.    [x]
(Per Policyholder Disclosure TRIA2002Notice-1202 attached.)

**TOTAL POLICY PREMIUM:**    $315,000.00

**ITEM 6.**    ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION:

See Form U001 – Schedule of Forms and Endorsements

Countersigned:    07/13/2007    By:    _Kim P Books_
                          **Date**                          **Authorized Representative**

THIS EXCESS LIABILITY DECLARATIONS WITH THE COVERAGE FORM AND ENDORSEMENTS, IF ANY, COMPLETE THE
ABOVE NUMBERED POLICY.

XP0002D AS (06/05)

"This insurance contract is with an insurer not
licensed to transact insurance in this state and
is issued and delivered as a surplus line
coverage pursuant to the Tennessee insurance
statutes."
Daniel Patrick McDonnell, 301 East Germantown
Pike, Suite 402, Norristown, PA 19401

$7,875 TN S/L Tax

132

# DECLARATIONS
## EXCESS LIABILITY POLICY

**COLONY NATIONAL INSURANCE COMPANY**
**8720 STONY POINT PARKWAY**
**SUITE 300**
**RICHMOND, VA 23235**

*Underwritten By Argonaut Specialty*

POLICY NUMBER
AR5460018B
RENEWAL OF:
AR5460018A

| ITEM 1. NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| UHS CHILDREN SERVICES, INC.<br>3401 WEST END AVE. SUITE 400<br>NASHVILLE, TN 37203 | PARTNERS SPECIALTY GROUP, LLC (MO) A2401<br>444 W. 47TH ST., STE. 300<br>KANSAS CITY, MO 64112 |

| ITEM 2. POLICY PERIOD | From: 04/30/2007 | To: 04/30/2008 |
|---|---|---|

12:01 A.M. Standard Time at your mailing address

**ITEM 3.** LIMIT OF INSURANCE:
    A.    Each Occurrence Limit.................................................................... $10,000,000.00
    B.    Aggregate Limit............................................................................ $10,000,000.00

**ITEM 4.** SCHEDULE OF UNDERLYING INSURANCE:
    See Schedule A – Schedule of Underlying Insurance

**ITEM 5.** PREMIUM COMPUTATION:
    ☞    Premium.......................................................................................... $315,000.00
    ☞    Subject to Adjustment:
        Estimated Deposit Premium ........................................................ $_____
        Estimated Exposure Base: _____
        Rate: _____ Per: _____
        Policy Minimum Premium ............................................................ $78,750.00
        Audit Period:
        Premium charge for coverage of certified acts of terrorism:........................... $_____
        (Per Policyholder Disclosure TRIA2002Notice-1202 attached.)
        **OR**
        Coverage for certified acts of terrorism has been rejected; exclusion attached. [x]
        (Per Policyholder Disclosure TRIA2002Notice-1202 attached.)

                                    **TOTAL POLICY PREMIUM:** $315,000.00

**ITEM 6.** ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION:
    See Form U001 – Schedule of Forms and Endorsements

Countersigned: _____07/13/2007_____ By: _____
                        **Date**                           **Authorized Representative**

THIS EXCESS LIABILITY DECLARATIONS WITH THE COVERAGE FORM AND ENDORSEMENTS, IF ANY, COMPLETE THE
ABOVE NUMBERED POLICY.

XP00O2D AS (06/05)

Partners Specialty Group, LLC
301 E. Germantown Pike, Suite 402
Norristown, PA 19401
Daniel Patrick McDonnell
S.L. License 14447

$7,875.00 (TX) S/L Tax

133

# TEXAS REQUIRED NOTICE

"THIS INSURANCE CONTRACT IS WITH AN INSURER NOT
LICENSED TO TRANSACT INSURANCE IN THIS STATE
AND IS ISSUED AND DELIVERED AS SURPLUS LINE
COVERAGE PURSUANT TO THE TEXAS INSURANCE
STATUTES. THE STATE BOARD OF INSURANCE DOES
NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY
OF THE SURPLUS LINES INSURER PROVIDING THIS
COVERAGE, AND THIS INSURER IS NOT A MEMBER OF
THE PROPERTY AND CASUALTY INSURANCE GUARANTY
ASSOCIATION CREATED UNDER ARTICLE 21.28-C,
INSURANCE CODE. ARTICLE 1.14-2, INSURANCE CODE
REQUIRES PAYMENT OF 4.85% TAX ON GROSS
PREMIUM."

# IMPORTANT NOTICE

To obtain information or make a complaint:

\* You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

1-800-252-3439

\* You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, Texas 78714-9104
FAX # (512) 475-1771

\* PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

\* ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

TEX-001(06/97)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 136 of 177 PageID #: 301

# SCHEDULE A – SCHEDULE OF UNDERLYING INSURANCE

This Schedule forms a part of your Excess Policy No. ___AR5460018B___
Coverage only applies in excess of those policies and limits scheduled below:

**A.** ☒ Automobile Liability — Insurance Company: Ace American Insurance Company — ☒ Primary ☐ Excess
☐ Garage Liability — Insurance Company:
Policy Number: ISA H08225230
Effective from: 01/01/2007 to 01/01/2008
Combined Bodily Injury & Property Damage Single Limit: $ 2,000,000 CSL — Each Accident

**B.** Commercial General Liability — Insurance Company: General Star Indemnity Company — ☒ Primary ☐ Excess
Effective from: 04/30/2007 to 04/30/2008
Policy Number: IJA964075B
$5,000,000 General Aggregate Limit (Other than Prod/Completed Ops)
$3,000,000 Prod/Completed Ops Aggregate Limit
$1,000,000 Personal and Advertising Injury Limit
$1,000,000 Each Occurrence Limit
$ Other:
Coverage Trigger: ☒ Occurrence ☐ Claims Made — Retro Date (if any):
Defense Costs: ☐ Within Limits ☒ Outside Limits

**C.** Employers' Liability — Insurance Company: Ace American Insurance Company — ☒ Primary ☐ Excess
Effective from: 01/01/2007 to 01/01/2008
Policy Number: WLR C4 44 56 75 8
Bodily Injury by Accident $ 2,000,000 Each Accident
Bodily Injury by Disease $ 2,000,000 Policy Limit
Bodily Injury by Disease $ 2,000,000 Each Employee

**D.** Professional Liability — Insurance Company: General Star Indemnity Company — ☒ Primary ☐ Excess
Effective from 04/30/2007 to 04/30/2008
Policy Number: IJA964075B
$ 1,000,000 Each Claim
$ 5,000,000 Aggregate Limit
Coverage Trigger: ☐ Occurrence ☒ Claims Made — Retro Date (if any): 04/30/2003
Defense Costs: ☐ Within Limits ☒ Outside Limits

**E.** Other: Excess Liability — Insurance Company: Axis Surplus Insurance Company — ☐ Primary ☒ Excess
Effective from 04/30/2007 to 04/30/2008
Policy Number: EAU720446/01/2007
$ 5,000,000 Each Occurrence
$ 5,000,000 Aggregate Limit
Coverage Trigger: ☒ Occurrence ☐ Claims Made — Retro Date (if any):
Defense Costs: ☐ Within Limits ☒ Outside Limits

**F.** Other: Sexual Misconduct Coverage — Insurance Company: General Star Indemnity Company — ☒ Primary ☐ Excess
Effective from 04/30/2007 to 04/30/2008
Policy Number: IJA964075B
$ 1,000,000 Each Occurrence
$ 5,000,000 Aggregate Limit
Coverage Trigger: ☒ Occurrence ☐ Claims Made — Retro Date (if any):
Defense Costs: ☐ Within Limits ☒ Outside Limits

Schedule A-0301 — Page 1

## SCHEDULE A – SCHEDULE OF UNDERLYING INSURANCE

| | |
|---|---|
| G.  Other:  Employee Benefits Liability | Insurance Company:   General Star Indemnity Company      ☒ Primary   ☐ Excess |

Effective from   04/30/2007   to   04/30/2008
Policy Number:   IJA964075B

$ 1,000,000     Each Claim
$ 1,000,000     Aggregate Limit

Coverage Trigger :    ☐ Occurrence      ☒ Claims Made      Retro Date (if any) :  04/30/2003
Defense Costs:        ☐ Within Limits    ☒ Outside Limits

This Schedule forms a part of your Excess Policy No.   AR5460018B

## Addendum to Schedule

U001 (10/04)

Insured: UHS CHILDREN SERVICES, INC.
Policy Number: AR5460018B

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - | EXCESS LIABILITY POLICY DECLARATIONS |
| | |
| IL0017-1198 | COMMON POLICY CONDITIONS |
| SCHEDULE A-0301 | SCHEDULE A-SCHEDULE OF UNDERLYING INSURANCE |
| U002-0904 | MINIMUM POLICY PREMIUM |
| U094-0702 | SERVICE OF SUIT |
| U173-0702 | CANCELLATION |
| XP0002-1106 | EXCESS LIABILITY POLICY |
| XP02-0902 | CONTRACTUAL LIABILITY LIMITATION |
| XP03-0902 | CARE, CUSTODY OR CONTROL EXCLUSION |
| XP07-0107 | HAZARDOUS MATERIALS EXCLUSION |
| XP08-0902 | EMPLOYMENT RELATED PRACTICES EXCLUSION |
| XP10-0902 | CLAIMS MADE AND REPORTED ENDORSEMENT |
| XP10-0902 | CLAIMS MADE AND REPORTED ENDORSEMENT |
| XP103-0605 | CROSS SUITS EXCLUSION |
| XP125-0806 | EXCLUSION-VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MA |
| XP200-0904 | WAR EXCLUSION |
| XP2123-0902 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| XP2127-0902 | FUNGI OR BACTERIA EXCLUSION |
| XP2128B-0904 | CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION |
| XP40-0902 | E.R.I.S.A. EXCLUSION |
| XP57-0107 | AMENDMENT OF INS AGREEMENT - KNOWN INJURY OR DAMAGE |
| ZPJCG-0605 | POLICY JACKET |

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 139 of 177 PageID #: 304

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702

Page 1 of 1

# EXCESS LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meanings. Refer to **Section IV-Definitions.**

The word insured means any person or organization qualifying as such under the "underlying insurance" and this policy.

## Section I – Coverage

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of "underlying insurance", shown in the Declarations to which this insurance applies. The terms and conditions of insurance of this policy are the same as those of the "underlying insurance" in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto. This policy provides excess liability insurance over "underlying insurance" in full force and effect during the "policy period" of this policy. However:

(1) The amount we will pay for damages is limited as described in **Section II – Limits of Insurance.**

(2) We shall have the right and duty to defend claims against the insured when the applicable Limit of Insurance of the "underlying insurance" is exhausted. This right and duty end when we have used up the applicable Limit of Insurance of this policy. We have no duty to defend the insured against any claim to which this insurance or that of the "underlying insurance" does not apply. We do, however, have the right to participate in the investigation, settlement or defense of a claim covered by "underlying insurance" which we believe may result in liability on our part.

b. Only payment of those damages covered by "underlying insurance" during the term of this policy shall be considered in determining the extent of any exhaustion of the Limits of Liability of any "underlying insurance".

### 2. Exclusions

This insurance does not apply to:

a. Any claim for damages covered by "underlying insurance" during any period of time prior to or subsequent to the "policy period" of this policy.

b. Any claim for damages based on or directly or indirectly arising out of any matter, fact, circumstance, situation, transaction or event when notice thereof has been given to any insurer prior to the effective date of this policy.

c. Any claim for damages covered under a renewed or replacement policy of "underlying insurance" that would not have been covered by the "underlying insurance" that was in force at the inception of this policy, unless coverage therefore has been provided by endorsement to this policy.

d. Any claim for damages or obligation imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, financial responsibility or any similar laws.

e. Any claim for damages that is covered under a sublimit of any "underlying insurance" or would have been covered but for the exhaustion of the sub-limit of liability of the "underlying insurance".

XP0002-1106

**Section II – Limits of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below determine the most we will pay regardless of the number of:

   a. insureds;

   b. claims made or suits brought; or

   c. persons or organizations making claims or bringing suits.

2. The Aggregate Limit is the most we will pay:

   a. For all damages for each type of coverage which is subject to an aggregate in the "underlying insurance";

   b. Subject to 2. a. above, for each occurrence or offense with regard to all damages for all coverages to which this policy applies; and

   c. For any payments or expenses to which this insurance applies.

3. Subject to 2. above, the Each Occurrence Limit is the most we will pay for all covered damages under this policy arising from each occurrence.

4. Subject to 2. above:

   a. If reduction of Limits of Insurance of any "underlying insurance" results, this policy shall continue to apply to losses as excess insurance over the amount of Limits of Insurance of the "underlying insurance" remaining;

   b. Any exhaustion of any sub-limit of liability of any "underlying insurance" shall not be deemed to exhaust the "underlying insurance";

   c. Any exhaustion of any limit of liability of any "underlying insurance" for any coverage, term or condition excluded by this policy shall not be deemed to exhaust the "underlying insurance".

   d. If we have paid a Aggregate Limit within 2. a. above prior to this policy's termination date, that portion of this policy's premium attributable to such coverage is fully earned.

5. When the policy period of the "underlying insurance" begins prior to or extends beyond the "policy period" of this policy, payment of losses covered by the "underlying insurance" before or after the "policy period" of this policy shall not be deemed to reduce or exhaust the Limits of Insurance of the "underlying insurance."

6. The Underlying Aggregate Limits where applicable shall be unimpaired at the attachment date of this coverage and for the purpose of this insurance only occurrences to which this insurance applies taking place during the term of this coverage shall be considered in determining the extent of any exhaustion of the underlying aggregate limits.

7. Two or more claims arising out of the same, related or continuous offense, wrongful act, occurrence, act, error or omission shall be considered a single claim.

8. If two or more Excess Policies of insurance issued by us apply to the same claim or claims for which any insured is legally liable only one Limit of Insurance shall apply. The limit shall be the highest of the Each Claim Limits of the policies that cover the claim or claims.

The Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Item 3 of the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit Of Insurance.

XP0002-1106

Section III – Conditions

1. Appeals

    In the event the underlying insurer(s) elect not to appeal a judgment in excess of the limit of the "underlying insurance", we may elect to make such an appeal. If we so elect, we shall be liable, in addition to the applicable Limits of Insurance, for all defense costs we incur.

2. Maintenance of "underlying insurance"

    a. You agree to maintain the "underlying insurance" in full force and effect during the term of this policy.

    b. For purposes of this policy, if any "underlying insurance" is not available or collectible because of:

        (1) the bankruptcy or insolvency of the underlying insurer providing such "underlying insurance",

        (2) the inability or failure for any other reason of such underlying insurer to comply with any of the obligations of its policy, or

        (3) the rescission, wholly or in part, of policies shown in the schedule of "underlying insurance"

        then the insured shall be deemed to be self-insured and how this policy shall apply and amounts payable hereunder shall be determined as if such "underlying insurance" is available and collectible.

    c. Policies replaced renewed or reissued shall not provide coverage that is broader or Limits of Insurance that are less than that provided in the policies listed in the Schedule of Underlying Insurance.

    d. To the extent that the "underlying insurance" is rescinded wholly or in part this policy shall be deemed rescinded.

3. Other Insurance

    This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

4. Consent

    a. No insured shall admit liability, consent to any judgment or agree to any settlement, which is reasonably likely to result in liability on our part without our consent. Such consent will not be unreasonably withheld.

5. Subrogation-Recoveries

    a. As this policy provides only "excess coverage", your and our right of recovery against any person or other entity may not be exclusively subrogated. Despite the foregoing, in the event of any payment under this policy, we shall be subrogated to all your rights of recovery against any person or organization, and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

    b. Any amounts recovered after payment of loss under this policy shall be apportioned so that any interests (including those paid by you) that have paid in an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by you. We shall then be reimbursed out of any balance then remaining up to the amount paid under this policy. The interests of which this coverage is in excess shall then be reimbursed for the amount of residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled.

XP0002-1106

6. **Representations**

By accepting this policy, you agree that:

a. The information shown on the Declarations Page is accurate and complete;

b. The information is based upon representations you made to us. This includes representations in any application submitted to us for this insurance;

c. We have issued this policy in reliance upon your representations; and

Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if you intentionally conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

7. **Notice To Agent Not Notice To Company**

Notice to any agent or knowledge possessed by any agent or other person acting on our behalf of us shall not effect a waiver or a change in any part of this policy or stop us from asserting any right under the provision of this policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this policy.

8. **No Action Against Us**

a. No action shall be taken against us unless, as a condition precedent, there shall have been full compliance with all the provisions of this policy, nor until the amount of our obligation to pay shall have been finally determined either by final and nonappealable judgment against the Insureds after trial, or by written agreement between you, the claimant and us.

b. No person or organization shall have the right under this policy to join us as a party to any claim against the Insureds to determine the Insureds' liability, nor shall we be impleaded by the Insureds or their legal representatives in any such claim.

9. **Assignment of Interest**

Assignment of interest under this policy shall not bind us unless its consent is endorsed.

**Section IV – Definitions**

1. "Policy period" means the period shown in the Declarations, unless earlier cancelled pursuant to **Section III. 4.** of this policy.

2. "Underlying Insurance" means the primary and excess policies that are listed in the Schedule of Underlying Insurance.

XP0002-1106

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

# EMPLOYMENT RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from:

(1) any actual or alleged:

(a) Refusal to employ any person;

(b) Termination of any person's employment; or

(2) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or

(3) The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs 1 **(a)** or 1 **(b)** or **(2)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; or

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP08-0902

Page 1 of 1

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 145 of 177 PageID #: 310

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

I.    The insurance does not apply:

    A.    Under any Liability Coverage, to injury or "property damage":

        (1)    With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)    Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.    Under any Liability Coverage, to injury or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1)    The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

        (2)    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        (3)    The injury or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

II.    As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed

XP2123-0902

primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)    Any "nuclear reactor";

(b)    Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c)    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

XP2123-0902

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 147 of 177 PageID #: 312

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim based on or directly or indirectly arising out of or resulting from:

    **(1)** injury or damages which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; or

    **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

B. **Section IV – Definitions** is amended and the following added:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP2127-0902

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# E.R.I.S.A. EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance does not apply to any claim for damages based on or directly or indirectly arising out of or resulting from an actual or alleged violation or obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), any amendments thereto and any regulations or orders promulgated pursuant thereto or any similar federal, state or local statute.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP40-0902

Page 1 of 1

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 149 of 177 PageID #: 314

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANCELLATION

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

Paragraph **A. 2. Cancellation** of the COMMON POLICY CONDITIONS is deleted and replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

      **(1)** nonpayment of premium or failure to pay a premium when due; or

      **(2)** conviction of an insured of a crime arising out of acts increasing the hazard insured against;

      **(3)** violation of any local fire, health, safety, building or construction regulation or ordinance which increases the hazard insured against under the policy;

      **(4)** any willful or reckless act or omission by an insured increasing the hazard insured against;

      **(5)** omission or concealment of fact relating to an insurance application, rating, claim or coverage under this policy;

      **(6)** failure or refusal of an insured to:

         (a) provide information necessary to confirm exposure or determine the policy premium; or

         (b) comply with underwriting requirements;

      **(7)** a substantial change in the risk covered by the policy;

      **(8)** loss of reinsurance or substantial decrease in reinsurance;

      **(9)** the cancellation is for all insureds under such policies for a given class of insureds; or

      **(10)** any reason determined by the insurance commissioner.

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U173-0702          Contains material copyright, Insurance Services Office, Inc.,          Page 1 of 1
1997 with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added :

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from any obligation of the insured to pay damages by reason of the assumption of liability in a written or oral contract or agreement.

This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract", provided the injury or damage occurs after the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages, provided:

        (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

B. **Section IV- Definitions** is amended and the following added :

"Insured Contract" means:

    a. A contract for a lease of premises, however, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP02-0902

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CARE, CUSTODY OR CONTROL EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for damages based on or directly or indirectly arising out of or resulting from damage including loss of use to:

    (1) Property rented or occupied by any insured;

    (2) Property loaned to any insured; or

    (3) Personal property in the care, custody or control of any insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP03-0902

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CLAIMS MADE AND REPORTED ENDORSEMENT

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance shall follow the insuring agreement, exclusions, definitions, conditions and any limitations of the "underlying insurance" listed in the Schedule of Underlying Insurance as <u>Professional Liability</u> provided always that:

1. This insurance applies only if a claim is first made and reported in writing during the "policy period" of this policy;

2. This insurance does not apply to any damage caused by any offense, wrongful act, occurrence, act, error or omission which occurred prior to <u>04/30/2003</u>, hereinafter referred to as the Retroactive Date;

3. No coverage exists for claims first made against the insured and reported to us after the end of the "policy period", unless a Supplemental Extended Reporting Period Endorsement is added to this policy and an additional premium is paid when due.

4. For the purposes of this endorsement, a claim first made and reported during the Supplemental Extended Reporting Period shall be deemed to have been made and reported to us on the last day of the "policy period" provided that the claim is covered by the < type > policy listed in the Schedule as "underlying insurance" before the end of the "policy period" but not prior to the Retroactive Date shown in **2.** above;

5. The length of the Supplemental Extended Reporting Period will be for a period of up to three (3) years or the time period provided by the <u>Professional Liability</u> policy listed in the Schedule as "underlying insurance", whichever is less, provided we issue a Supplemental Extended Reporting Period Endorsement to this Policy. We will issue the Supplemental Extended Reporting Period Endorsement if the first Named Insured:

   a. Purchases Supplemental Extended Reporting Period coverage afforded in the <u>Professional Liability</u> policy listed in the Schedule as "underlying insurance"; and

   b. Makes a written request for it and pays us the additional premium within 30 days after the end of the "policy period".

6. The Supplemental Extended Reporting Period Endorsement does not reinstate or increase the Company's Limit of Liability or extend the "policy period".

7. The coverage provided by the Supplemental Extended Reporting Period Endorsement shall be excess over any valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy begins or continues after the endorsement takes effect.

Once in effect, the Supplemental Extended Reporting Period may not be cancelled.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP10-0902

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsements, plus
3. Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".
2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim based on or directly or indirectly arising out of or resulting from:

(1) Injury or damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time;

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials";

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials";

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)** above;

whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **Section IV – Definitions** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP07-0107

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CROSS SUITS EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

Section I – Coverage, 2. Exclusions is amended and the following is added:

### CROSS SUITS EXCLUSION

This insurance does not apply to any "claim" for injury or damage brought against you by any organization, partnership, joint venture or limited liability company:

1. You newly acquire or form, or
2. Over which you maintain ownership or majority interest, or
3. That qualifies as a Named Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP103-0605

Page 1 of 1

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 156 of 177 PageID #: 321

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for damages arising directly or indirectly out of or resulting from any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP125-0806     Includes copyrighted material of ISO Properties, Inc., 2001 with its permission.     Page 1 of 1

157

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 157 of 177 PageID #: 322

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from:

War, including:

(a) undeclared or civil war

(b) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP200–0904        Contains material © ISO Properties, Inc., 2002 with its permission.        Page 1 of 1

THIS ENDORSEMEN1 CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

A. **Section I – Coverage, 2. Exclusions** is amended and the following added:

This insurance does not apply to any claim for injury or damages based on or directly or indirectly arising out of or resulting from:

  (1) Any injury or damage arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism" including any action taken in hindering or defending against an actual or expected incident of a "certified act of terrorism" or an "other acts of terrorism"; or

  (2) Any act of terrorism:

    (a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

    (b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    (c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in **(1)** or **(2)** above; including

    (3) Damages arising, directly or indirectly, out of **(1)** or **(2)** above that are awarded as punitive damages.

B. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Policy.

C. **Section IV – Definitions** is amended and the following added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

  a. The act resulted in aggregate losses in excess of $5 million; and

  b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP2128B-0904      Contains material © ISO Properties, Inc., 2002      Page 1 of 1
with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

Section I – Coverage, 1. Insuring Agreement is amended and the following added:

1. **Insuring Agreement**

   a. This insurance applies to bodily injury and property damage only if:

      (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory;

      (2) The bodily injury or property damage occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under – Who Is An Insured in any "underlying insurance" and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury or property damage had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the bodily injury or property damage occurred, then any continuation, change or resumption of such bodily injury or property damage during or after the policy period will be deemed to have been known prior to the policy period.

   b. Bodily injury or property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under – Who Is An Insured in any "underlying insurance" or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury or property damage after the end of the policy period.

   c. Bodily injury or property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under – Who Is An Insured in any "underlying insurance" or any employee authorized by you to give or receive notice of an occurrence or claim:

      (1) Reports all, or any part, of the bodily injury or property damage to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the bodily injury or property damage; or

      (3) Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

   d. Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP57-0107      Includes copyrighted material of Insurance Services Office, Inc., 1998      Page 1 of 1
with its permission.

160

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 160 of 177   PageID #: 325

 **Colony.**
MEMBER ARGONAUT GROUP

*Colony Insurance Company*
*Colony National Insurance Company*
*Colony Specialty Insurance Company*

# PRIVACY NOTICE

Privacy is important to us. We understand that consumers really care about their privacy and want it to be protected. We are committed to safeguarding nonpublic personal information we collect about our consumers.

We treat personal information carefully and take steps to assure that it remains private. We allow only authorized employees to have access to personal information. We maintain physical, electronic and procedural security protections to safeguard the information in our records.

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use personal information from consumers on applications or other forms; from our transactions with consumers, such as payment and claims history; and from third parties, such as credit reports, driving and medical records, and claims history.

Except as required or permitted by law, we do not share personal information outside our company without obtaining the consumer's permission.

Keeping consumer information accurate and up to date is important to us. Consumers may see and request correction of personal information about them in our files, or contact us with questions about our privacy policy by writing to Privacy Coordinator, Colony Group, PO Box 85122, Richmond, Virginia 23285.

*P. O. Box 85122 • Richmond, VA • 23285-5122*
*(804) 560-2000 • (800) 577-6614 • www.colonyins.com*

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 161 of 177 PageID #: 326

# POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does <u>not</u> provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. <u>Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.</u>

☐ **Coverage election.**
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of  $_____ . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

**OR**

☒ **Coverage rejection.**
I hereby elect **not** to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | COLONY NATIONAL INSURANCE COMPANY |
| Policyholder/Applicant's Signature- Must be person authorized to sign for all insureds. | Insurance Company |
| On File | AR5460018B |
| Print Name | Policy Number |
| UHS CHILDREN SERVICES, INC. | On File |
| | Submission Number |
| Named Insured | A2401 |
| | Producer Number |
| On File | PARTNERS SPECIALTY GROUP, LLC (MO) |
| Date | Producer Name |
| | 444 W. 47TH ST., STE. 300 |
| | Street Address |
| | KANSAS CITY, MO 64112 |
| | City, State, Zip |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.**



TRIA2002Notice-1202

Page 1 of 1

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 162 of 177 PageID #: 327



8720 Stony Point Parkway
Suite 300
Richmond, VA 23235

**IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.**

**Dale Pilkington, President**                    **Matt Pollak, Secretary**

Colony Insurance Company  ♦  Colony Specialty Insurance Company  ♦  Colony National Insurance Company

ZPJCG (06/05)

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 163 of 177 PageID #: 328

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CLAIMS MADE AND REPORTED ENDORSEMENT

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance shall follow the insuring agreement, exclusions, definitions, conditions and any limitations of the "underlying insurance" listed in the Schedule of Underlying Insurance as _Employee Benefits Liability_ provided always that:

1. This insurance applies only if a claim is first made and reported in writing during the "policy period" of this policy;

2. This insurance does not apply to any damage caused by any offense, wrongful act, occurrence, act, error or omission which occurred prior to _04/30/2003_, hereinafter referred to as the Retroactive Date;

3. No coverage exists for claims first made against the insured and reported to us after the end of the "policy period", unless a Supplemental Extended Reporting Period Endorsement is added to this policy and an additional premium is paid when due.

4. For the purposes of this endorsement, a claim first made and reported during the Supplemental Extended Reporting Period shall be deemed to have been made and reported to us on the last day of the "policy period" provided that claim is covered by the < type > policy listed in the Schedule as "underlying insurance" before the end of the "policy period" but not prior to the Retroactive Date shown in **2.** above;

5. The length of the Supplemental Extended Reporting Period will be for a period of up to three (3) years or the time period provided by the _Employee Benefits Liability_ policy listed in the Schedule as "underlying insurance", whichever is less, provided we issue a Supplemental Extended Reporting Period Endorsement to this Policy. We will issue the Supplemental Extended Reporting Period Endorsement if the first Named Insured:

   a. Purchases Supplemental Extended Reporting Period coverage afforded in the _Employee Benefits Liability_ policy listed in the Schedule as "underlying insurance"; and

   b. Makes a written request for it and pays us the additional premium within 30 days after the end of the "policy period".

6. The Supplemental Extended Reporting Period Endorsement does not reinstate or increase the Company's Limit of Liability or extend the "policy period".

7. The coverage provided by the Supplemental Extended Reporting Period Endorsement shall be excess over any valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy begins or continues after the endorsement takes effect.

Once in effect, the Supplemental Extended Reporting Period may not be cancelled.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

XP10-0902

Page 1 of 1

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 164 of 177 PageID #: 329



**PARTNERS SPECIALTY**

GROUP, LLC.

## *Q U O T E # 18251 A*

**TO:** Lockton Insurance Agency of Houston, Inc.
**ATTN:** Tony Garcia

**FAX #:** (713) 458-5299

**FROM:** Mary Beth Foster
Assistant Vice President
for Mark Patterson

Renewal of: AR546018A

Expires: 4/30/07

We are pleased to offer the following quotation for your review:

**INSURED:** UHS Children Services, Inc.
3401 West End Avenue, Suite 400
Nashville, TN 37203

**POLICY PERIOD:** 4/30/07 to 4/30/08

**INSURER:** **Colony National Insurance Company** **Non-Adm**

**COVERAGE:** Excess Liability--Following Form
Renewal of Policy AR5460018A

**LIMITS:** $10,000,000 Per Occurrence
$10,000,000 General Aggregate

Schedule of Underlying Limits:

Lead Excess:
Carrier: Axis
$5,000,000/$5,000,000

General Liability includes Professional Liability: .
Carrier: General Star
$1,000,000 Each Occurrence
$5,000,000 General Aggregate Limit
$3,000,000 Products/Completed Ops Limit
$1,000,000 Personal & Advertising Injury
$500,000 Self-Insured Retention

General Liability: Occurrence
Carrier: General Star
Coverage Date: 4/30/07 - 4/30/08
SIR: $500,000
Defense Expense: In addition to Limits
$1,000,000 Each Occurrence Limit
$5,000,000 General Aggregate Limit



# PARTNERS SPECIALTY
## GROUP, LLC.

## Q U O T E  #  18251 A

**LIMITS cont..**

Professional Liability: Claims Made
Carrier: General Star
Coverage Date: 4/30/07 - 4/30/08
SIR: $500,000
Retro Date: 4/30/03
Defense Expense: In addition to Limits
$5,000,000 Aggregate
$1,000,000 Each Claim
(Part of the GL Policy Aggregate)

Abuse/Molestation: Occurrence Form
Carrier: General Star
$1,000,000/$5,000,000
(Part of the GL Policy Aggregate

Employee Benefits Liability:
Carrier: General Star
Coverage Date: 04/30/07 - 04/30/08
$1,000,000 Each Claimant
$1,000,000 Aggregate
Claims Made Retrodate: 04/30/03

Auto Liability:
Carrier: ACE
$2,000,000 Combined Single Limit

Employers Liability:
Carrier: ACE
$2,000,000/$2,000,000/$2,000,000

**CONDITIONS:** **Subject To: Coverage cannot be bound until Surplus lines affidavits, as required by the State surplus lines regulations, have been received by PSG.**

TRIA2002Notice-1202 Policyholder Disclosure
XP0002-1106 Excess Liability Policy
XP0002DAS-0605 Declarations-Excess Liability Policy
U001 -1004 Schedule of Forms and Endorsements
Schedule A-0301 Schedule of Underlying Insurance
IL0017-1198 Common Policy Conditions
U002-0904 Minimum Policy Premium
U094-0702 Service of Suit
XP57-0107 Amendment of Ins Agrmnt-Known Inj/Dmg
XP02-0902 Contractual Liability Limitation
U173-0702 Cancellation
XP10-0902 Claims Made Endorsement ( claims made trigger)

444 West 47th St. Suite 300
Kansas City, MO 64112
Phone: (816) 410-3840 Fax: (816) 410-3841

Case 3:09-cv-00545 Document 8 Filed 06/24/09 Page 166 of 177 PageID #: 331

# PARTNERS SPECIALTY
## GROUP, LLC.

*Q U O T E # 18251 A*

Quote cont..

SUBJECT TO:

-Completed Due Diligent Search form due with order to bind - see attached

-Prior to policy issuance, please provide: Company name, policy number & effective dates of Underlying coverage.

-Premium due within 20 days of policy inception.

This is a non-admitted quote.
If coverage applies on a claims made basis, an Optional Extended reporting period may be available if policy is terminated or not renewed, restrictions apply. Maximum of five (5) years. Must be requested within sixty (60) days of termination or expiration.

**EXCLUSIONS:** XP03-0902 Care, Custody and Control Excl
XP08-0902 Employment Related Practices Excl
XP40-0902 ERISA Excl
XP103-0605 Cross Suits Exclusion
XP2123-0902 Nuclear Energy Liab Excl Endt (Broad Form)
XP2127-0902 Fungi and Bacteria Excl
XP200-0904 War Liability Excl
XP07-0107 Hazardous Materials Excl
XP125-0806 Excl-Violation of Statutes that Govern Methods of Sending Mat.or Info.

**PREMIUM:**     $ 315,000.00   Minimum & Deposit; $15,750 A/P for TRIA if elected

| | | |
|---|---|---|
| TN State Tax | 7,875.00 | |
| Total | $ 322,875.00 | |

**COMMISSION:** 12.00%

This quotation is valid for 13 days. 25 % Minimum Earned Premium in the event of cancellation.

**REMARKS:**    Quote valid until 4/30/07

The responsibility for the accuracy of the information set forth in any certificate of insurance is the sole responsibility of the person or entity which issues the certificate.

Although Partners Specialty Group (hereafter "PSG") may retain copies of certificates of insurance forwarded to us, PSG does so strictly without prejudice as to their accuracy. Neither the insurers, their representatives, nor PSG will be responsible for any liability resulting from your issuance of any certificate of insurance.

We also draw your attention to the fact that unless the policy is physically endorsed, the issuance of a certificate does not amend, extend, or alter the coverage afforded by the policy or change the person(s) or entities to whom such coverage is afforded under the policy.

Moreover, neither the underwriters, their representatives, nor PSG will be responsible for any liability resulting from the issuance of any

444 West 47th St. Suite 300
Kansas City, MO 64112
Phone: (816) 410-3840 Fax: (816) 410-3841



PARTNERS SPECIALTY
GROUP, LLC.

### Q U O T E # 18251 A

Page 4 of 4
4/17/07

unauthorized endorsement or the issuance of an endorsement which has been authorized by the insurer but where the authorized wording has been amended or revised in any way, without the prior written approval of the insurers.

PLEASE REFER TO THE POLICY FORM FOR FULL DETAILS ON TERMS AND CONDITIONS. SAMPLE FORMS ARE AVAILABLE ON REQUEST.

IMPORTANT: COVERAGE IS NOT BOUND. This coverage is subject to the terms and conditions of the specified insurance company forms currently in use including any listed amendatory endorsements. Should a change in insurance company be involved, terms and conditions may vary from those currently in force. A copy of the form to be used is available upon request. THE COVERAGE DESCRIBED IN THIS QUOTATION MAY NOT CONFORM TO THE TERMS AND CONDITIONS REQUESTED. In order to bind the coverage a request must be received in writing.

444 West 47th St. Suite 300
Kansas City, MO 64112
Phone: (816) 410-3840  Fax: (816) 410-3841

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 168 of 177 PageID #: 333



# PARTNERS SPECIALTY
### GROUP, INC.

## DEFINITION OF MINIMUM AND DEPOSIT PREMIUM
## AND
## MINIMUM EARNED PREMIUM

### MINIMUM AND DEPOSIT

This is the amount of the premium due at inception. Although the policy is "ratable", that is, subject to adjustment at audit based on a rate per exposure unit, under no circumstances will the annual earned premium be less than the minimum premium.

In other words, the policy may generate an additional premium at audit, but not a return.

If such a policy is cancelled mid-term, the earned premium will be the greater of the annual minimum times the short rate or pro-rata factor, or the actual earned as determined by audit, subject to a short rate penalty if applicable.

### MINIMUM EARNED PREMIUM

A minimum earned premium endorsement can be attached to either a flat charge policy or an adjustable policy. In either case, this amount is the least that will be retained by the carrier once the policy goes into effect. The amount retained will be the greater of the actual earned premium whether calculated on a pro-rata or short rate basis, or the minimum earned premium.

If you have any questions or concerns, do not hesitate to contact us.

## POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does not provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ **Coverage election.**
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of     $15,750     . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

**OR**

☐ **Coverage rejection.**
I hereby elect not to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| | Colony National Insurance Company |
| **Policyholder/Applicant's Signature**<br>Must be person authorized to sign for all insureds. | **Insurance Company** |
| | AR5460018A |
| **Print Name** | **Policy Number** |
| | N/A |
| UHS CHILDREN SERVICES, INC. | **Submission Number** |
| **Named Insured** | A2401 |
| | **Producer Number** |
| **Date** | PARTNERS SPECIALTY GROUP, LLC (MO) |
| | **Producer Name** |
| | 444 W. 47TH ST., STE. 300 |
| | **Street Address** |
| | KANSAS CITY, MO 64112 |
| | **City, State, Zip** |

**The producer shown above is the wholesale insurance broker your local insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.**

TRIA2002Notice-1202                                                                 Page 1 of 1

Tony Garcia
Lockton Insurance Agency of Houston, Inc.
5847 San Felipe, Suite 320
Houston, TX 77057
fax: (713) 458-5299

**In reference to:**
**Insured:** UHS Children Services, Inc.
**Policy No:**

**Carrier:** Colony National Insurance Company

Dear Tony:

The captioned insurance company for the account listed above is a non-admitted carrier in the State of TN. As a condition of binding, we will need information in order to file the surplus lines tax. Please advise that your agency has made applications to three **Admitted Insurers** who have declined this risk. The Insurers must be listed with the full Licensed Company name-- do not list by "Group Name". Please forward the completed form to us prior to binding.

| Company Name | NAIC # | Underwriter Name | City/State Located In | Date Declined |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Licensed Surplus Lines Retail Agent Name: _____

Licensed Surplus Lines Retail Agent Signature: _____

Retail Agent Surplus Lines License Number State of TN (taxed state):

_____

Date Completed: _____

Sincerely,

Tamara Phillips
816-410-3855

171


PARTNERS SPECIALTY
GROUP, LLC.

4/27/07         *BINDER # 18251*         Page 1 of 4

In accordance with your instructions, we have effected insurance as follows:

**Insured:**     UHS Children Services, Inc.
3401 West End Avenue, Suite 400
Nashville, TN 37203

**Producer:** Lockton Companies, LLC (Houston Ser
5847 San Felipe, Suite 320
Houston, TX 77057

**Binder Period:** 04/30/07 to 07/30/07  12:01 Standard Time at above location(s)
**Policy Period:** 04/30/07 to 04/30/08  12:01 Standard Time at above location(s)

**Insurer**     Colony National Insurance Company   Non-Adm

**Policy #**     AR5460018B

**Coverage**     Excess Liability—Following Form
Renewal of Policy AR5460018A

**Limits**     $10,000,000  Per Occurrence
$10,000,000  General Aggregate

Schedule of Underlying Limits:

Lead Excess:
Carrier: Axis
$5,000,000/$5,000,000

General Liability includes Professional Liability:
Carrier: General Star
$1,000,000  Each Occurrence
$5,000,000  General Aggregate Limit
$3,000,000  Products/Completed Ops Limit
$1,000,000  Personal & Advertising Injury
$500,000  Self-Insured Retention

General Liability: Occurrence
Carrier: General Star
Coverage Date: 4/30/07 - 4/30/08
SIR: $500,000
Defense Expense: In addition to Limits
$1,000,000  Each Occurrence Limit
$5,000,000  General Aggregate Limit

Professional Liability: Claims Made
Carrier: General Star
Coverage Date: 4/30/07 - 4/30/08
SIR: $500,000
Retro Date: 4/30/03
Defense Expense: In addition to Limits

"This insurance contract is with an insurer not
licensed to transact insurance in this state and
is issued and delivered as a surplus line
coverage pursuant to the Tennessee insurance
statutes."

Daniel Patrick McDonnell, 301 East Germantown
Pike, Suite 402, Norristown, PA 19401

301 East Germantown Pike, Suite 402
Norristown, PA 19401
Phone: (484) 322-0400  Fax: (484) 322-0401

172



**LIMITS cont.,**

$5,000,000 Aggregate
$1,000,000 Each Claim
(Part of the GL Policy Aggregate)

Abuse/Molestation: Occurrence Form
Carrier: General Star
$1,000,000/$5,000,000
(Part of the GL Policy Aggregate

Employee Benefits Liability:
Carrier: General Star
Coveage Date: 04/30/07 - 04/30/08
$1,000,000 Each Claimant
$1,000,000 Aggregate
Claims Made Retrodate: 04/30/03

Auto Liability:
Carrier: ACE
$2,000,000 Combined Single Limit

Employers Liability:
Carrier: ACE
$2,000,000/$2,000,000/$2,000,000

**Premium**
$ 315,000.00  Minimum & Deposit
TN S/L Tax      7,875.00
Total          $ 322,875.00  25 % Minimum Earned Premium in the event of cancellation.

**Conditions**
TRIA2002Notice-1202 Policyholder Disclosure
XP0002-1106 Excess Liability Policy
XP0002DAS-0605 Declarations-Excess Liability Policy
U001 -1004 Schedule of Forms and Endorsements
Schedule A-0301 Schedule of Underlying Insurance
IL0017-1198 Common Policy Conditions
U002-0904 Minimum Policy Premium
U094-0702 Service of Suit
XP57-0107 Amendment of Ins Agrmnt-Known Inj/Dmg
XP02-0902 Contractual Liability Limitation
U173-0702 Cancellation
XP10-0902 Claims Made Endorsement ( claims made trigger)

TRIA COVERAGE REJECTED

301 East Germantown Pike, Suite 402
Norristown, PA 19401
Phone: (484) 322-0400  Fax: (484) 322-0401

Case 3:09-cv-00545  Document 8  Filed 06/24/09  Page 173 of 177 PageID #: 338



PARTNERS SPECIALTY
GROUP, LLC.

4/27/07                          *B I N D E R #  18251*

Page 3 of 4

**Confirmation of Coverage cont..**
        SUBJECT TO:

-The underlying policies from the schedule of underlying limits are due within 90 days of inception.*

-Premium due within 20 days of policy inception.

This is a non-admitted Binder.
If coverage applies on a claims made basis, an Optional Extended reporting period may be available if policy is terminated or not renewed, restrictions apply. Maximum of five (5) years. Must be requested within sixty (60) days of termination or expiration.

*At 90 days from inception, without further notice, we will forward a Notice of Cancellation for all outstanding underlying policies not received by Argonaut Specialty Insurance Services.

**Exclusions**      XP03-0902 Care, Custody and Control Excl
                    XP08-0902 Employment Related Practices Excl
                    XP40-0902 ERISA Excl
                    XP103-0605 Cross Suits Exclusion
                    XP2123-0902 Nuclear Energy Liab Excl Endt (Broad Form)
                    XP2127-0902 Fungi and Bacteria Excl
                    XP200-0904 War Liability Excl
                    XP07-0107 Hazardous Materials Excl
                    XP125-0806 Excl-Violation of Statutes that Govern Methods of Sending Mat.or Info.

                    Terrorism Endorsement:
                    XP2128B-0904 Cert. Acts of Terr.& Other Acts of Terr.Excl.

Date of issuance: April 27, 2007

PARTNERS SPECIALTY GROUP, LLC
Signature:
Mark Patterson

301 East Germantown Pike, Suite 402
Norristown, PA 19401
Phone: (484) 322-0400  Fax: (484) 322-0401

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 174 of 177 PageID #: 339



PARTNERS SPECIALTY
GROUP, LLC.

Forms applicable are subject in all respects to the terms, conditions and limitations of the policy(ies) or certificate(s) in current use by the company, unless otherwise specified.

**CONDITIONS:** The policy premium stated on the front page of this binder is due and payable to **Partners Specialty Group, LLC (hereafter "PSG")** within (20) days of the effective date of the binder. Failure of the insured to make timely payment of premium shall be considered a request by the insured for the company to cancel. In the event of such cancellation by the company for non-payment of premium, the minimum premium shall be immediately due and payable. Non-payment cancellation shall be rescinded at the discretion of the company if the insured remits the full premium due within (10) days of receiving the cancellation notice upon company verification that the subject of this insurance is in proper insurable condition.

This binder is based upon written correspondence and/or telephone advices from the insurer(s) stated on this binder and is issued by **PSG** without liability whatsoever as an insurer. This binder will be terminated and superseded upon delivery of formal policy(ies) or certificates issued to replace it.

**CANCELLATION:** This binder may be cancelled by the insured by surrender thereof to PSG or any of its authorized agents, or by mailing to **PSG** written notice stating when thereafter the cancellation shall be effective. The insurance under this binder cannot be cancelled flat; earned premium must be paid for the time insurance has been in force. This binder may be cancelled by the insurer(s) or by **PSG** on behalf of the insurer(s) by mailing to the insured at the address stated on this binder, written notice stating when, not less than **FIVE (5)** days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. Delivery of such written notice either by the insured, the insurer(s), or by **PSG** shall be equivalent to mailing. In the event of cancellation by the insured, the earned premium will be computed short rate, the minimum premium shall be due and payable by the insured regardless of any conditions of the binder to the contrary, and if cancelled by the insurer, the earned premium will be computed pro rata.

**CERTIFICATES OF INSURANCE:** The responsibility for the accuracy of the information set forth in any certificate of insurance is the sole responsibility of the person or entity which issues the certificate.
Although **PSG** may retain copies of certificates of insurance forwarded to us, **PSG** does so strictly without prejudice as to their accuracy. Neither the insurers, their representatives, nor **PSG** will be responsible for any liability resulting from your issuance of any certificate of insurance.
We also draw your attention to the fact that unless the policy is physically endorsed, the issuance of a certificate does not amend, extend, or alter the coverage afforded by the policy or change the person(s) or entities to whom such coverage is afforded under the policy.
Moreover, neither the underwriters, their representatives, nor **PSG** will be responsible for any liability resulting from the issuance of any unauthorized endorsement or the issuance of an endorsement which has been authorized by the insurer but where the authorized wording has been amended or revised in any way, without the prior written approval of the insurers.

PLEASE REFER TO THE POLICY FORM FOR FULL DETAILS ON TERMS AND CONDITIONS. SAMPLE FORMS ARE AVAILABLE ON REQUEST.

**THIS BINDER MAY NOT CONFORM TO THE TERMS AND CONDITIONS REQUESTED.**

301 East Germantown Pike, Suite 402
Norristown, PA 19401
Phone: (484) 322-0400  Fax: (484) 322-0401

Case 3:09-cv-00545   Document 8   Filed 06/24/09   Page 175 of 177 PageID #: 340

## POLICYHOLDER DISCLOSURE
### NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase Insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does <u>not</u> provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. <u>Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.</u>

☐ **Coverage election.**
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of ___$15,750___ . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

**OR**

☑ **Coverage rejection.**
I hereby elect not to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | Colony National Insurance Company |
| Policyholder/Applicant's Signature | Insurance Company |
| Must be person authorized to sign for all insureds. | |
| On File | AR5460018B |
| Print Name | Policy Number |
| | N/A |
| | Submission Number |
| UHS CHILDREN SERVICES, INC. | A2401 |
| Named Insured | Producer Number |
| On File | PARTNERS SPECIALTY GROUP, LLC (MO) |
| Date | Producer Name |
| | 444 W. 47TH ST., STE. 300 |
| | Street Address |
| | KANSAS CITY, MO 64112 |
| | City, State, Zip |

The producer shown above is the wholesale insurance broker your local insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.

TRIA2002Notice-1202

Page 1 of 1

176



## DEFINITION OF MINIMUM AND DEPOSIT PREMIUM
### AND
### MINIMUM EARNED PREMIUM

### MINIMUM AND DEPOSIT

This is the amount of the premium due at inception. Although the policy is "ratable", that is, subject to adjustment at audit based on a rate per exposure unit, under no circumstances will the annual earned premium be less than the minimum premium.

In other words, the policy may generate an additional premium at audit, but not a return.

If such a policy is cancelled mid-term, the earned premium will be the greater of the annual minimum times the short rate or pro-rata factor, or the actual earned as determined by audit, subject to a short rate penalty if applicable.

### MINIMUM EARNED PREMIUM

A minimum earned premium endorsement can be attached to either a flat charge policy or an adjustable policy. In either case, this amount is the least that will be retained by the carrier once the policy goes into effect. The amount retained will be the greater of the actual earned premium whether calculated on a pro-rata or short rate basis, or the minimum earned premium.

If you have any questions or concerns, do not hesitate to contact us.

444 West 47th Street, Suite 300
Kansas City, Missouri 64112
Phone: 816-410-3840   Fax: 816-410-3841