UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHAD YOUTH ENHANCEMENT CENTER, INC. and UNIVERSAL HEALTH SERVICES, INC., | )<br>)<br>)<br>) |
| Plaintiffs, | )  Case No. 3:09-0545 |
| | )  Judge Echols |
| v. | )<br>) |
| COLONY NATIONAL INSURANCE CO., | )<br>) |
| Defendant. | ) |

## MEMORANDUM

This is a declaratory judgment action relating to coverage under an insurance policy issued to Plaintiffs Chad Youth Enhancement Center, Inc. and Universal Health Services, Inc. (collectively "Chad Youth") by Defendant Colony National Insurance Co. ("Colony"). Pending before the Court is a Motion to Transfer (Docket Entry No. 17), through which Defendant requests that this action be transferred to the United States District Court for the Eastern District of Pennsylvania. Also pending is Defendant's Motion to Dismiss (Docket Entry No. 19) which seeks dismissal of Count III of Plaintiffs' Amended Complaint. Plaintiffs have filed responses in opposition to both Motions (Docket Entry Nos. 24 & 29), as well as supplemental responses in opposition to the Motion to Transfer (Docket Entry Nos. 38 & 45).

Additionally, the parties have filed Cross-Motions for Summary Judgment. Plaintiffs seek partial summary judgment (Docket Entry No. 33) on Count I of their Amended Complaint which requests that the Court declare the insurance policy issued by Colony covers punitive damages which might be assessed in a related case pending in the Eastern District of Pennsylvania. Colony seeks summary judgment (Docket Entry No. 46) on the entirety of Plaintiffs' Amended Complaint.

The Motions for Summary Judgment have been fully briefed by the parties. (Docket Entry Nos. 35, 47, 52 & 53).

## I. FACTUAL BACKGROUND

The Court sets forth the background facts relative to the pending motions. These facts will be amplified where necessary for purposes of the legal discussion in relation to a specific motion.

This litigation arose out of an underlying action in the Eastern District of Pennsylvania styled <u>Paulette M. Dolby as the administratrix of the Estate of Omega Leach, III v. Universal Health Services, Inc., *et al.*</u> ("<u>Dolby</u> action"). Plaintiffs in this case are being sued in the underlying action for alleged negligence in the death of Omega Leach, III ("Leach"). Leach died in June 2007 while a resident at Chad Youth Enhancement Center in Ashland City, Tennessee. The Complaint in the underlying action seeks compensatory and punitive damages.

Plaintiffs have in effect multiple layers of general liability insurance which potentially cover the claims asserted against them in the underlying action. Specifically, Plaintiffs have a primary level policy issued by General Star Indemnity Company (the "General Star Policy") with limits of $1 million per occurrence in excess of a $500,000 self-insured retention; a first level excess policy with Axis Surplus Insurance Company (the "Axis Policy") with limits of $5 million per occurrence in excess of the self-insured retention and the applicable limit of liability in the General Star Policy; and a second level excess policy issued by Colony (the "Colony Policy") with limits of $10 million per occurrence in excess of the self-insured retention and the applicable limits of liability in the General Star Policy and the Axis Policy.

Subsequent to the filing of the underlying action, Plaintiffs tendered the suit for coverage to Colony. Colony informed Plaintiffs that the Colony Policy follows form on the underlying policies,

2

that the limits of underlying policies must be exhausted before Colony has any payment obligation under its policy, and that the Colony Policy does not provide coverage for punitive damages.

Plaintiffs filed suit in this Court on June 11, 2009, alleging that Colony wrongfully denied Plaintiffs' tender to Colony for coverage for punitive damages. On June 24, 2009, Plaintiffs filed a three-count Amended Complaint. In Count I, Plaintiffs seek a declaratory judgment that the Colony Policy provides coverage for any liability for punitive damages in the underlying action. In Count II, Plaintiffs allege breach of contract and assert that Colony breached its fiduciary duty and duty of good faith and fair dealing in connection with Plaintiffs' request for coverage in the underlying action. Finally, in Count III, Plaintiffs allege that Colony's conduct in relation to the coverage issue in the underlying action was unfair and deceptive in violation of the Tennessee Consumer Protection Act ("TCPA"), T.C.A. § 47-18-101 *et seq.*

After the Amended Complaint was filed in this Court, Colony filed suit in the United States District Court for the Eastern District of Pennsylvania. In that action, Colony sought a declaratory judgment that it had no obligation to provide coverage for punitive or exemplary damages, and no obligation to provide coverage when the underlying insurance is not exhausted. However, in a Supplemental Response (Docket Entry No. 38), Plaintiffs assert that District Judge Eduardo Robreno of the Eastern District of Pennsylvania dismissed Colony's declaratory judgment action by way of an oral Order on September 4, 2009.

## II. ANALYSIS

### A. Motion to Transfer Venue (Docket Entry No. 17)

Defendant seeks to transfer this action to the Eastern District of Pennsylvania where the underlying action is pending. That Motion is made pursuant to 28 U.S.C. § 1404(a).

3

Section 1404(a) of Title 28 provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision on whether to transfer lies within the broad discretion of the trial court. Bunting ex rel. Gray v. Gray, 2 Fed. Appx. 443, 448 (6th Cir. 2001).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006)(citation omitted). Therefore, in deciding whether the present forum is inconvenient, the Court considers a number of factors, including (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Id.; Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002); Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991); Moeckel v. Caremark Rx, Inc., 385 F.Supp.2d 668, 686 (M.D. Tenn. 2005).

It is undisputed that venue is proper in this Court. Plaintiff Chad Youth Enhancement Center is a Tennessee corporation with its principal place of business in Ashland City, Tennessee. The first named insured on the Colony Policy is USH Children Services, Inc. with a Nashville, Tennessee address. The Colony Policy states on the declaration page that it is "delivered as a surplus line coverage pursuant to the Tennessee insurance statute," and indicates that a Tennessee surplus line tax was paid on the policy. Plaintiffs properly chose this forum for the resolution of this dispute and

4

that choice is entitled to weight. Lewis v. ACB Business Servs., Inc. 135 F.3d 389, 413 (6th Cir. 1998).

In seeking transfer, Defendant argues it would be more convenient for the witnesses if this case were litigated in the Eastern District of Pennsylvania, instead of here. The convenience of the witnesses is often considered to be the most important factor when determining which forum is the most convenient. See, Romanowski v. RNI, LLC, 2007 WL 323019 at *3 (N.D. Cal. 2007); American Steamship Owners v. LaFarge North Am., Inc., 2007 WL 214408 at *6 (S.D.N.Y. 2007); Olberding v. Union Pacific R. Co., 2007 WL 148816 at *2 (W.D. Mo. 2007). However, the determination of the convenience of witnesses is not merely a "head count," but includes a consideration of the importance of each witness and "includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case." Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 2007 WL 412429 at *8 (S.D. Cal. 2007).

In this case, as the Court sets forth in its analysis of the Motions for Summary Judgment below, resolution of the primary dispute, i.e. whether the Colony Policy provides coverage for punitive damages, does not require witness testimony. True, witness testimony may be necessary for resolution of Plaintiffs' claims for breach of contract, good faith and fair dealing, and violation of the TCPA.

However, Colony has not shown that it would be more convenient for the majority of witnesses if this case were transferred to the Eastern District of Pennsylvania. Defendant does not identify any particular witness by name, or specify the number of witnesses who might be necessary to testify about the issues in dispute, other than assert that the relevant witnesses on the issue of coverage would be the underwriting personnel, the broker who negotiated coverage and put together

5

the primary and excess layers of coverage, and "the producer or insured's agent U.S. Risk Underwriters, Inc.[.]" (Docket Entry No. 18 at 5). Again, the issue of coverage does not require witness testimony. In any event, none of the witnesses identified by Colony are located in the Eastern District of Pennsylvania, but instead (according to Defendant) are located in New York City, Kansas City, Missouri and Scottsdale, Arizona. While the New York City witnesses may be compelled to testify in the Eastern District of Pennsylvania pursuant to the 100-mile bulge provision of Fed. R. Civ. P. 45, Defendant has not identified who those witnesses are, how many such witnesses may exist, or how relevant or necessary any such testimony might be. See, Friedman v. Schwartz, 2009 WL 701111 at *8 (E.D.N.Y. 2009)(citation omitted) (because convenience of the witnesses is generally the most important factor in the transfer analysis, "'the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover'"); Tidel Eng'g v. Fire King Intern. Inc., 2008 WL 899345 at *2 (E.D. Tex. 2008)(citation omitted)("[t]he moving party must 'specifically identify key witnesses and outline the substance of their testimony'").

Defendant also argues that "practical considerations" warrant transfer. Specifically, Defendant argues that transfer is appropriate because the underlying action is pending in the Eastern District of Pennsylvania.[1]

The mere existence of another suit upon which a declaratory judgment action is based does not require transfer. See American Steamship Owners Mut. Protection and Indem. Ass'n, 474 F.Supp.2d 474, 485-86 (S.D.N.Y. 2007) (refusing to transfer declaratory judgment action from New

---

[1] Defendant also argues the Court should give consideration to its declaratory judgment action in the Eastern District of Pennsylvania. (Docket Entry No. 18 at 5). However, it appears that action has been dismissed.

6

York to Louisiana, even though liability cases were pending against defendant in Louisiana and underlying actions arose as a result of Hurricane Katrina, because insurance policy was issued in New York making it the "center of gravity" for purposes of the declaratory judgment action); TIG Ins. Co. v. Brightly Galvanized Prod., Inc., 911 F.Supp. 344, 346 (N.D. Ill. 1996)(declining to transfer declaratory judgment action from Illinois to Indiana where underlying action was pending because the issues in Illinois revolved around insurance coverage while the Indiana litigation involved questions of liability). From what the Court can glean from the record presented, the "center of gravity" in this dispute about insurance coverage is Tennessee. The Colony Policy was issued in accordance with Tennessee statutory provisions to a Tennessee entity to provide coverage for a Tennessee facility, and Tennessee taxes were paid on the policy.

Further, this litigation and the underlying litigation appear to be quite dissimilar. This case is a suit about insurance coverage and good faith under Tennessee law, issues quite distinct from the question of negligence presented in the underlying litigation. The coverage issue does not require any factual or legal determinations related to the matters in dispute in the underlying litigation, and it appears that the same holds true for Plaintiffs' other claims. In fact, according to Plaintiffs, Colony is not even a party to the underlying action. Defendant has not shown that practical considerations warrant transfer of this action to the Eastern District of Pennsylvania. Mullins v. ADB Logistics, Inc., 2009 WL 2406408 at *2 (E.D. Tenn. 2009)("the defendants bear the burden of demonstrating by a preponderance of the evidence that fairness and practicality strongly favor the forum to which transfer is sought").

"A motion for change of venue is properly granted when the balance weighs 'strongly in favor of transfer.'" West Am. Ins. Co. v. Potts, 1990 WL 104034 at *2 (6th Cir. 1990)(quoting, Nicol

7

v. Koscinski, 188 F.2d 537, 539 (6th Cir. 1951)). Here, Defendant has offered little to tip the scale and accordingly the Motion to Transfer will be denied.

**B. Motion to Dismiss (Docket Entry No. 19)**

In this Motion, Defendant seeks dismissal of Count III of the Amended Complaint which alleges violations of the TCPA. Defendant argues such a claim is not viable where it is based upon a mere disagreement between an insurer and insured as to coverage.

In ruling on a Motion to Dismiss, the Court accepts as true the allegations in Plaintiffs' Amended Complaint and construes those allegations in Plaintiffs' favor. However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal or mixed, or any other article, commodity or thing of value wherever situated [.]'" Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)(quoting, T.C.A. § 47-18-109(a)(1)). The TCPA is to be construed broadly in favor of consumer protection, id., and can serve as the basis for a claim against an insurance company. Myint v. Allstate Ins. Co., 970 S.W.2d 920, 925 (Tenn. 1998).

It is true, as Defendant argues, that the erroneous denial of a claim does not constitute an act of deception or unfairness within the meaning of the TCPA. Williamson v. Aetna Life Ins., 481 F.3d 369, 378 (6th Cir. 2007). However, Plaintiffs' TCPA claim is broader than a claim for the mere

8

denial of coverage or a genuine dispute about whether the policy provides for coverage. Among other things, Plaintiffs allege that Colony attempted to deceive them by first acknowledging there was coverage for punitive damages but when the time came for settlement discussions in the underlying case Colony changed course and claimed that there was no such coverage; that Colony attempted to avoid its duties to the insureds by wrongfully asserting that plaintiffs in the underlying action were not "targeting" Colony for punitive damages; that Colony attempted to align itself with plaintiffs in the underlying action to the detriment of Chad Youth; that Colony refused to participate meaningfully in court-ordered settlement negotiations in the underlying action; and that Colony abandoned Chad Youth and "left them to fend for themselves" during settlement negotiations in the underlying action. (Amended Complaint ¶¶ 49-51).

Given the allegations and the procedural posture of this case, Defendant's reliance upon Myint and Williams v. State Farm Fire and Cas. Co., 2008 WL 2321702 (W.D. Tenn. 2008) is misplaced. While the Tennessee Supreme Court in Myint affirmed the dismissal of a TCPA claim against an insurer, it did so not because such a claim is outside the purview of the TCPA, but because "the record reveals no evidence of an attempt by [the insurer] to violate the terms of the policy, deceive the [insureds] about the terms of the policy, or otherwise act unfairly." Myint, 970 S.W.2d at 926. In Williams, the district court recognized that the Tennessee Supreme Court in Myint held that a TCPA claim could be stated against an insurer where there was evidence of an attempt to violate the terms of the policy, deceive the insured about those terms, or otherwise act unfairly, but found, based upon the summary judgment record, that no evidence had been submitted by the plaintiff which showed that the insurer in that case did any such thing. Williams, 2008 WL 2321702 at *5.

9

Here, in contrast, there is no evidence but only allegations about bad faith and deception. For present purposes, those allegations must be accepted as true and they state a plausible claim under the TCPA. As such, Count III of the Amended Complaint will not be dismissed.

## C. Cross Motions for Summary Judgment (Docket Entry Nos. 33 & 46)

### 1. Additional Facts Pertaining to the Motions for Summary Judgment

As indicated Plaintiffs are Defendants in the <u>Dolby</u> action and have in effect multiple layers of insurance that may cover them in that action, including the first level liability insurance policy issued by General Star, a first level excess policy issued by Axis, and a second level excess policy issued by Colony. All three policies list "UHS Children Services, Inc." of Nashville, Tennessee as the named insured. Each of those policies indicate that the respective policy is being issued pursuant to the Tennessee insurance statutes and that a Tennessee tax must be paid for the issuance of the policy, taxes which were, in fact, paid.

The Colony Policy at issue provides that terms in quotation marks in the policy have the meaning provided in the definitions section of the policy. The Colony Policy also provides that it incorporates the terms and conditions of the General Star and Axis policies.

The General Star Policy provides coverage to the Plaintiffs for "Damages," which term is defined as "sums that any insured becomes legally obligated to pay resulting from a Claim to which the policy applies." (General Star Policy Section VI(6)(c)). The General Star Policy defines "Claim" in terms of the types of demands that can result in legal liability, including a lawsuit. (<u>Id</u>., Section VI(9)). The General Star Policy nowhere excludes punitive damages from the definition of "Damages," and, in fact, Partners Special Group, LLC, one of the two brokerage firms involved in the placement of coverage for UHS and its affiliates, stated in its Quote that the General Star Policy "has no exclusion for Punitive Damages." (Amended Complaint, Ex. B).

10

Unlike the General Star Policy, the Axis policy excludes punitive damages. Specifically, the Axis Policy Provides:

**Punitive or Exemplary Damages Exclusion**
This insurance does not apply to fines, penalties, punitive damages, exemplary damages, treble damages or the multiplication of compensatory damages.

(Axis Excess Policy p. 9).

The Colony Policy is silent on the issue of punitive damages in relation to a negligence action. Instead, it follows form as to both the General Star Policy and the Axis Policy. Specifically, the Colony Policy provides coverage as follows:

**Section I – Coverage**
**1. Insuring Agreement**
**a.** We will pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of "underlying insurance," shown in the Declarations to which this insurance applies. The terms and conditions of insurance of this policy are the same as those of the "underlying insurance" in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto. This policy provides excess liability insurance over "underlying insurance" in full force and effect during the "policy period" of this policy. However:
**(1)** The amount we will pay for damages is limited as described in Section II – Limits of Insurance.
**(2)** We shall have the right and duty to defend claims against the insured when the applicable Limit of Insurance of the "underlying insurance" is exhausted. This right and duty ends when we have used up the applicable Limit of Insurance of this policy. We have no duty to defend the insured against any claim to which this insurance or that of the "underlying insurance" does not apply. We do, however, have the right to participate in the investigation, settlement, or defense of a claim covered by "underlying insurance" which we believe may result in liability on our part.
**(b)** Only payment of those damages covered by "underlying insurance" during the term of this policy shall be considered in determining the extent of any exhaustion of the Limits of Liability of an "underlying insurance."

11

Based on these facts, Plaintiffs claim they are entitled to a declaration that the Colony Policy provides coverage for punitive damages in the underlying <u>Dolby</u> action because that policy does not exclude punitive damages and because it follows form from the General Star Policy which provides coverage for damages arising from a lawsuit, which would include punitive damages. In contrast, Defendant argues it is not required to provide coverage for punitive damages because the Axis Policy specifically excludes punitive damages and that exclusion is immediately below the Colony Policy which follows form.

**2. Standard of Review**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Covington v. Knox County School Sys.</u>, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. <u>See</u> <u>Martin v. Kelley</u>, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986); <u>Covington</u>, 205 F.3d at 914 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson,</u>

12

477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### 3. Application of Law

As an initial matter, this Court must decide which state's law governs the interpretation of the Colony Policy. Because this is a diversity action, the Court looks to Tennessee law to determine which state's substantive law applies. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).

"In contract actions, Tennessee follows the rule of *lex loci contractus*, which means simply that the law of the place where the contract is made governs the construction and validity of the contract." Thompson v. American Gen. Life and Acc. Ins. Co., 448 F.Supp.2d 885, 887 (M.D. Tenn. 2006). Here, Plaintiffs signed the insurance application in Tennessee, the quote and policy were delivered in Tennessee, the policy was issued under Tennessee's insurance laws, Tennessee taxes were paid on the policy, and the claim arose as a result of an incident which occurred in Tennessee. Tennessee law therefore governs.[2]

The general principles underlying the construction of insurance policies are well established in Tennessee and are as follows. "Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn. 1990). As a result, "disputed contractual language must be examined in the context of the entire

---

[2]Defendant argues that Pennsylvania law should apply because any award of punitive damages will be made by a court in Pennsylvania, enforced under that state's procedural laws, and it is against the public policy of that state to insure against punitive damages. However, the issue before the Court is not the propriety of an award of punitive damages or from what source such an award is to be made under Pennsylvania law. Instead, the issue is whether the Colony Policy covers punitive damages and that is an issue which must be resolved in accordance with Tennessee law.

13

agreement" and the policy "'construed as a whole in a reasonable and logical manner.'" Cobb v. Stewart Title Guar. Co., 2007 WL 4460198 at *2 (Tenn. Ct. App. 2007)(citations omitted). Further, "words must be given their usual and ordinary interpretation." Id. "The goal is to ascertain and enforce the intent of the contracting parties." VanBebber v. Roach, 2007 WL 2790698 at *4 (Tenn. Ct. App. 2007). Hence, where "a policy's terms are unambiguous, it will be enforced as written," and a "court cannot rewrite an unambiguous policy simply to avoid harsh results." Holt v. Pyles, 2007 WL 1217264 at *5 (Tenn. Ct. App. 2007).

"When coverage questions arise, the courts should consider the components of an insurance policy in the following order: (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements." Massachusetts Mut. Life Ins. Co. v. Jefferson, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002). "Therefore, the insured cannot simply focus on the declarations/summary portion of a contract in isolation; the policy must be read as a whole." Holt, 2007 WL 1217264 at *5.

While insurance policies are construed as contracts, "courts do not shut their eyes to realities; they know that the policy is a contract of 'adhesion,' i.e. not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance[.]" Alcazar v. Hayes, 982 S.W.2d 845, 851-52 (Tenn. 1998). Accordingly, insurance policies are construed in favor of the insureds and "so as to provide coverage." Id. at 853.

In this case, the parties initially argue that the Colony Policy is unambiguous in relation to the issue of coverage for punitive damages. Plaintiffs argue that because the General Star policy does not exclude punitive damages, but instead provides coverage for all damages awarded in a

14

lawsuit, and the Colony Policy follows form on the General Star Policy, punitive damages are covered. Defendant argues that because the Axis Policy specifically excludes punitive damages, the Colony Policy, which follows form, also excludes punitive damages.

An insurance policy is ambiguous "when its meaning is uncertain and may *fairly* be understood in more than one way." Kofozi v. Windward Cove, LLC, 184 S.W.3d 693, 699 (Tenn. Ct. App. 2005)(italics in original). Here, the Colony Policy is ambiguous because it may fairly be understood as (1) providing for punitive damages by following form on the General Star Policy which provides coverage for damages from a lawsuit which unquestionably could include punitive damages; or (2) excluding punitive damages because it follows form on the Axis Policy which specifically excludes punitive damages.

Colony's reliance on GenCorp v. American Int'l Underwriters, 178 F.3d 804 (6th Cir. 1999) for the proposition that an excess policy which follows form on multiple lower level policies does not cause an ambiguity is misplaced. At issue in that case (decided under Ohio law) was the incorporation into a follow form excess policy of an absolute pollution exclusion that was added to the primary policy after the policy period had ended and that was made retroactive to the issuance of the primary policy. Tellingly, the second and third layer umbrella policies excluded pollution claims because both incorporated the pollution exclusion contained in the first layer umbrella policy. Here, in contrast, the Colony Policy incorporates the terms of two separate policies and there is a clear conflict in the terms of the policies in relation to punitive damages.

Having determined that an ambiguity exists the question next becomes whether the ambiguity is latent or patent. "The distinction between patent ambiguity on the one hand and latent ambiguity on the other hand has been characterized as 'ambiguous term (of the written instrument)' as opposed to ambiguous facts." Gredig v. Tennessee Farmers Mut. Ins. Co., 891 S.W.2d 909, 915

15

(Tenn. Ct. App. 1994)(citation omitted). "'In other words, a patent ambiguity is one which appears on the face of the instrument, while a latent ambiguity is one 'where the instrument is unambiguous on its face, but becomes open to more than one interpretation when applied to the factual circumstances.'" Arnold v. Davis, 2004 WL 1372831 at *10 (Tenn. Ct. App. 2004)(citation omitted). Parol evidence may be considered to resolve a latent ambiguity, but not a patent ambiguity. Id. at *11; Cooper v. Smith, 2009 WL 1260221 at *3 (Tenn. Ct. App. 2009); Dobson v. Marion County, 2006 WL 1026422 at *6 (Tenn. Ct. 2006).

In this case, the ambiguity is patent because it appears on the face of the Colony Policy, to wit, the provision which indicates that it follows form on both the General Star and Axis policies. The ambiguity is not latent because it does not involve ambiguous facts, but instead involves ambiguity in the written instrument. Thus, parol evidence cannot be used to resolve the ambiguity.[3]

"When an ambiguity is found in an insurance policy, it 'must be construed strongly against the insurer and in favor of the insured.'" Fisher v. Revell, 2009 WL 3103796 at *3 (Tenn. Ct. App. 2009)(quoting, Phillips v. United Services Auto. Ass'n, 146 S.W.3d 626, 633 (Tenn. Ct. App. 2004). In fact, the Tennessee Supreme Court "has held that exceptions, exclusions, and limitations in policies of insurance are to be most strongly construed against the insurer." Travelers Ins. Co. v. Aetna Cas. & Sur. Co., 491 S.W.2d 363, 367 (Tenn. 1973)(collecting cases).

In this case, when the Colony Policy is construed against Defendant, coverage exists for punitive damages because the policy follows form on the General Star Policy which provides

---

[3]Defendant argues that even if this Court finds that an ambiguity exists, the Court should nevertheless allow the parties to engage in discovery. However, this argument ignores the distinction between patent and latent ambiguities. While Tennessee recognizes that some jurisdictions make no distinction between the two types of ambiguities, Tennessee courts continue to adhere to the distinction. See, Horadam v. Stewart, 2008 WL 4491744 at *6 (Tenn. Ct. App. 2008).

16

coverage for "sums that any insured becomes legally obligated to pay resulting from a Claim to which the policy applies." See, Lazenby v. Universal Underwriters Ins. Co., 383 S.W.2d 1, 3 & 6 (Tenn. 1964)(policy which states that it will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" covers both compensatory and punitive damages because "the average policy holder reading this language would expect to be protected against all claims, not intentionally inflicted"). Here, Plaintiffs, as the Defendants in the Dolby action, could become legally obligated to pay punitive damages and the Court finds that coverage exists under the Colony Policy for such damages.

Defendant argues that the principle that a contract should be construed against the drafter (which is also known as the *contra proferentem* rule) should not be applied to this case because the policy is not a standard form contract (even though to the Court it looks like one) and all parties involved are sophisticated. In support of that argument, Defendant relies upon the Sixth Circuit decision in B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 597 (6th Cir. 2001). However, the Goodrich case did not involve the construction of an insurance contract or interpret Tennessee law. Rather, that case involved a stock purchase agreement under New York law. Goodrich is inapposite.

Defendant also string-cites several out-of-circuit cases, none of which involve the construction or interpretation of Tennessee insurance law. The Second Circuit in one such case, Shering Corp. v. Home Ins. Co., 712 F.2d 4, 8 n.2 (2d Cir. 1983), noted "that the issue of whether the rule *contra proferentem* is even applicable in a situation involving a large, sophisticated, counselled entity" is "an unresolved question[.]" In another cited case, the Seventh Circuit in Farmers Auto Ins. Ass'n. v. St. Paul Mercury Ins., 482 F.3d 976, 977 (7th Cir. 2007) noted that "some states don't limit *contra proferentem* to polices sold to commercially unsophisticated

17

individuals." In fact, Farmers Auto involved two large insurance companies, but the Seventh Circuit was bound to follow Illinois law which recognizes the rule because Illinois courts have held that "'any insured, whether large and sophisticated or not, must enter into a contract with the insurer which is written according to the insurer's pleasure by the insurer." Id. at 978. Such cases are hardly persuasive authority for the proposition that Tennessee courts would not invoke the *contra proferentem* rule in cases involving insurance contracts or sophisticated parties, particularly since the Tennessee Supreme Court invoked the rule in Traveler's Ins. Co., 491 S.W.2d at 367 which was a declaratory judgment action between Travelers Insurance and Aetna.[4]

Tellingly, Defendant could have specifically excluded all punitive damages from coverage, just as it excluded coverage for damages related to war and coverage for punitive damages in the terrorism endorsement. Defendant argues that while it did not in fact specifically exclude coverage for punitive damages (except in relation to acts of terrorism), an insurer should not be required to recite all of the express terms and exclusions in a follow form policy and that to hold otherwise would be "fully contrary to the concept of following form policies." (Docket Entry No. 47 at 10).

While it may be true in a general sense that not all of the conditions and exclusions need to be reiterated in a follow form policy, Colony could have easily limited its liability, not by having to list all of the express terms of the policy and exclusions, but by more narrowly defining the

---

[4] Defendant also cites Gencorp and Piper Indus., Inc. v. First Tennessee Bank, N.A., 1986 LEXIS 2903 (Tenn. Ct. App. 1986) for the proposition that the *contra proferentem* rule is a fallback provision to be applied where the other rules of construction fail. (Docket Entry No. 47 at 12). While those cases state that principle, Defendant does not cogently explain how that aids it in its contention that the Colony Policy does not provide coverage for punitive damages. This Court has set forth and considered the rules to be utilized in construing contracts and finds that the Colony Policy at issue is ambiguous as it relates to coverage for punitive damages in a negligence action.

18

precise policy on which it was following form. This is what Axis did in its policy by specifying that it "[f]ollows the terms, conditions, exclusions, and endorsements of the '*first underlying insurance*'" and "any additional exclusions included in any other 'underlying insurance.'" (Axis Policy p. 3 Sec. I, emphasis added). It is also what some of the policies at issue in Gencorp did by stating that the particular policy was to "follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) *immediately preceding the layer of coverage provided by the Certificate*[.]" Gencorp, 178 F.3d at 822 (emphasis added). Instead, Colony issued a policy that followed form on the "underlying insurance" which was defined to mean *both* the General Star and the Axis policies. In doing so, Colony left open the possibility that there would be conflicts between the two policies which could result in an ambiguity in relation to the issue of coverage or exclusions.

Based on the foregoing, the Court determines that there is a patent ambiguity in the Colony Policy. When the insurance policy is construed in the insured's favor and in favor of coverage, the Court finds that the Colony Policy provides coverage for punitive damages in a negligence action against the insured. As such, Plaintiffs are entitled to summary judgment on Count I of their Amended Complaint which requests that the Court declare that the Colony Policy provides coverage for punitive damages in the Dolby action. Given this conclusion, Defendant's cross-motion for summary judgment fails.[5]

---

[5] While Defendant seeks summary judgment on all of Plaintiff's claims, its argument hinges upon it prevailing on the punitive damages claim. That is, Defendant asserts that if it is not liable for punitive damages, it cannot be held liable for Plaintiffs' breach of contract, good faith and fair dealing, and TCPA claim.

## III. CONCLUSION

Based upon the foregoing, Defendant's Motion to Transfer (Docket Entry No. 17) will be denied. Defendant's Motion to Dismiss Count III of the Amended Complaint (Docket Entry No. 19) will also be denied. Further, Defendant's Cross-Motion for Summary Judgment (Docket Entry No. 46) will be denied. Finally, Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 33), which seeks declaratory relief on Count I of Plaintiffs' Amended Complaint, will be granted as the Court finds that the Colony Policy provides coverage for punitive damages in the Dolby action.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE